**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IOWA**

| | |
|---|---|
| Michael Douglas and Dorothy Goodon, individually, and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT JURY TRIAL DEMANDED** |
| PurFoods, LLC d/b/a Mom's Meals, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Michael Douglas and Dorothy Goodon ("Plaintiffs"), individually, and on behalf of all others similarly situated (the "Class" or the "Class Members"), bring this action against PurFoods, LLC, d/b/a Mom's Meals ("PurFoods" or "Defendant"). Plaintiffs bring this action by and through their attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows:

## I.     INTRODUCTION

1.     PurFoods, which operates under the name "Mom's Meals," is a meal-delivery company based in Ankeny, Iowa that prepares and delivers refrigerated, ready-to-eat meals to customers all over the United States. Defendant markets toward individuals with special health conditions and it specializes in preparing meals that support various health conditions.

2.     As part of its food sale operations PurFoods collects, maintains, and stores highly sensitive personal and medical information belonging to its customers and employees, including, but not limited to: Social Security numbers, dates of birth, full names, addresses, telephone numbers, driver's license numbers (collectively, "personally identifying information" or "PII"),

information regarding medical treatment, diagnosis, and prescriptions, medical record numbers, health insurance information, and other protected health information (collectively, "private health information" or "PHI"), as well as financial account/payment card information ("financial account information") (collectively, "Private Information").

3.     On January 16, 2023, PurFoods experienced a data breach incident in which unauthorized cybercriminals accessed its information systems and databases and stole Private Information belonging to the Plaintiffs and the Class (the "Data Breach"). PurFoods discovered this unauthorized access on February 22, 2023, upon which it launched an investigation with the aid of third-party data security specialists. This investigation, which concluded on July 10, 2023, determined that Private Information belonging to PurFoods' customers and employees had been stolen by cybercriminals in the successful attack. On August 25, 2023, PurFoods began issuing data breach notices to individuals whose information was believed to have been stolen in this incident.[1]

4.     As PurFoods stored and handled such highly-sensitive PII, PHI, and financial account information (collectively, "Private Information"), it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

5.     Ultimately, PurFoods failed to fulfill these obligations as unauthorized cybercriminals breached PurFoods' information systems and databases and stole vast quantities of Private Information belonging to Plaintiffs and the Class. This breach and the successful exfiltration of Private Information were direct, proximate, and foreseeable results of multiple failings on the part of PurFoods.

---

[1] This Notice, which contains further information regarding the data security breach incident, is attached as **Exhibit A**.

6.      The data breach occurred because PurFoods inexcusably failed to implement reasonable security protections to safeguard its information systems and databases. Thereafter, PurFoods failed to timely detect this data breach until 37 after the Data Breach occurred. And prior to the Data Breach, PurFoods failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiffs and the Class Members been made aware of this fact, they would have never provided their Private Information to PurFoods.

7.      In addition to the failures that caused the breach, PurFoods' subsequent handling of the Data Breach was also suspect. First, PurFoods' investigation of excessive duration—lasting a total of 138 days from February 22, 2023 to July 10, 2023. Second, PurFoods did not provide notice to Plaintiffs and the Class Members that their information was stolen until *184 days after* it first discovered the Data Breach. In combination, PurFoods didn't provide Plaintiffs and Class members with even the *opportunity* to mitigate their damages until 221 *after* the Data Breach; 221 days that cybercriminals had unfettered access to PurFoods' networks to peruse, steal, and exploit the Plaintiffs' and Class members' Private Information completely uninterrupted.

8.      Lastly, PurFoods' meager attempt to ameliorate the effects of the Data Breach with *one year* of complimentary credit monitoring is woefully inadequate. Much of the Private Information that was stolen is immutable and a single year of credit monitoring is nothing in the face of a life-long heightened risk of identity theft.

9.      As a result of PurFoods' negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs and Class members suffered injuries as a result of PurFoods' conduct including, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to change usernames and passwords on their accounts;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and the continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

10.     Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiffs' and Class members' Private Information; its failure to reasonably provide timely notification that Plaintiffs' and Class members' Private Information had been compromised by an unauthorized third party; and for intentionally and unconscionably deceiving Plaintiffs and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.     PARTIES

**Plaintiff Michael Douglas**

11.     Plaintiff Michael Douglas is a resident and citizen of Warren, Ohio. Plaintiff Douglas was formerly employed by Mom's Meals. After the Data Breach, he has observed a marked increase in spam calls and emails.

4

**Plaintiff Dorothy Goodon**

12.     Plaintiff Dorothy Goodon is a resident and citizen of Des Moines, Iowa. Plaintiff Goodon was an employee at Mom's Meals from March 2021 to December 2022, and she also ordered Mom's Meals' meals delivered to her ill mother. After the Data Breach, she began experiencing a significant increase in spam calls and had her banking information compromised on multiple occasions since the breach occurred. And on August 31, 2023, Plaintiff Goodon received Defendant's data breach notice via US Mail.

**Defendant PurFoods, LLC.**

13.     Defendant PurFoods, LLC is an Iowa Limited Liability Company with its principal place of business located at 3210 SE CORPORATE WOODS DR., ANKENY, IA 50021. Defendant does business as Mom's Meals, selling and distributing pre-packaged refrigerated meals (specialized for several common health conditions) nationwide.[2] PurFoods employs approximately 800 people and generates approximately $54 million in annual revenue.

### III.     JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

15.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district.

