**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| In re: Purfoods, Inc. Data Security Litigation | Case No.: 4:23-cv-00332-RGE-SBJ |
| This Filing Relates to:<br>All Cases | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   PROCEDURAL BACKGROUND ......................................................................... 1

III.  SUMMARY OF THE PROPOSED SETTLEMENT ........................................... 2

IV.   ARGUMENT AND AUTHORITY ....................................................................... 5

   A.   The Court Should Grant Preliminary Approval ................................................. 5

      1.    The Settlement Provides a Fair, Adequate, and Reasonable Result for the Settlement

      Class Members. .................................................................................................. 7

      2.    The Settlement Provides the Best Class Notice Practicable. ....................................... 13

   B.   Certification of the Settlement Class is Appropriate .......................................... 15

      1.    The Elements of the Federal Rule of Civil Procedure 23(a) are Satisfied. ................... 16

      2.    The Requirements of Rule 23(b)(3) are Satisfied for Purposes of a Settlement Class. 20

V.    CONCLUSION .................................................................................................... 21

## **TABLE OF AUTHORITIES**

CASES

*Alaniz v. California Processors, Inc.*,

    73 F.R.D. 269, 273 (N.D. Cal. 1976) ...............................................................6

*Baby Neat for & by Kanter v. Casey*,

    43 F.3d 48 (3d Cir. 1994) ...............................................................................17

*Bennett v. Nucor Corp.*,

    656 F.3d 802 (8th Cir. 2011) .........................................................................17

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,

    100 F.3d 1041 (1st Cir. 1996) .......................................................................13

*Cook v. Rockwell Int'l Corp.*,

    151 F.R.D. 378 (D. Colo. 1993) ...................................................................19

*Galloway v. Kansas City Landsmen, LLC*,

    833 F.3d 969 (8th Cir. 2016) .........................................................................10

*Gen. Tel. Co. of the Southwest v. Falcon*,

    457 U.S. 147 (1982) .......................................................................................18

*Grove v. Principal Mutual Life Ins. Co.*,

    200 F.R.D. 434 (S.D. Iowa 2001) ...........................................................7, 17

*Grunin v. Int'l House of Pancakes*,

    513 F.2d 114 (8th Cir. 1975) .........................................................................14

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

    855 F. Supp. 825 (E.D.N.C. 1994) .................................................................9

*Huyer v. Buckley*,

    849 F.3d 395 (8th Cir. 2017*)* ..........................................................................11

*In re Conseco Life Ins. Co. Cost of Ins. Litigation*,

    2005 WL 5678842 at *3 (C.D. Cal., Apr 26, 2005) .......................................20

*In re U.S. Bancorp Litig.*,

    291 F.3d 1035 (8th Cir. 2002) ........................................................................11

*In re Teflon Prod. Liab. Litig.*,

    254 F.R.D. 354, 364 (S.D. Iowa 2008) ...........................................................17

*Johnston v. Comerica Mortg. Corp.*,

    83 F.3d 241 (8th Cir. 1996) ............................................................................10

*Liddell v. Bd. of Educ. of City of St. Louis*, State of Mo.,

    567 F. Supp. 1037 (E.D. Mo. 1983) ...............................................................12

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,

    921 F.2d 1371 (8th Cir. 1990) ..........................................................................6

*Low v. Trump Univ., LLC*,

    246 F. Supp. 3d 1295 (S.D. Cal. 2017)...........................................................15

*Marshall v. Holiday Magic, Inc.*,

    550 F.2d 1173 (9th Cir. 1977) ..........................................................................9

*Marshall v. Nat'l Football League*,

    787 F.3d 502 (8th Cir. 2015) ............................................................................5

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

    339 U.S. 306 (1950)........................................................................................14

*Paxton v. Union Nat'l Bank*,

    688 F.2d 552 (8th Cir. 1982) .................................................................................... *passim*

*Petrovic v. Amoco Oil Co.*,

    200 F.3d 1140 (8th Cir. 1999) ..................................................................................7, 10

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,

    390 U.S. 414 (1968) .................................................................................................8–9

*Reed v. General Motors Corp.*,

    703 F.2d 170 (5th Cir. 1983) ...................................................................................6–7

*Riker v. Gibbons*,

    No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ..................12

*Sanft v. Winnebago Industries, Inc.*,

    214 F.R.D. 514 (N.D. Iowa 2003) ...................................................................................16

*Swinton v. SquareTrade, Inc.*,

    454 F. Supp. 3d 848 (S.D. Iowa 2020) .............................................................................9

*Travelers Prop. Cas. Ins. Co. v. Nat'l Union Ins. Co.*,

    735 F.3d 993 (8th Cir. 2013) .........................................................................................10

*Wineland v. Casey's General Stores, Inc.*,

    267 F.R.D. 669 (S.D. Iowa 2009) ..................................................................................13

## OTHER AUTHORITY

2 Newberg § 7.24 ...........................................................................................................19