---

[2] *How it Works*, Mom's Meals, https://www.momsmeals.com/our-food/how-it-works/ (last visited Aug. 31, 2023).

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     PurFoods – Background

17.     PurFoods, doing business as "Mom's Meals" sells and distributes various prepackaged, refrigerated meals all over the United States. It serves a niche of the market in that its meals are specialized for various common ailments and health conditions. As part of its operations, Defendant collects, maintains, and stores the highly sensitive PII and medical information provided by its current and former customers and employees, including but not limited to: full names, addresses, Social Security numbers, dates of birth, medical and treatment information, health insurance information, driver's license numbers, passport information, financial account information and contact information.

18.     On information and belief, PurFoods had failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the Private Information of PurFoods' current and former customers and employees—Plaintiffs and Class Members.

19.     Current and former customers and employees of Defendant, such as Plaintiffs and Class Members, made their Private Information available to PurFoods with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. And, in the event of any unauthorized access, that PurFoods would provide them with prompt and accurate notice.

20.     This expectation was objectively reasonable and based on an obligation imposed on PurFoods by statute, regulations, industrial custom, and standards of general due care.

21.     Unfortunately for Plaintiffs and Class Members, PurFoods failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiffs and Class members from having their Private Information accessed and stolen during the Data Breach.

**B.      The Data Breach**

22.     According to information provided by PurFoods, cybercriminals breached PurFoods' information systems and databases on January 16, 2023.[3]

23.     PurFoods' IT specialists did not discover this breach until February 22, 2023, approximately 37 days after cybercriminals successfully breached PurFoods' networks. Thereafter, PurFoods found that large volumes of data used in its operations was encrypted as part of a ransomware attack. And further preliminary investigations revealed the presence of data exfiltration tools.[4]

24.     PurFoods then engaged a third-party specialist to conduct an investigation into the breach and determine what information had been stolen. This investigation concluded on or about July 10, 2023, and determined that cybercriminals had successfully breached the systems on or about January 16, 2023, successfully stealing Private Information such as full names, Social Security numbers, driver's license/state identification numbers, financial account and/or payment card information, medical information, health information, and dates of birth.[5]

---

[3] Ex. A.
[4] *Id.*
[5] *Id.*

25.     On August 25, 2023, which was 184 days *after* PurFoods' IT team first discovered the breach and 221 days after the breach first occurred, PurFoods began dispatching data breach notices to all individuals it believed was affected by this data security incident.[6]

26.     PurFoods estimates that the Private Information belonging to at least 1,237,681 individuals was compromised in this incident.[7]

## C.     PurFoods' Many Failures Both Prior to and Following the Breach

27.     Defendant collects and maintains vast quantities of Private Information belonging to Plaintiffs and Class members as part of its normal operations. The data breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

28.     First, Defendant inexcusably failed to implement reasonable security protections to safeguard its information systems and databases.

29.     Second, Defendant inexcusably failed to timely detect this Data Breach with Defendant only becoming aware of the intrusion 37 days after the Data Breach. This delayed detection provided these cybercriminals with ample time to access, peruse, steal, and exploit the sensitive Private Information of Defendant's customers and employees.

30.     Third, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiffs and the Class Members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

---

[6] *Id.*
[7] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/c7ad1c53-6e20-41d8-8fb6-f1ccd0e3e0cc.shtml (last visited August 31, 2023).

31.     In addition to the failures that lead to the successful breach, Defendant's failings in handling the breach and responding to the incident exacerbated the resulting harm to Plaintiffs and the Class.

32.     First, Defendant's investigation of excessive duration, lasting a total of 138 days. During this period, Plaintiffs and the Class members were not informed that their sensitive Private Information had been stolen by internet criminals.

33.     Second, Defendant did not inform Plaintiffs and Class members that their information was stolen until 184 days after its agents first discovered the intrusion. This delay in informing the class virtually ensured that the cybercriminals who stole this Private Information could monetize, misuse and/or disseminate that Private Information before Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

34.     Third, Defendant's attempt to ameliorate the effects of this data breach with a single year of complimentary credit monitoring is woefully inadequate. Plaintiffs' and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information, such as healthcare data, is immutable.

35.     In short, Defendant's myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiffs and Class members that their personal, medical and

financial information had been stolen due to Defendant's security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiffs' and Class members' Private Information for nearly 7 months before Defendant finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

### D.      Data Breaches Pose Significant Threats

36.      Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

37.      In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[8] The HIPAA Journal's 2022 Healthcare Data Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[9]

38.      Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[10] The

---

[8] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report+.

[9] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/ (last accessed August 15, 2023).

[10] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed last accessed August 15, 2023).

number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%. [11]



39.     This stolen PII is then routinely traded on dark web black markets as s simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[13]

40.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

---

[11] *Id.*

[12] *Id.*

[13] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/ (last accessed August 15, 2023).