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002).............12

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

Federal Judicial Center, Illustrative Forms of Class Action Notices:

Overview, https://www.fjc.gov/content/301253/illustrative-forms-class-

action-notices-introduction (last visited Feb. 19, 2024) ....................................................14

Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 (3d ed. 1993) ......................6

Manual For Complex Litigation (Third) § 30.41 (1995) ......................................................5–6, 11

## I.   INTRODUCTION

Plaintiffs Michael Douglas, Dorothy Goodon, Dorothy Alexander, Stella Keritsis, Johnnie Jones, Yolanda Betts, Steven D'Angelo, Christine Ashe, Vernita Ford, Diane Young, and Logan Aldridge (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, seek preliminary approval of the proposed class action settlement, which includes a non-reversionary settlement fund ("Settlement Fund") of $4,250,000.00 (the "Total Settlement Consideration") for the benefit of Plaintiff and Class Members, as well as implementation of business practice changes related to data security, as described below (the "Settlement"). The terms of the Settlement are incorporated in the settlement agreement, signed by Plaintiffs and Defendant PurFoods, Inc. d/b/a Mom's Meals ("Defendant" or "PurFoods") (collectively with Plaintiffs, "the Parties") on October 22, 2024 (the "Settlement Agreement"), attached hereto as **Exhibit 1**. If approved by the Court, this Settlement will resolve all of the claims Plaintiffs and the Settlement Class Members (as defined below) have brought or may have brought in this action ("Action") against Defendant.

## II.   PROCEDURAL BACKGROUND

This consolidated lawsuit arises from the alleged compromise of Plaintiffs' and the Settlement Class Members' personally identifiable information ("PII") due to a breach of PurFoods' network and systems. On or around February 22, 2023, PurFoods detected third-party criminal activity on its network (the "Data Incident"). Upon further investigation of the matter, PurFoods determined that a third-party gained unauthorized access to its network between January 16, 2023 and February 22, 2023. In or around August and September of 2023, PurFoods sent notice of the Data Incident to approximately 1,249,219 individuals, informing them that their PII was potentially accessed and exfiltrated as a result of the Data Incident.

In response, ten class action lawsuits were filed against PurFoods for claims arising out of the Data Incident (the "Related Actions"). On October 10, 2023, this Court granted the Parties'

Joint Motion to Consolidate the Related Actions under Federal Rule of Civil Procedure 42(a). (ECF No. 16). The Court directed that the Related Actions be consolidated under the first filed case, *Douglas, et al. v. PurFoods, LLC*, No. 4:23-cv-00332-RGE-SBJ (S.D. Iowa). *Id.* The Plaintiffs subsequently filed their Consolidated Class Action Complaint ("Complaint") on November 28, 2024. (ECF No. 30).

In January 2024, the Parties began settlement discussions. Thereafter, the Parties agreed to attend a full-day mediation on May 6, 2024 before Jill Sperber, Esq. of Judicate West. Prior to the mediation, the Parties engaged in an informal exchange of information and documents and presented their positions and arguments in confidential submissions to Ms. Sperber. At the May 6, 2024 mediation, the Parties were able to reach an agreement in principle following back-and-forth, arms-length negotiations and advocacy by counsel on behalf of the Parties. The Settlement is memorialized in the Settlement Agreement, Ex. 1.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

The scope of the Settlement Class largely mirrors that which Plaintiffs pled in their Complaint and is defined as "all residents of the United States who were sent notice that their personal information was accessed, stolen, or compromised as a result of the Data Incident." Ex. 1, § 1.35.[1] The Settlement Class Members includes all persons within the Settlement Class who do not timely opt-out of the Settlement. *Id.* at § 1.36. For full and complete settlement and release between Plaintiffs, the Settlement Class Members, and PurFoods, PurFoods has agreed to pay

---

[1] The Settlement Class specifically excludes: (i) PurFoods and its respective officers and directors; (ii) any Person who would otherwise be a member of the Settlement Class but who timely and validly requests exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement, the Court's staff, and the Court's immediate family members; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

$4,250,000.00 into a non-reversionary Settlement Fund, and PurFoods has implemented business practice changes related to data security.