[a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[14]

41.     This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[15]

42.     The most sought after and expensive information on the dark web are stolen medical records which command prices from $250 to $1,000 each.[16] Medical records are considered the most valuable because unlike credit cards, which can easily be canceled, and social security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information".[17] With this bounty of ill-gotten information,

---

[14] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf  (last accessed August 15, 2023).
[15] *Id.*
[16] Paul Nadrag, Capsule Technologies*, Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web (last accessed August 15, 2023).
[17] *Id.*

cybercriminals can steal victims' public and insurance benefits and bill medical charges to victims' accounts.[18] Cybercriminals can also change the victims' medical records, which can lead to misdiagnosis or mistreatment when the victims seek medical treatment.[19] Victims of medical identity theft could even face prosecution for drug offenses when cybercriminals use their stolen information to purchase prescriptions for sale in the drug trade.[20]

43.     The wrongful use of compromised medical information is known as medical identity theft and the damage resulting from medical identity theft is routinely far more serious than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft and there are currently no laws limiting a consumer's liability for fraudulent medical debt (in contrast, a consumer's liability for fraudulent credit card charges is capped at $50).[21] It is also "considerably harder" to reverse the damage from the aforementioned consequences of medical identity theft.[22]

44.     Instances of Medical identity theft have grown exponentially over the years from approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold increase in the crime.[23]

45.     In light of the dozens of high-profile health and medical information data breaches that have been reported in recent years, entities like Defendant charged with maintaining and

---

[18] *Medical Identity Theft in the New Age of Virtual Healthcare*, IDX (March 15, 2021), available at https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare (last accessed August 15, 2023). *See also* Michelle Andrews, *The Rise of Medical Identity Theft*, Consumer Reports (August 25, 2016), available at https://www.consumerreports.org/health/medical-identity-theft-a1699327549/ (last accessed August 15, 2023).
[19] *Id.*
[20] *Id.*
[21] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last accessed August 15, 2023).
[22] *Id.*
[23] *Id.*

securing patient PII should know the importance of protecting that information from unauthorized disclosure. Indeed, Defendant knew, or certainly should have known, of the recent and high-profile data breaches in the health care industry: UnityPoint Health, Lifetime Healthcare, Inc., Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, and many others.[24]

46.     In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard customer and patient information.[25]

47.     Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to the Class, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class members' Private Information can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

48.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[26] The

---

[24] *See e.g.*, *Healthcare Data Breach Statistics*, HIPAA Journal, available at: https://www.hipaajournal.com/healthcare-data-breach-statistics (last accessed August 15, 2023).

[25] *See e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

[26] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed August 15, 2023). *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity

information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

49.     To date, Defendant has offered its consumers only one year of identity theft monitoring services. The offered services are inadequate to protect Plaintiffs and the Class from the threats they will face for years to come, particularly in light of the Private Information at issue here.

50.     Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and the Class from misappropriation. As a result, the injuries to Plaintiffs and the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former customers and employees.

**E.     PurFoods Had a Duty and Obligation to Protect Private Information**

51.     Defendant has an obligation to protect the Private Information belonging to Plaintiffs and Class members. First, this obligation was mandated by government regulations and state laws, including HIPAA and FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII and medical records. And third, Defendant imposed such an obligation on itself with its promises regarding the safe handling of data.[27] Plaintiffs and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

---

Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/ (last accessed August 15, 2023).
[27] *See Mom's Meals Notice of Privacy Practices*, PURFOODS.COM (last upd. October 4, 2021), available at https://www.purfoods.com/webres/File/Website%20Privacy%20Policy.pdf.

a.   **HIPAA Requirements and Violation**

52.   HIPAA requires, *inter alia*, that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and implement procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302, *et seq.*

53.   HIPAA, as applied through federal regulations, also requires private information to be stored in a manner that renders it, "unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology. . ." 45 CFR § 164.402.

54.   The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 require Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach***" (emphasis added).

55.   Since Defendant collected and stored PII and PHI from its customers and employees, it is a "covered entity" under HIPAA.

56.   Upon information and belief, Defendant failed to implement and/or maintain procedures, systems, and safeguards to protect the PII and PHI belonging to Plaintiffs and the Class from unauthorized access and disclosure.

57.   Upon information and belief, Defendant's security failures include, but are not limited to:

a.   Failing to maintain an adequate data security system to prevent data loss;

b.   Failing to mitigate the risks of a data breach and loss of data;

c.  Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents;

g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.  Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

58.    Upon information and belief, Defendant also failed to store the information it collected in a manner that rendered it, "unusable, unreadable, or indecipherable to unauthorized persons," in violation of 45 CFR § 164.402.

59.    Defendant also violated the HIPAA Breach Notification Rule since it did not inform Plaintiffs and the Class members about the breach until 184 days after it first discovered the breach.

60.    Because Defendant has failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure

Defendant's approach to information security is adequate and appropriate going forward. Defendant still maintains the PHI and other highly sensitive PII of its current and former customers and employees, including Plaintiffs and Class Members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class Members' Private Information remains at risk of subsequent data breaches.

### b.   FTC Act Requirements and Violations

61.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

62.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[28] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[29] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts

---

[28] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 15, 2023).
[29] *Id.*

of data being transmitted from the system; and have a response plan ready in the event of a breach.[30] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

63.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

64.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65.     Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

66.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

67.     Defendant was fully aware of its obligation to protect the Private Information of its current and former customers and employees, including Plaintiffs and the Class, and on

---

[30] *Id.*

information and belief, Defendant is a sophisticated and technologically savvy entity that relies extensively on technology systems and networks to maintain its practice, including storing its customers' and employees' PII, protected health information, and medical information in order to operate its business.

68.     Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiffs and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiffs' and Class members' Private Information.

c.      **Industry Standards and Noncompliance**

69.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

70.     Some industry best practices that should be implemented by businesses dealing with sensitive PHI like Defendant include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

71.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as

firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

72.     Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

73.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### d.     Defendant's Own Stated Policies and Promises

74.     Defendant's own published privacy policy states that:

- We are required by law to maintain the privacy and security of your protected health information.