Under the terms of the Settlement Agreement, Settlement Class Members who submit a valid and timely Claim Form to the Settlement Administrator may elect to receive a Cash Award payment, the amount of which will be calculated as set forth in Section 2.4 of the Settlement Agreement.  S.A. § 2.2(a). Alternatively, Settlement Class Members may submit a Claim Form seeking reimbursement of documented losses, up to $5,000.00. *Id.* at § 2.2(b). Settlement Class Members may also elect to receive three (3) years of three-bureau Credit Monitoring and Insurance Services ("CMIS") regardless of whether they make a claim for payment. *Id.* at § 2.3. The CMIS will have an enrollment period of twelve (12) months after the enrollment codes are sent to Settlement Class Members claiming this benefit. The CMIS will include the following services to be provided to each Settlement Class Member who submits a valid and timely Claim Form and elects the CMIS: (i) up to $1 million dollars of identity theft insurance coverage; (ii) three-bureau credit monitoring providing notice of changes to the Settlement Class Member's credit profile; (iii) alerts for activity including new inquiries, new accounts created, change of address requests, changes to public records, postings of potentially negative information, and other leading indicators of identity theft; (iv) customer care and dedicated fraud resolution agent; (v) comprehensive educational resources; and (vi) extended fraud resolution.

Following Plaintiffs' counsel's evaluation of multiple settlement administration bids, the Parties have agreed to the proposal of Kroll Settlement Administration ("Kroll") to serve as the Settlement Administrator, subject to the Court's approval.  The proposed notice program, which includes claims administration and processing as discussed herein and in Section 3.3 of the

Settlement Agreement, will commence within thirty (30) days of this Court's order preliminarily approving the Settlement.

PurFoods also has made business practice changes relating to data security. *Id.* at § 2.5. PurFoods has submitted to the law firms of Cafferty Clobes Meriwether & Sprengel LLP, Milberg Coleman Bryson Phillips Grossman PLLC, Siri & Glimstad LLP, and Federman & Sherwood ("Settlement Class Counsel" or "Class Counsel") a declaration attesting to additional data security procedures put in place since the Data Incident. None of the past or future costs associated with the development and implementation of these additional security procedures has been or will be paid by Plaintiffs and no portion of the Settlement Fund is to be used for this purpose.

Additionally, Plaintiffs may seek service awards not to exceed $2,500.00 each in recognition of their time and service to the Settlement Class ("Service Awards"). Any such amount the Court awards shall be paid from the Settlement Fund. An award in this case is appropriate as the named Plaintiffs spent time providing Class Counsel with information regarding this Data Breach, aiding Class Counsel in mediation, and promoting the claims of the class.

Class Counsel will submit an application with their opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of up to 33.33% of the Settlement Fund; (b) payment of expenses or charges resulting from the prosecution of the Action; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Unless otherwise ordered by the Court, such fees and expenses shall be paid from the Settlement Fund within forty-five (45) business days after the Effective Date. *Id.* at § 7.4.

Once Costs of Settlement Administration, Taxes and Tax-Related Expenses, Court-approved attorneys' fees and expenses, and any Service Awards to Plaintiffs have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall first be applied to be

used to pay for CMIS claimed by Settlement Class Members and then distributed to Settlement Class Members who filed a Claim Form electing the Documented Loss Payment or Cash Award, as set forth *supra*. *Id.* at § 2.4. Any funds remaining in the Net Settlement Fund following payment distribution will be distributed *pro rata* to Settlement Class Members who submitted approved claims and cashed their initial checks, unless the Settlement Administrator determines any additional distribution would not be economically feasible considering the amount of funds remaining (including for instance, if the average additional distribution per recipient would be *de minimis*), in which case any remaining funds shall be distributed to a charitable organization approved by the Parties and subject to Court approval. *Id.* at §§ 1.9, 8.6.

In sum, the Settlement provides a simple, straightforward claims process by which Settlement Class Members may obtain an award from the Settlement or opt-out therefrom. In exchange for the monetary and non-monetary benefits provided under the Settlement, Settlement Class Members will release any and all claims against PurFoods and the Released Parties arising from or related in any way to the claims that have been brought or could have been brought in this Action. *Id.* at § 6.

## IV.   ARGUMENT AND AUTHORITY

### A.  The Court Should Grant Preliminary Approval

Under Federal Rule of Civil Procedure 23(e)(2), a court must review a class action settlement "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (citation omitted).

The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual For Complex Litigation (Third) § 30.41, at p. 236 (1995). At the preliminary stage, the court makes an initial determination as to whether the

settlement falls "within the range of possible approval." *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976); Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 (3d ed. 1993) ("Newberg"). As one court has observed, "[t]his determination is similar to a determination that there is 'probable cause' to think the settlement is fair and reasonable." *Alaniz*, 73 F.R.D. at 273.

Preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval.

Manual for Complex Litigation § 30.41 at 265 (3d Ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id*. Considering these issues, as well as the evidence and nature of the Settlement negotiations, Plaintiffs and proposed Settlement Class Counsel submit that preliminary approval of this Settlement is proper.

Courts consistently favor settlements of disputed claims. *See, e.g., Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements ... [and][c]ourts should hospitably receive them."). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg, § 11.41 at pp. 11–88; *Little Rock Sch. Dist*, 921 F.2d at 1391 (same). Indeed, when experienced counsel supports a settlement, as they do here, their opinions are entitled to considerable weight. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). In contrast, "judges should not substitute their own judgment

as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v.*

*Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999) (citation omitted); *Grove v. Principal*

*Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

**1. The Settlement Provides a Fair, Adequate, and Reasonable Result for the Settlement Class Members.**

When determining whether a settlement is fair, reasonable, and adequate, a court must

consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

*i.*   ***Settlement Negotiations***

As indicated above, this Settlement is the result of *lengthy* arms-length negotiation that

look place before an experienced and well-respected data breach mediator, Ms. Jill Sperber, Esq.

of Judicate West. Moreover, the mediation took place after the Parties engaged in meaningful

informal discovery, assisting them in the evaluation of the strengths and weaknesses of their claims

and defenses, as well as the risks of engaging in protracted litigation. The mediation went beyond

a full day and was hard fought on both sides. As such, there is nothing to suggest that this

Settlement was the result of fraud or collusion. Rather, this Settlement, which achieves a value

measurement of $3.40 per Settlement Class Member, falls directly in line and, in many cases,

exceeds the results achieved in other favorable data breach class action settlements. *See e.g.,*

*Owens, et al. v. U.S. Radiology Specialists, Inc., et al.*, No. 22-CVS-17797 (Sup. Ct. Mecklenburg Cty., N.C.) (approving settlement valued at $3.88 per class member); *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022) (approving settlement valued at $3.24 per class member); *In re: Lincare Holdings Inc. Data Breach Litigation*, No. 8:22-cv-01472, 2024 U.S. Dist. LEXIS 110789, at *3 (M.D. Fla. June 24, 2024) (approving settlement valued at $2.50 per class member); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, ECF No. 181-2, 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (approving settlement valued at $0.51 per class member); *In re Target Corp. Customer Data Breach Security Litigation*, MDL No. 2522 (D. Minn.) (approving settlement valued at $0.10 per class member).

###### ii.    *Adequacy of Relief*

####### a.   *Risk, Expense and Delay of Further Litigation*

While Plaintiffs are confident in the strength of their claims and that the Court would certify a class, PurFoods is also confident in its defenses and, as such, Plaintiffs acknowledge the risk that they would be unable to obtain a jury verdict against PurFoods. Before mediation, PurFoods was poised to file a motion to dismiss the claims in their entirety. During mediation, PurFoods raised these and other arguments, including but not limited to, arguments related to the lack of injury and causation, lack of sensitivity of the PII accessed, as well as the potential lack of exfiltration of such information. While Plaintiffs and their Counsel vehemently dispute such arguments, they must take into account the risk, expense, and delay of protracted litigation, trial, and a potentially lengthy appeal after trial that would severely delay any recovery for Settlement Class Members for several more years. This risk of delay weighs in favor of granting preliminary approval of the Settlement. *See, e.g., Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the

litigation); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Under these circumstances, the benefits of a guaranteed recovery today, as opposed to an uncertain result years in the future, are readily apparent. Indeed, the cash value of the Settlement Fund is $4,250,000.00, a figure which, as set forth in the Settlement Agreement, is available to Settlement Class Members to make claims for cash and free credit monitoring services. Moreover, all Settlement Class Members will equally benefit from the business practice changes relating to data security that PurFoods has implemented.

The foregoing therefore demonstrates that the proposed Settlement is fair, reasonable, and adequate. Moreover, for purposes of preliminary approval, these factors establish that the proposed Settlement is "within the range of possible approval," and should be submitted to Settlement Class Members for their consideration. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).

### b. *Proposed method of distributing relief*

In determining the "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," courts consider (1) the method of distributing the relief provided, and (2) whether the class members have been or can be adequately identified. *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 870 (S.D. Iowa 2020).

To distribute the benefits of the Settlement, the Parties have agreed upon a claims process, to be administered by the proposed Settlement Administrator, Kroll. Kroll is experienced in administering class action settlements, including data breach litigation. The proposed Notice Program is discussed at length in Sections 2.4, 3.3, and 8.1–8.6 of the Settlement Agreement.