- We will notify you know promptly if a breach occurs that may have compromised the privacy or security of your information.

75.     Clearly, Defendant failed to live up to its own stated policies and promises with regards to data privacy and data security as cybercriminals were able to infiltrate its systems and steal the Private Information belonging to Plaintiffs and Class members. And further, Defendant delayed almost seven months between discovering the breach and issuing notice. This delay was far beyond what is reasonable acceptable or statutorily mandated.

F.      **Plaintiffs and the Class Suffered Harm Resulting from the Data Breach**

76.     Like any data hack, the Data Breach presents major problems for all affected.[31]

77.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[32]

78.     The ramifications of Defendant's failure to properly secure Plaintiffs' and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

79.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

80.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

81.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal "Preventive Medicine Reports", public and corporate data breaches correlate to

---

[31] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers (last accessed August 12, 2023).
[32] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last accessed March 11, 2023).

an increased risk of identity theft for victimized consumers.[33] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[34]

82.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

83.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[35] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[36]

84.     The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of traditional identity theft.[37] Medical Identity Theft is especially nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (*e.g.*, a victim's liability for fraudulent credit card charges is capped at $50),

---

[33] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub (last accessed August 15, 2023).

[34] *Id.*

[35] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymB hAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_B wE&gclsrc=aw.ds (last accessed August 14, 2023).

[36] *Id.*

[37] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last accessed March 23, 2023).

the unalterable nature of medical information, the sheer costs involved in resolving the fallout from

a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this

crime), and the risk of criminal prosecution under anti-drug laws.[38]

85.     In response to the Data Breach, Defendant offered to provide certain individuals

whose Private Information was exposed in the Data Breach with just a single year of credit

monitoring through Kroll. However, this is much shorter than what is necessary to protect against

the lifelong risk of harm imposed on Plaintiffs and Class members by Defendant's failures.

86.     Moreover, the credit monitoring offered by Defendant is fundamentally inadequate

to protect them from the injuries resulting from the unauthorized access and exfiltration of their

sensitive Private Information.

87.     Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries

that include, but are not limited to:

   a.     Theft of Private Information;

   b.     Costs associated with the detection and prevention of identity theft and
          unauthorized use of financial accounts as a direct and proximate result of
          the Private Information stolen during the Data Breach;

   c.     Damages arising from the inability to use accounts that may have been
          compromised during the Data Breach;

   d.     Costs associated with spending time to address and mitigate the actual and
          future consequences of the Data Breach, such as finding fraudulent charges,
          cancelling and reissuing payment cards, purchasing credit monitoring and
          identity theft protection services, placing freezes and alerts on their credit
          reports, contacting their financial institutions to notify them that their
          personal information was exposed and to dispute fraudulent charges,
          imposition of withdrawal and purchase limits on compromised accounts,
          including but not limited to lost productivity and opportunities, time taken
          from the enjoyment of one's life, and the inconvenience, nuisance, and
          annoyance of dealing with all issues resulting from the Data Breach, if they

---

[38] *Id.*

were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e.    The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.    The loss of Plaintiffs' and Class members' privacy.

88.    Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within a mere year: the unauthorized access of Plaintiffs' and Class members' Private Information, especially their Social Security numbers, puts Plaintiffs and the Class at risk of identity theft indefinitely, and well beyond the limited period of credit monitoring that Defendant offered victims of the Breach.

89.    As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft, and have incurred and will incur actual damages in an attempt to prevent identity theft.

90.    Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G.    EXPERIENCES SPECIFIC TO PLAINTIFFS

### a.    Plaintiff Michael Douglas' Experience

91.    Plaintiff Michael Douglas is a former employee of Defendant.

92.    As a condition of his employment, Plaintiff Douglas was required to provide his Private Information to Defendant.

93.     Plaintiff Douglas became aware of the Data Breach through social media and news coverage. He learned that information such as full names, Social Security numbers, driver's license/state identification numbers, financial account and/or payment card information, medical information, health information, and dates of birth were compromised in the breach and he reasonably believes that his information was among those compromised.

94.     After the breach, Plaintiff Douglas experienced a dramatic increase in the number of spam phone calls and emails.

95.     As a result of the Data Breach and the resulting suspicious activity, Plaintiff Douglas has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. He has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

96.     As a result of the Data Breach, Plaintiff Douglas has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his private information for purposes of identity theft and fraud.  Plaintiff Douglas is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

97.     Plaintiff Douglas suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained

from her; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

98.     As a result of the Data Breach, Plaintiff Douglas anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**b.** **Plaintiff Dorothy Goodon's Experience**

99.     Plaintiff Dorothy Goodon is a former employee and customer of Defendant. She was employed by Defendant from March 2021 to December 2022, and she ordered meals from Defendant for her mother.

100.     As a condition of both her employment by Defendant, and to be a customer of Defendant, Plaintiff Goodon was required to provide her Private Information to Defendant as part of her employment and to order products.

101.     In and around the mid-August of 2023, Plaintiff Goodon became aware of the Data Breach through social media and news coverage. She learned that information such as full names, Social Security numbers, driver's license/state identification numbers, financial account and/or payment card information, medical information, health information, and dates of birth were compromised in the breach and she reasonably believed that her information was among those compromised. On August 31, 2023, Plaintiff Goodon received Defendant's data breach notice which confirmed that her information had indeed been compromised in the breach.