Moreover, after learning of the Data Incident, Kroll was involved in the measures taken by PurFoods to identify and notify the persons affected by the Data Incident. Thus, the Settlement Class is well-defined and PurFoods has agreed to ensure that Kroll has all the information

necessary, including Settlement Class Member contact information, to aid in timely and effectively notifying the Settlement Class Members of the Settlement. S.A., § 3.3(a). Additional steps to notify Settlement Class Members of the Settlement are described in Section 3.3 of the Settlement Agreement.

### c. Attorneys' fees

Class Counsel will submit an application with their opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of up to 33.33% of the Settlement Fund ($1,416,525.00), to be paid from the Settlement Fund; (b) payment of expenses or charges resulting from the prosecution of the Litigation in an amount not to exceed $50,000.00; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.[2] Proposed Settlement Class Counsel's estimated maximum expense figure is based on their and additional counsel's current expenses, as well as estimates of incurred expenses that have not yet been invoiced and expenses that will be incurred between now and the filing of an application for award of attorneys' fees and expenses. These fees and expenses requested here are typical in complex data breach and other class action cases. *See Huyer v.*

---

[2] In exercising its discretion to award attorneys' fees, a district court generally applies one of two methods to determine a reasonable fee amount: the "lodestar" method, under which "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action," or the "percentage of the benefit" method, under which the fee amount is "equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996); *see also Petrovic*, 200 F.3d at 1157 (noting well-established rule that a district court may use the percentage-of-the-benefit method in a common-fund settlement case)."It is within the discretion of the district court to choose which method to apply," *Johnston*, 83 F.3d at 246, 247 (reiterating that "[t]he district court is free to utilize either the lodestar or the percentage of the benefit method"); *see also Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016) (same), as well as to determine the resulting amount that constitutes a reasonable award of attorneys' fees in a given case, *see Travelers Prop. Cas. Ins. Co. v. Nat'l Union Ins. Co.*, 735 F.3d 993, 1002 (8th Cir. 2013).

*Buckley*, 849 F.3d 395, 399 (8th Cir. 2017*)* (citations omitted) ("courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions"). *See also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that district court did not abuse its discretion by applying percentage-of-the-benefit method to award 36% of the settlement fund amount); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (same).  *See also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991) ("The majority of common fund fee awards fall between 20% to 30% of the fund," with 25 percent as "a 'bench mark' percentage fee award."); Manual for Complex Litigation § 14.121 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."); *Swinton*, 454 F. Supp. 3d at 888 ("Empirical data on fee awards demonstrate that percentage awards in class actions are generally between 20–30% [of recovery], with the average hovering around 25%." (quoting 5 Newberg on Class Actions § 15:83 (5th Ed. 2011)).

### iii.    *Collateral agreements*

Finally, under Rule 23(e)(2)(C), the Court must also consider the Settlement against the terms of any side agreements the parties have made in connection with the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Parties have confirmed there are no such agreements.

### iv.    *Equitable Treatment*

The proposed Settlement allocation is reasonable and equitable. There is no requirement that all class members in a settlement be treated equally. *See Nat'l Football League*, 787 F.3d at 510. The Eighth Circuit Court of Appeals has advised that "in evaluating the strength of the plaintiffs' case and the potential value, the district court must take into account the interest of the entire class." *Id.* at 519. "Thus, it must balance the claims of those with potentially substantial damages to those with potentially minimal or insignificant damages." *Id.* at 519–20.

Here, all Settlement Class Members have the equal opportunity to make a Claim for monetary compensation under the Settlement, as well as to sign up for free credit monitoring and insurance services. *Id.* at §§ 2.2-2.3. Once all Claims have been timely made, the Settlement Administrator will apply the Net Settlement Fund to Documented Loss Payments and Cash Award payments as described in Section 2.4 of the Settlement Agreement. Moreover, all Settlement Class Members will benefit from the business practice changes relating to data security that PurFoods has implemented.

### v.    *Experience and Views of Class Counsel*

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4-5 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)); *Liddell v. Bd. of Educ. of City of St. Louis*, State of Mo., 567 F. Supp. 1037, 1046 (E.D. Mo. 1983) (holding that the court may consider competent counsel's opinion in assessing the reasonableness of a proposed settlement). "'The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation, competence, experience in the particular type of litigation, and the amount of discovery completed.'" *Id.* at *4 (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)).