102.     After the Data Breach, her bank account was compromised multiple times and she has experienced a significant increase in the number of spam calls and emails.

103.     As a result of the Data Breach and the subsequent suspicious activities, Plaintiff Goodon has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. She has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

104.     As a result of the Data Breach, Plaintiff Goodon has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her private information for purposes of identity theft and fraud.  Plaintiff Goodon is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

105.     Plaintiff Goodon suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

106.     As a result of the Data Breach, Plaintiff Goodon anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS REPRESENTATION ALLEGATIONS

107.    Plaintiffs bring this action on behalf of themselves and, pursuant to Fed. R. Civ. P.

23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed
> in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to

this case. Plaintiffs reserve the right to modify, change or expand the Class definition after

conducting discovery.

108.    In the alternative, Plaintiff Goodon bring this action on behalf of herself and,

pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All persons who are residents of the State of Iowa whose Private
> Information was accessed in the Data Breach (the "Iowa Subclass").

Excluded from the Subclass are Defendant, its executives and officers, and the Judge(s) assigned

to this case.

109.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of

all members is impracticable with an estimated 1,237,681 affected individuals.[39] The exact number

and identities of individual members of the Class are unknown at this time, such information being

in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery

process. The members of the Class will be identifiable through information and records in

Defendant's possession, custody, and control.

110.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common

questions of law and fact exist as to all members of the Class. These questions predominate over

---

[39] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/c7ad1c53-6e20-41d8-8fb6-f1ccd0e3e0cc.shtml
(last accessed August 31, 2023).

the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a.      When Defendant learned of the Data Breach;

      b.      Whether hackers obtained Class Members' Private Information via the Data Breach;

      c.      Whether Defendant's response to the Data Breach was adequate;

      d.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

      e.      Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations, industry standards, and/or its own promises and representations;

      f.      Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

      g.      Whether Defendant owed a duty to Class Members to safeguard their Private Information;

      h.      Whether Defendant breached its duty to Class Members to safeguard their Private Information;

      i.      Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

      j.      Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

      k.      Whether Defendant's conduct violated the FTCA, HIPAA, and/or the Consumer Protection Act invoked herein;

      l.      Whether Defendant's conduct was negligent;

      m.      Whether Defendant's conduct was *per se* negligent;

      n.      Whether Defendant was unjustly enriched;

      o.      What damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct;

p.      Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

q.      Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

r.      Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

111.    <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all members of the Class had their Private Information compromised in the Data Breach. Plaintiffs' claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiffs are entitled to is typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

112.    <u>Adequacy</u>: Plaintiffs are adequate class representatives because their interests do not materially or irreconcilably conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that are antagonistic to the interests of other members of the Class.

113.    <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class, a class action is the most superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual

litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

## VI.   CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

114.   Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

115.   Defendant owes a duty of care to protect the Private Information belonging to Plaintiffs and Class Members. Defendant also owes several specific duties including, but not limited to, the duty:

   a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

   b.   to protect customers' and employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

   c.   to have procedures in place to detect the loss or unauthorized dissemination of Private Information in its possession;

   d.   to employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the FTCA;

   e.   to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

   f.   to promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

116.     Defendant also owes this duty because Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 requires Defendant to use reasonable measures to protect confidential data.

117.     Defendant also owes this duty because industry standards mandate that Defendant protect its customers' and employees' confidential Private Information.

118.     Defendant also owes this duty because it had a special relationship with Plaintiffs' and Class members. Plaintiffs and Class members entrusted their Private Information to Defendant on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendant had the ability to protect its systems and the Private Information stored on them from attack.

119.     Defendant also owes a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiffs and the Class. This duty exists to allow Plaintiffs and the Class the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

120.     Defendant breached its duties to Plaintiffs and the Class by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard the Private Information belonging to Plaintiffs and Class members.

121.     Defendant also breached the duties it owed to Plaintiffs and the Class by failing to timely and accurately disclose to Plaintiffs and Class members that their Private Information had been improperly acquired and/or accessed.

122.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Permanent increased risk of identity theft.

123.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

124.    In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiffs and Class Members.

125.    Plaintiffs are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

126.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

127.    Section 5 of the FTCA imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiffs and Class Members.

128.    HIPAA imposes a duty on Defendant to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information. 42 U.S.C. § 1302(d), *et seq*.

129.    HIPAA also requires Defendant to render unusable, unreadable, or indecipherable all Private Information it collected. Defendant was required to do so through "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

130.    In the event of a data breach, HIPAA obligates Covered Entities and Business Associates to notify affected individuals, prominent media outlets, and the Secretary of the Department of Health and Human Services of the data breach without unreasonable delay and in no event later than 60 days after discovery of the data breach. 45 CFR § 164.400, *et seq.*

131.    Defendant violated the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiffs' and Class Members' Private Information.

132.    Defendant violated HIPAA by failing to properly encrypt the Private Information it collected.

133.    Defendant violated HIPAA by unduly delaying reasonable notice of the actual breach; in this case by 184 days.

134.    Defendant's failure to comply with HIPAA and the FTCA constitutes negligence *per se*.

135.    Plaintiffs and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect.

136.    It was reasonably foreseeable that the failure to protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

137.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

138.    Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

139.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

140.    Plaintiffs and the Class provided Defendant with their Private Information.

141.    By providing their Private Information, and upon Defendant's acceptance of this information, Plaintiffs and the Class, on one hand, and Defendant, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

142.    The implied contracts between Defendant and Plaintiffs and Class members obligated Defendant to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiffs' and Class members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendant expressly adopted and assented to these terms in its public statements, representations and promises as described above.