The proposed Settlement is the product of extensive arms-length negotiations conducted by counsel experienced in class actions, and who are intimately familiar with the strengths and weaknesses of the claims and defenses at issue. Using that litigation experience, counsel was capable of making, and did make, well informed judgments about the adequacy of the Settlement reached. Moreover, proposed Settlement Class Counsel exercised their experience based on an intimate knowledge of the facts of the Litigation and the legal issues facing Plaintiffs, including

12

conducting an independent analysis of the strength and weakness of the claims and value of the claims, the time costs and expense of protracted litigation, discovery, trial and potential appeals.

It is also important to note that there was no collusion with respect to this proposed Settlement. There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009). The initial presumption of fairness of a class settlement may be established by showing: (a) that the settlement has achieved by arm's-length bargaining; (b) that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (c) that the proponents of the settlement are counsel experienced in similar litigation. *See* Newberg § 11.41 at 11-88, 11-91; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

In this case, as explained above, the terms of the Settlement were reached during extensive arms-length negotiations by experienced counsel. Proposed Settlement Class Counsel conducted a thorough pre-suit investigation and engaged in substantial informal discovery leading up to mediation with experienced data breach mediator, Ms. Jill Sperber. In light of the foregoing, the Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

### 2.   The Settlement Provides the Best Class Notice Practicable.

Settlement Class Members must receive the best notice practicable under the circumstances as required under Federal Rule of Civil Procedure 23(c)(2). In other words, notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "[T]he mechanics of the notice process are left to the

13

discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

Under the Settlement Agreement, Settlement Class Members will be provided the best possible opportunity to see, review, and understand the Notice and Settlement. PurFoods will provide the Settlement Administrator with the list of the names, email addresses, and/or physical addresses of all Settlement Class Members identified through its records. Those Settlement Class Members identified will be contacted ***directly*** based on this information. Namely, the Settlement Administrator shall be responsible for printing and mailing and/or emailing (depending on the information available) the notice and Claim Form, to those specific Settlement Class Members identified through PurFoods' records.

The Settlement Administrator will also establish a Settlement Website to which Settlement Class Members may refer for information about the lawsuit and Settlement and submit online Claim Forms and inquiries. The Settlement Administrator will post the Long Notice and Claim Form on the website as well as other important documents and deadlines, in consultation with counsel for the Parties.

Further, the proposed Notices are plain and easily understood, consistent with the guidelines set forth by the Federal Judicial Center.[3] The Notices provide neutral, objective, and accurate information about the nature of the Litigation and the Settlement.[4] The Notices describe the claims, the Settlement Class Members, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim

---

[3] *See* Federal Judicial Center, *Illustrative Forms of Class Action Notices: Overview*, https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited Feb. 19, 2024).
[4] *Id.*

Form, seeking exclusion, objecting, and/or appearing at the Fairness Hearing personally or through counsel. The Parties submit that the Notices provide the best notice practicable under the circumstances and will be highly effective in reaching the Settlement Class Members.

Rule 23(c)(2)(B), in relevant part, provides that the notice shall also apprise class members that "the court will exclude from the class any member who requests exclusion [and] the time and manner for requesting exclusion." *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1307 (S.D. Cal. 2017). A notice of a class member's right to opt out of a class action settlement must be "'of such nature as reasonably to convey the required information' regarding the window for class members to opt out of or remain in the class." *Id.* at 1120 (citation omitted).

The proposed Long Notice, attached as Exhibit B to the Settlement Agreement, will provide clear instructions to Settlement Class Members regarding the procedures they must follow to opt out of the Settlement Class, including the deadline by which Settlement Class Members will be required to opt out. Prior to the date of the Final Approval Hearing, Class Counsel will file with the Court an affidavit from the Settlement Administrator identifying those Persons who have timely and validly excluded themselves from the Settlement. All Settlement Class Members who do not timely and validly opt out of the Settlement Class shall be bound by all terms of the Settlement.

### B.  Certification of the Settlement Class is Appropriate

The benefits of the proposed Settlement can be realized only through certification of the Proposed Settlement Class. Thus, for settlement purposes only, Defendant has agreed to stipulate that the prerequisites for a class action required under Fed. R. Civ. P. 23(c) are satisfied in this case for a settlement class. Rule 23 provides that the district court may certify an action as a class action if it finds: (a) the requirements of Rule 23(a) have been satisfied; (b) a class action should

be permitted for the fair and efficient adjudication of the controversy; and (c) the representative

parties fairly and adequately will protect the interests of the class.

The Proposed Settlement Class meets these requirements.