143.    The implied contracts for data security also obligated Defendant to provide Plaintiffs and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

144.    Defendant breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiffs and Class members; allowing unauthorized persons to access Plaintiffs' and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiffs and Class members, as alleged above.

145.    As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiffs and the Class have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

146.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

147.    This count is brought in the alternative to Count III.

148.    Plaintiffs and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendant.

149.    Defendant was benefitted by the conferral upon it of Plaintiffs' and Class members' Private Information and by its ability to retain and use that information. Defendant understood that it was in fact so benefitted.

150.    Defendant also understood and appreciated that Plaintiffs' and Class members' Private Information was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

151.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, Plaintiffs and Class members would not have provided or authorized their Private Information to be provided to Defendant, and Defendant would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that its data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining customers, gaining the reputational advantages conferred upon it by Plaintiffs and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

152.    As a result of Defendant's wrongful conduct as alleged herein (including, among other things, its deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; its failure to employ adequate data security measures; its continued maintenance and use of the Private Information belonging to Plaintiffs and Class members without having adequate data security measures; and its other conduct facilitating the theft of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

153.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class

members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

154.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and the Class in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

155.     The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

156.     Defendant is therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically the value to Defendant of the PII and medical information that was accessed and exfiltrated in the Data Breach and the profits Defendant receives from the use and sale of that information.

157.     Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

158.     Plaintiffs and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT V**
**VIOLATION OF THE IOWA CONSUMER FRAUDS ACT**
**Iowa Code Chapter 714H. *et seq.***
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

159.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

160.    The ICFA prohibits a person or entity from:

> [Engaging] in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement [and/or] sale[.]

Iowa Code § 714H.3(1).

161.    Iowa Code defines an unfair practice as "an act or practice which causes substantial, unavoidable injury to consumer that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714.16(1)(n).

162.    Defendant's deceptive acts or practices in the conduct of business include, but are not limited to:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' Private Information, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information, including but not limited to duties imposed by the FTC Act, which were direct and proximate causes of the Data Breach;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class members' Private Information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class members' Private Information;

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information; and

h.   Failing to promptly and adequately notify Plaintiffs and the Class that their Private Information was accessed by unauthorized persons in the Data Breach.

163.   Defendant is engaged in, and its acts and omissions affect, trade and commerce. Defendant's relevant acts, practices and omissions complained of in this action were done in the course of Defendant's business of marketing, offering for sale, and selling goods and services throughout Iowa and the United States.

164.   Defendant had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of Plaintiffs' and Class members' Private Information. This exclusive knowledge includes, but is not limited to, information that Defendant received through internal and other non-public audits and reviews that concluded that Defendant's security policies were substandard and deficient, and that Plaintiffs' and Class members' Private Information and other Defendant data was vulnerable.

165.   Defendant had exclusive knowledge about the extent of the Data Breach, including during the days, weeks, and months following the Data Breach.

166.   Defendant also had exclusive knowledge about the length of time that it maintained individuals' Private Information after they stopped using services that necessitated the transfer of that Private Information to Defendant.

167.   Defendant failed to disclose, and actively concealed, the material information it had regarding Defendant's deficient security policies and practices, and regarding the security of the sensitive Private Information. For example, even though Defendant has long known, through internal audits and otherwise, that its security policies and practices were substandard and

deficient, and that Plaintiffs' and Class members' Private Information was vulnerable as a result, Defendant failed to disclose this information to, and actively concealed this information from, Plaintiffs, Class members and the public. Defendant also did not disclose, and actively concealed, information regarding the extensive length of time that it maintains customers' and employees' Private Information and other records. Likewise, during the days and weeks following the Data Breach, Defendant failed to disclose, and actively concealed, information that it had regarding the extent and nature of the Data Breach.

168.     Defendant had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information, it actively concealed the information, and because Defendant was in a fiduciary position by virtue of the fact that Defendant collected and maintained Plaintiffs' and Class members' Private Information.

169.     Defendant's representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendant's data security and its ability to protect the confidentiality of current and former customers' and employees' Private Information.

170.     Had Defendant disclosed to Plaintiffs and the Class that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business without adopting reasonable data security measures and complying with the law. Instead, Defendant received, maintained, and compiled Plaintiffs' and Class members' Private Information without advising that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their Private Information.

171.     Accordingly, Plaintiffs and Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

172.   Defendant's practices were also contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws, such as HIPAA and the FTC Act.

173.   The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or to competition, and are not injuries that Plaintiffs and the Class should have reasonably avoided.

174.   The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiffs and the Class as a direct result of Defendant's deceptive acts and practices as set forth herein include, without limitation:

   a.   unauthorized charges on their debit and credit card accounts;

   b.   theft of their Private Information;

   c.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

   d.   loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

   e.   costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

   f.   the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

   g.   damages to and diminution in value of their personal information entrusted to Defendant, and with the understanding that Defendant would safeguard

their data against theft and not allow access and misuse of their data by others; and

h.   the continued risk to their Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect data in its possession.