**1.   The Elements of the Federal Rule of Civil Procedure 23(a) are Satisfied.**

*i.   Numerosity*

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so

numerous that joinder of all members is impracticable." Here, Plaintiffs seek certification of, and

Defendant has stipulated for settlement purposes only to certification of, the following Settlement

Class:

> All residents of the United States who were sent notice that their personal
> information was accessed, stolen, or compromised as a result of the Data Incident.

According to Defendant, there are 1,249,219 members of the Settlement Class spread

across the United States. A class comprised of over a million members is obviously numerous and

renders joinder impracticable. *See Sanft v. Winnebago Industries, Inc.*, 214 F.R.D. 514, 521 (N.D.

Iowa 2003) (finding a class of 51 people to be numerous). This is especially true where there is a

significant geographic distribution among the class members. *Id.* at 522–23.

"In addition to the size of the class, the court may also consider the nature of the action,

the size of the individual claims, the inconvenience of trying individual suits, and any other factor

relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l

Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982). Here, it would be impractical for each individual

member to bring his or her claim. The Settlement Class meets the numerosity requirement,

particularly in light of the class size, the geographic diversity of Settlement Class Members, the

financial resources of Settlement Class Members, and their ability to institute individual lawsuits.

### ii.   *Commonality*

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." This requirement does not mandate commonality on every issue. *In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 364 (S.D. Iowa 2008) (citing *Paxton*, 688 F.2d at 561). "Rather, the issues linking the class members must be 'substantially related' to resolution of the case." *Id.* (citing *Paxton*, 688 F.2d at 561). "A proponent of class certification cannot show commonality by demonstrating merely that the class members have all suffered a violation of the same provision of law." *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). Instead, claims must depend on a "common contention" that must "be 'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation," *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (internal quotes omitted), which is not a very high hurdle to cross. In fact, commonality is "satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neat for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Applying these principles, the commonality requirement of subsection (a)(2) is met here. The Complaint identifies a number of questions of law and fact common to all potential Settlement Class Members. (ECF No. 30, ¶ 350). As the Court has explained in approving a settlement class in a different case, such identification of alleged common issues is sufficient to satisfy the commonality requirement here. *Grove*, 200 F.R.D. at 440. Accordingly, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met.

### iii.    *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims . . . of the class." "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174; *Paxton*, 688 F.2d at 562. In short, to meet the typicality requirement, Plaintiffs simply must demonstrate that the Members of the Settlement Class have the same or similar grievances. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *DeBoer*, 64 F.3d at 1175; *Paxton*, 688 F.2d at 562.

Here, the claims of Plaintiffs and each of the Proposed Settlement Class Members are predicated on the alleged conduct of Defendant with respect to the Data Incident. These claims are common to all Settlement Class Members. Accordingly, the common issues necessarily share "the same degree of centrality" to the named representatives' claims. As such, Plaintiffs can reasonably be expected to advance the interests of all absent Settlement Class Members by settling the liability issues.

### iv.    *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that the representative parties "will fairly and adequately protect the interests of the class." The Eighth Circuit Court of Appeals has instructed:

> The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.

*Paxton*, 688 F.2d at 562-63.

The requirement applies to the Plaintiffs and their legal counsel and is designed to ensure that the interests of absentee Proposed Settlement Class Members are fully pursued. The existence of the elements of adequate representation "[is] usually [presumed] in the absence of contrary

18

evidence." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993) (quoting 2 Newberg § 7.24 at 7-81, 2-82).

Plaintiffs have taken an active and necessary role in aiding Class Counsel in litigating this case and representing the interest of absent class members. Plaintiffs provided information to Class Counsel that formed the basis of the claims in this case, including the individual notices of the Data Incident and their personal experiences and alleged injuries arising therefrom. There is also nothing to suggest that, for purposes of this Settlement, Plaintiffs have interests antagonistic to those of absent Proposed Settlement Class Members in pursuit of the legal claims in this lawsuit. Rather, Plaintiffs and absent Settlement Class Members are interested in pursuing remedies for claims concerning the Data Incident. To that end, Plaintiffs have obtained an advantageous Settlement that provides substantial monetary compensation and other relief to all Settlement Class Members.

Plaintiffs' counsel, including proposed Settlement Class Counsel, are accomplished litigators, particularly in the field of data breach litigation. The firms comprising proposed Settlement Class Counsel have served as lead counsel or co-lead counsel in scores of class action cases across the United States, including data breach class actions. These firms have demonstrated knowledge of applicable law and the ability and willingness to commit sufficient resources to prosecute large scale class action litigation.

Proposed Settlement Class Counsel worked together to research the facts of this Litigation, prepare the Plaintiffs' claims against PurFoods, consolidate the Related Actions into one, and work with opposing counsel to engage in meaningful informal discovery and settlement discussions. From their experience, expertise, time, and resources, they were able to secure a favorable class action settlement that is memorialized in the Settlement Agreement.