175.   Plaintiffs and the Class seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their Private Information without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## COUNT VI
## VIOLATION OF THE
## IOWA PERSONAL INFORMATION SECURITY BREACH PROTECTION ACT
**Iowa Code Ch. 715C, *et seq.***
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

176.   Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

177.   The PISBPA provides that:

Any person who owns or licenses computerized data that includes a consumer's personal information that is used in the course of the person's business…and that was subject to a breach of security shall give notice of the breach of security following discovery of such breach of security…to any consumer whose personal information was included in the information that was breached. The consumer notification shall be made in the most expeditious manner possible and without unreasonable delay.

Iowa Code § 715C.2(1).

178.   Iowa Code § 715C.1(11)(a)(1-3) defines "personal information" as "an individual's first name or first initial and last name in combination with any one or more of the following[:] social security number, driver's license number, and financial account information.

179.   Defendant owned or licensed computerized data, which included its current and former customers' and employees' Private Information, as part of its operations; specifically, it

was a licensee of this information in using it to identify customers and employees, provide services, and by storing this valuable and highly sensitive information on its computer systems and network.

180.    Defendant became aware, or should have been aware based on ample evidence, of the intrusion and Data Breach on or about February 22, 2023, yet it delayed until August 25, 2023, before sending out notices to affected individuals.

181.    Under Iowa Code § 715C.2(2), Defendant was required to send notice of the breach to victims "immediately following discovery of such breach of security if a consumer's personal information was included . . . ." Defendant failed to send the requisite "immediate" notice under Iowa law and ran afoul of PISBPA.

182.    Furthermore, because Defendant was aware of the breach of security of its systems, Defendant had an obligation to disclose the Data Breach in a timely fashion without unreasonable delay.

183.    This delay on the part of Defendant caused additional harm to Plaintiffs and the Class because they were not able to immediately take precautionary action to prevent and mitigate the effects of identity theft and financial fraud.

184.    By failing to disclose the Data Breach in a timely and reasonable manner, Defendant violated Iowa Code §§ 715C.2(1).

185.    Pursuant to Iowa Code § 715C.2(9), a violation of this section is considered an unlawful practice under Iowa Code §§ 714.16(7).

186.    Plaintiffs and the Class seek all monetary and non-monetary relief allowed by PISBPA, including actual or nominal damages; declaratory and injunctive relief; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## COUNT VII
## VIOLATION OF THE STATE DATA BREACH STATUTES
### (By Plaintiffs on behalf of the Class)

187.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

188.     Defendant is a corporation that owns, maintains, and records Private Information, and computerized data including Private Information, about its current and former customers and employees, including Plaintiffs and Class members.

189.     Defendant is in possession of Private Information belonging to Plaintiffs and Class members and is responsible for reasonably safeguarding that Private Information consistent with the requirements of the applicable laws pertaining hereto.

190.     Defendant failed to safeguard, maintain, and dispose of, as required, the Private Information within its possession, custody, or control as discussed herein, which it was required to do by all applicable State laws.

191.     Defendant, knowing and/or reasonably believing that Plaintiffs' and Class members' Private Information was acquired by unauthorized persons during the Data Breach, failed to provide reasonable and timely notice of the Data Breach to Plaintiffs and Class members as required by following data breach statutes.

192.     Defendant's failure to safeguard this Private Information belonging to Plaintiffs and Class members and its failure to provide timely and accurate notice of the Data Breach violated the following state data breach statutes:

        a.        Alaska Stat. Ann. § 45.48.010(a), *et seq.*;

        b.        Ark. Code Ann. § 4-110-105(a), *et seq.*;

        c.        Cal. Civ. Code § 1798.80, *et seq.*;

        d.        Colo. Rev. Stat. Ann § 6-1-716(2), *et seq.*;

e.      Conn. Gen. Stat. Ann. § 36a-701b(b), *et seq.*;

f.      Del. Code Ann. Tit. 6 § 12B-102(a), *et seq.*;

g.      D.C. Code § 28-3852(a), *et seq.*;

h.      Fla. Stat. Ann. § 501.171(4), *et seq.*;

i.      Ga. Code Ann. § 10-1-912(a), *et seq.*;

j.      Haw. Rev. Stat. § 487N-2(a), *et seq.*;

k.      Idaho Code Ann. § 28-51-105(1), *et seq.*;

l.      Illinois Statute 815 ILCS 530/1, *et seq.*;

m.      Iowa Code Ann. § 715C.2(1), *et seq.*;

n.      Kan. Stat. Ann. § 50-7a02(a), *et seq.*;

o.      Ky. Rev. Stat. Ann. § 365.732(2), *et seq.*;

p.      La. Rev. Stat. Ann. § 51:3074(A), *et seq.*;

q.      Md. Code Ann., Commercial Law § 14-3504(b), *et seq.*;

r.      Mass. Gen. Laws Ann. Ch. 93H § 3(a), *et seq.*;

s.      Mich. Comp. Laws Ann. § 445.72(1), *et seq.*;

t.      Minn. Stat. Ann. § 325E.61(1)(a), *et seq.*;

u.      Mont. Code Ann. § 30-14-1704(1), *et seq.*;

v.      Neb. Rev. Stat. Ann. § 87-803(1), *et seq.*;

w.      Nev. Rev. Stat. Ann. § 603A.220(1), *et seq.*;

x.      N.H. Rev. Stat. Ann. § 359-C:20(1)(a), *et seq.*;

y.      N.J. Stat. Ann. § 56:8-163(a), *et seq.*;

z.      N.C. Gen. Stat. Ann. § 75-65(a), *et seq.*;

aa.      N.D. Cent. Code Ann. § 51-30-02, *et seq.*;