In short, proposed Settlement Class Counsel has demonstrated the ability to fairly and adequately represent the interests of the Settlement Class. There is no indication that they have a conflict of interest or might possibly do anything other than adequately represent the interests of the Settlement Class. Accordingly, the requirements of Rule 23(a)(4) have been met.

### 2. The Requirements of Rule 23(b)(3) are Satisfied for Purposes of a Settlement Class.

Under Rule 23(b)(3) a class action may be maintained if: "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, proposed Settlement Class Members' PII was allegedly accessed and/or exfiltrated from PurFoods' network as a result of the Data Incident. For purposes of settlement, the claims being resolved share sufficient commonality to warrant certification for settlement purposes.

With respect to superiority, the Settlement renders class action treatment cost-effective and efficient relative to other potential avenues of recovery for Settlement Class Members and avoids the risk of inconsistent and varying adjudications with respect to individual Members of the Settlement Class. This case presents the prime example of a dispute which can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. *In re Conseco Life Ins. Co. Cost of Ins. Litigation*, 2005 WL 5678842 at *3 (C.D. Cal., Apr 26, 2005). By reason of the settlement, over a million Settlement Class Members across the United States can obtain substantial monetary benefits and other relief in this class action, whereas litigation of multiple actions in any other judicial avenue for relief – either in this Court or

elsewhere – would waste judicial resources. The parties believe that the most efficient way of resolving these claims is through a single class action settlement.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

A. Schedule a fairness hearing on the question of whether the proposed Settlement, including without limitation payment of attorneys' fees and costs, and incentive awards, should be finally approved as fair, reasonable, and adequate as to the members of the Settlement Class;

B. Certify a Settlement Class exclusively for the purposes and subject to the limitations hereinabove stated;

C. Approve as to form and content of the proposed Short and Long Notices;

D. Preliminarily approve the Settlement subject only to the objections of Settlement Class Members and final review by the Court;

E. Enjoin Settlement Class Members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such Settlement Class Members have filed valid Exclusion Forms with the Settlement Administrator and the time for filing claims with the Settlement Administrator has elapsed.

DATED: October 25, 2024             Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (*Admitted Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
wbf@federmanlaw.com

*ATTORNEY FOR PLAINTIFF*
*STELLA KERITSIS*

Daniel O. Herrera
Nickolas J. Hagman (*Admitted Pro Hac Vice*)
Alex Lee

21

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
dherrera@caffertyclobes.com
nhagman@carrertyclobes.com
alee@caffertyclobes.com

*ATTORNEYS FOR PLAINTIFFS
MICHAEL DOUGLAS AND DOROTHY GOODON*

J. Barton Goplerud
Brian O. Marty
**SHINDLER, ANDERSON, GOPLERUD
& WEESE P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

*ATTORNEYS FOR PLAINTIFFS
MICHAEL DOUGLAS, DOROTHY GOODON,
DOROTHY ALEXANDER,
STELLA KERITSIS, JOHNNIE JONES, AND
STEVEN D'ANGELO*

Nicholas J. Mauro
**CARNEY & APPLEBY PLC**
303 Locust Street
400 Homestead Building
Des Moines, IA 50309
mauro@carneyappleby.com

*ATTORNEY FOR PLAINTIFFS
YOLANDA BETTS AND LOGAN
ALDRIDGE*

David S. Almeida (*Admitted Pro Hac Vice*)
Elena Belov (*Admitted Pro Hac Vice*)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
david@almeidalawgroup.com
elena@almeidalawgroup.com

*ATTORNEYS FOR PLAINTIFF*

22

*YOLANDA BETTS AND LOGAN
ALDRIDGE*

Gary M. Klinger (*Admitted Pro Hac Vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
gklinger@milberg.com

*ATTORNEY FOR PLAINTIFF
DOROTHY ALEXANDER*

Mason Barney (*Admitted Pro Hac Vice*)
Tyler James Bean (*Admitted Pro Hac Vice*)
**SIRI & GILMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
mbarney@sirillp.com
tbean@sirillp.com

*ATTORNEYS FOR PLAINTIFFS
JOHNNIE JONES*

Timothy Michael Hansen
**Hansen Reynolds LLC**
301 N Broadway, Suite 400
Milwaukee, WI 53202
thansen@hansenreynolds.com

*ATTORNEY FOR PLAINTIFF
LOGAN ALDRIDGE*

## CERTIFICATE OF SERVICE

I certify that on October 25, 2024, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ William B. Federman
William B. Federman

23