bb.     Okla. Stat. Ann. Tit. 24 § 163(A), *et seq.*;

cc.     Or. Rev. Stat. Ann. § 646A.604(1), *et seq.*;

dd.     R.I. Gen. Laws Ann. § 11-49.3-4(a)(1), *et seq.*;

ee.     S.C. Code Ann. § 39-1-90(A), *et seq.*;

ff.     Tenn. Code Ann. § 47-18-2107(b), *et seq.*;

gg.     Tex. Bus. & Com. Code Ann. § 521.053(b), *et seq.*;

hh.     Utah Code Ann. § 13-44-202(1), *et seq.*;

ii.     Va. Code. Ann. § 18.2-186.6(B), *et seq.*;

jj.     Wash. Rev. Code Ann. § 19.255.010(1), *et seq.*;

kk.     Wis. Stat. Ann. § 134.98(2), *et seq.*; and

ll.     Wyo. Stat. Ann. § 40-12-502(a), *et seq.*

193.     As a result of Defendant's failure to reasonably safeguard Plaintiffs' and Class members' Private Information, and the failure to provide reasonable and timely notice of the Data Breach to Plaintiffs and Class members, Plaintiffs and the Class have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Private Information in Defendant's possession, and are entitled to damages in an amount to be proven at trial.

**COUNT VIII**
**BAILMENT**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

194.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

195.     Plaintiffs' and Class members' Private Information was provided to Defendant.

196.     In delivering their Private Information, Plaintiffs and Class members intended and understood that their Private Information would be adequately safeguarded and protected.

197.    Defendant accepted Plaintiffs' and Class members' Private Information.

198.    By accepting possession of Plaintiffs' and Class members' Private Information, Defendant understood that Plaintiffs and the Class expected their Private Information to be adequately safeguarded and protected. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

199.    During the bailment (or deposit), Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care, diligence, and prudence in protecting their Private Information.

200.    Defendant breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' Private Information, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class members' Private Information.

201.    Defendant further breached its duty to safeguard Plaintiffs' and Class members' Private Information by failing to timely notify them that their Private Information had been compromised as a result of the Data Breach.

202.    Defendant failed to return, purge, or delete the Private Information belonging to Plaintiffs and Class members at the conclusion of the bailment (or deposit) and within the time limits allowed by law.

203.    As a direct and proximate result of Defendant's breach of its duty, Plaintiffs' and Class members PII that was entrusted to Defendant during the bailment (or deposit) was damaged and its value diminished.

204.    As a direct and proximate result of Defendant's breach of its duties, Plaintiffs and the Class suffered consequential damages that were reasonably foreseeable to Defendant, including but not limited to the damages set forth herein.

**COUNT IX**
**INTRUSION UPON SECLUSION**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)**

205.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

206.     Plaintiffs and Class members had a reasonable expectation of privacy in the Private Information that Defendant possessed and/or continues to possess.

207.     By failing to keep Plaintiffs' and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendant invaded Plaintiffs' and Class members' privacy by:

      a.     Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

      b.     Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

208.     Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Defendant's actions highly offensive.

209.     Defendant invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

210.     As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

211.     In failing to protect Plaintiffs' and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiffs' and the Class members rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its

own economic, corporate, and legal interests above the privacy interests of its millions of customers and employees. Plaintiffs, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiffs and the Class.

## COUNT X
## DECLARATORY JUDGMENT
### (By Plaintiffs on behalf of the Class, or, in the alternative, the Iowa Subclass)

212.   Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

213.   This count is brought on behalf of all Class members.

214.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described herein.

215.   An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiffs' and Class members' Private Information, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class members from further data breaches that compromise their Private Information. And Plaintiffs allege that Defendant's data security measures remain inadequate.

216.   Plaintiffs and the Class continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

217.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant continues to owe a legal duty to secure Plaintiffs' and

Class members' Private Information, to timely notify them of any data breach, and to establish and implement data security measures that are adequate to secure Private Information.

218.     The Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and Class members' Private Information.

219.     If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy. The threat of another breach of the Private Information in Defendant's possession, custody, and control is real, immediate, and substantial. If another breach of Defendant's network, systems, servers, or workstations occurs, Plaintiffs and the Class will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

220.     The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs at Defendant, Plaintiffs and the Class will likely be subjected to substantial identify theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

221.     Issuance of the requested injunction will serve the public interest by preventing another data breach at Defendant, thus eliminating additional injuries to Plaintiffs and the 1,237,681 other Class members whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.     That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.     That Plaintiffs be granted the declaratory relief sought herein;

C.     That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.     That the Court award Plaintiffs and the Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.     That the Court award Plaintiffs and the Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.     That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.     That the Court award pre- and post-judgment interest at the maximum legal rate;

H.     That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.     That the Court grant all other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.


Date: September 1, 2023                     Respectfully Submitted,

                                            **SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

                                            /s/ J. Barton Goplerud
                                            J. Barton Goplerud
                                            Brian O. Marty
                                            5015 Grand Ridge Drive, Suite 100
                                            West Des Moines, IA 50265
                                            Tel: (515) 223-4567
                                            Fax: (515) 223-8887
                                            goplerud@sagwlaw.com
                                            marty@sagwlaw.com

Daniel O. Herrera*
Nickolas J. Hagman*
Alex Lee*
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com
alee@caffertyclobes.com

*Attorneys for Plaintiffs and the Proposed Class*
*\* pro hac vice* applications forthcoming