**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

MICHAEL DOUGLAS, DOROTHY
GOODON, DOROTHY ALEXANDER,
STELLA KERITSIS, JOHNNIE JONES,
YOLANDA BETTS, LOGAN ALDRIDGE,
STEVEN D'ANGELO, CHRISTINE ASHE,
VERNITA FORD, and DIANE YOUNG,

                Plaintiffs,

v.

PURFOODS, LLC,

                Defendant.

No. 4:23-cv-00332-RGE-SBJ

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND
SERVICE AWARDS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 2

ARGUMENT ................................................................................................................................. 2

    I.    THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD. ....................... 2

        A.   The Percentage-of-the-Fund Approach is Appropriate ...................................................... 2

        B.   The Reasonableness of Plaintiffs' Fee Request is also Supported by the *Johnson*
           Factors. ............................................................................................................................ 3

        C.   The Requested Fee is Reasonable Under a Lodestar Cross-check. ............................... 12

    II.   THE COURT SHOULD APPROVE SETTLEMENT CLASS COUNSEL'S REQUEST
        FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES. .................. 14

    III.  THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS ........... 15

CONCLUSION ............................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Abrams, et al. v. The Savannah College of Art and Design Inc*,
   Case No. 1:22-cv-04297-LMM,  (N.D. Ga. Sept. 19, 2023) ................................................... 8

*Barfield v. Sho-Me Power Elec. Co-op.*,
   No. 2:11-CV-4321-NKL, 2015 U.S. Dist. LEXIS 70166 (W.D. Mo. June 1, 2015) ................ 2

*Bendon v. DTG Operations, Inc.*,
   No. ED CV 16-0861 FMO, 2018 U.S. Dist. LEXIS 143027 (C.D. Cal. Aug. 22, 2018).......... 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980).......................................................... 2

*Brulee v. Dal Global Servs., LLC*,
   No. CV 17-6433, 2018 U.S. Dist. LEXIS 211269 (C.D. Cal. Dec. 13, 2018) .......................... 9

*Caligiuri v. Symantec Corp.*,
   855 F.3d 860 (8th Cir. 2017) ................................................................................ 7, 9, 15, 16

*Carlson v. C.H. Robinson Worldwide, Inc.*,
   No. 02-3780, 2006 U.S. Dist. LEXIS 67108 (D. Minn. Sept. 18, 2006).................................. 7

*Coe v. Cross-Lines Ret. Ctr., Inc.*,
   No. 22-CV-2047-EFM-ADM, 2024 U.S. Dist. LEXIS 133324 (D. Kan. July 29, 2024) .......... 8

*Corp. v. Thompson*,
   689 F.2d 137 (8th Cir. 1982) ................................................................................................. 12

*Custom Hair Designs by Sandy, LLC v. Central Payment Co.*,
   Case No. 8:17CV310, 2022 U.S. Dist. LEXIS 149341 (D. Neb. Aug. 17, 2022) (same) .......... 7

*Equifax*,
   2020 U.S. Dist. LEXIS 118209 ............................................................................................... 9

*Gaston v. Fabfitfun, Inc.*,
   2021 U.S. Dist. LEXIS 250695 ............................................................................................... 5

*Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*,
   714 F.2d 823 (8th Cir. 1983) ................................................................................................... 4

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).......................................................................................................... 10

*Huyer v. Buckley*,
    849 F.3d 395 (8th Cir. 2017) ........................................................................................ 7, 14

*Huyer v. Njema*,
    847 F.3d 934 (8th Cir. 2017.............................................................................................. 16

*In re BankAmerica Corp. Sec. Litig.*,
    228 F. Supp. 2d 1061 (E.D. Mo. 2002)............................................................................ 12

*In re Charter Communs., Inc.*,
    2005 U.S. Dist. LEXIS 14772 ..................................................................................... 13, 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020)............................................... 14

*In re Ivan F. Boesky Secs. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995). ................................................................................. 14

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................................... 15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md- 2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ................... 5

*In re Target Corp. Customer Data Security Breach Litig. ("Target")*,
    892 F.3d 968 (8th Cir. 2018) ...................................................................................... 3, 11

*In re: UKG Inc. Cybersecurity Litigation*,
    Case No. 3:22-cv-00346, Dkt. No. 80 (N.D. Cal. Nov. 17, 2023)........................................ 8

*In re UnitedHealth Group Inc. PSLRA Litig.*,
    643 F. Supp. 2d 1094 (D. Minn. 2009)................................................................................ 10

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ........................................................................................... 7

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig. ("Xcel Energy")*,
    364 F. Supp. 2d 980 (D. Minn. 2005).................................................................................. 2

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996) ............................................................................................... 3

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714, (5th Cir. 1974) ................................................................. 3

*Kotska, et al. v. Dickey's Barbecue Restaurants Inc., et al.*,
   Case No. 3:20-cv-3424-K, (N.D. Tx. June 6, 2023) ................................. 8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................. 5

*Nelson v. Wal-Mart Stores, Inc.*,
   No. 05-cv-000134, 2009 U.S. Dist. LEXIS 71253 (E.D. Ark. Aug. 12, 2009) ....................... 14

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................. 2

*Pfeiffer v. Radnet, Inc.*,
   No. 2:20-cv-09553-RGK-SK, 2022 U.S. Dist. LEXIS 125933 (C.D. Cal. Feb. 15, 2022) ........ 6

*Phelps, et al. v. Toyotetsu North America*,
   Case No. 6:22-cv-00106-CHB-HA, Dkt. No. 47 (E.D. Ky. Oct. 25, 2023) .............................. 8

*Plunkett v. Firstkey Homes LLC*,
   No. 3:23-cv-2684, 2024 U.S. Dist. LEXIS 224946 (N.D. Tex. Nov. 21, 2024) ....................... 4

*Rawa v. Monsanto Co.*,
   934 F.3d 862 (8th Cir. 2019) ................................................................. 2

*Sanders, et al. v. Ibex Global Solutions Inc., et al.*,
   Case No. 1:22-cv-00591-TNM, Dkt No. 32 (D.D.C. March 10, 2023) (same) ......................... 8

*Schleicher v. API Financial Solutions, Inc.*, No. 4:23-cv-01431, (E.D. Mo. Mar. 25, 2025) .. 7, 14

*Stoneridge Inv. Partners LLC v. Charter Communs., Inc.*,
   No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ................ 4

*Swinton v. SquareTrade, Inc.*,
   454 F. Supp. 3d 848 (S.D. Iowa 2020). ................................................................. 3

*Thomsen, et al. v. Morley Companies, Inc.*,
   Case No. 1:22-cv-10271-TLL-PTM Dkt. 39 (E.D. Mi. May 12, 2023) .................................... 8

*Tussey v. ABB, Inc.*,
   No. 06-CV-04305-NKL, 2019 U.S. Dist. LEXIS 138880 (W.D. Mo. Aug. 16, 2019 ..... 2, 3, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96, (2d Cir. 2005) ................................................................................. 14

*West v. PSS World Med., Inc.*,
   No. 4:13 CV 574 CDP, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. Apr. 24, 2014) ................... 3

*Xcel Energy*, 364 F. Supp. 2d 980 .................................................................. 3, 9, 12

*Yarrington v. Solvay Pharms., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010) ......................................................... 4, 9, 15

*Yvonne Mart Fox v. Iowa Health Sys.*,
   No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640 (W.D. Wis. Mar. 4, 2021) ................. 5

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................. 2

Fed. R. Civ. P. 54 (d) ............................................................................. 15

## **INTRODUCTION**

Pursuant to this Court's June 17, 2025 *Preliminary Approval Order* (Dkt. No. 59) (the "Prelim. App. Or.") in the above-captioned Litigation,[1] Michael Douglas, Dorothy Goodon, Dorothy Alexander, Stella Keritsis, Johnnie Jones, Yolanda Betts, Logan Aldridge, Steven D'Angelo, Christine Ashe, Vernita Ford, and Diane Young ("Plaintiffs"), by and through Settlement Class Counsel, Cafferty Clobes Meriwether & Sprengel LLP; Milberg Coleman Bryson Phillips Grossman PLLC; Siri & Glimstad LLP; and Federman & Sherwood, respectively submit this *Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards.* Specifically, Plaintiffs move this Court to approve (1) an award of attorneys' fees in the amount of one-third of the Total Settlement Consideration (*i.e.*, $1,416,666.67) and expense reimbursement in the amount of $13,167.18, and (2) Service Awards of $2,500.00 to each of the Plaintiffs (for a total of $27,500.00).

As demonstrated below, the requested Fee Award and Costs falls in line with attorneys' fees and costs awarded in similar class action settlements, including data breach class action settlements, and is reasonable in light of the excellent result achieved by Settlement Class Counsel on behalf of the Settlement Class. Further, after resolving the terms of the Settlement Agreement, the Parties agreed that Settlement Class Counsel "[would] file a motion asking the Court to award a portion of the Settlement Fund as Class Counsel's Fee Award and Costs." SA, ¶ 7.1. Given the significant relief achieved by Plaintiffs and Settlement Class Counsel, the one third fee request and request for $13,167.18 in reimbursed expenses is reasonable and should be granted by the Court.

---

[1] With the exception of the term "Settlement Class Counsel," which is the term used by the Court in its Preliminary Approval Order dated June 17, 2025 (Dkt. No. 59), the capitalized terms herein shall have the same meanings as those defined in Section IV.1 of the Amended and Superseding Settlement Agreement and Release ("SA") (Dkt. No. 57-1).

## FACTUAL BACKGROUND

In the interest of judicial efficiency and brevity, for factual and procedural background on this Litigation, Plaintiffs respectfully refer this Court to and hereby incorporate *Plaintiffs' Second Amended Unopposed Motion for Preliminary Approval of Class Action Settlement*. (Dkt. No. 57). Additional facts relevant to the Court's consideration for assessing Plaintiffs' requests for fees, costs, and Service Awards are included in this memorandum.

## ARGUMENT

## I.    THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD.

### A.    The Percentage-of-the-Fund Approach is Appropriate.

When class counsel negotiate a class action settlement, they are entitled to petition the Court to award attorneys' fees and costs. Indeed, "[u]nder the 'common fund' doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds." *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 U.S. Dist. LEXIS 138880, at *7 (W.D. Mo. Aug. 16, 2019) (citing Fed. R. Civ. P. 23(h)); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). District courts in this Circuit typically use the "percentage-of-the-fund method" in awarding attorneys' fees in a common fund settlement such as this. *See, e.g., Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig. ("Xcel Energy")*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). Indeed, some courts have suggested that using the "'percentage of the fund method may be preferable.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-4321-NKL, 2015 U.S. Dist. LEXIS 70166, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World*

*Med., Inc.*, No. 4:13 CV 574 CDP, 2014 U.S. Dist. LEXIS 57150, at *3 (E.D. Mo. Apr. 24, 2014));

*see also Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) ("[T]he Task Force

recommended that the percentage of the benefit method be employed in common fund

situations.").[2] Here, the requested fee of $1,416,666.67 is reasonable as it represents one-third of

the $4,250,000.00 Total Settlement Consideration achieved by Settlement Class Counsel for the

Settlement Class. *See Declaration of William B. Federman in Support of Plaintiffs' Motion For*

*Attorneys' Fees, Expenses, and Service Awards,* filed herewith as **Exhibit 1** (the "Federman Fee

Decl."), ¶ 14.

### B. The Reasonableness of Plaintiffs' Fee Request is also Supported by the *Johnson* Factors.

"[T]he ultimate reasonableness of the award is evaluated by considering relevant factors

from the twelve factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th

Cir. 1974)." *See In re Target Corp. Customer Data Security Breach Litig. ("Target")*, 892 F.3d

968, 977 (8th Cir. 2018) (cleaned up). To be sure, "[m]any of the *Johnson* factors are related to

one another and lend themselves to being analyzed in tandem." *Swinton v. SquareTrade, Inc.*, 454

F. Supp. 3d 848, 886 (S.D. Iowa 2020). As such, courts in the Eighth Circuit often focus on the

most relevant *Johnson* factors in evaluating fee requests like this one. *See Xcel Energy*, 364 F.

Supp. 2d at 993; *Tussey*, 2019 U.S. Dist. LEXIS 138880, at *2; *Yarrington v. Solvay Pharms., Inc.*,

---

[2] In this regard, the percentage-of-the-fund method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," while "[i]n contrast, the lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quotations omitted); *see also Health Republic Ins. Co. v. United States*, 156 Fed. Cl. 67, 76 (2021) (noting the lodestar method "'is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation,' and it creates incentives for inefficiency" (quoting *Manual for Complex Litigation* § 14.121 (4th ed. 2004))).

697 F. Supp. 2d 1057, 1062 (D. Minn. 2010); *see also Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983).[3] These factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. However, "not every factor need be necessarily considered. [T]his is particularly so in a common fund situation because not all *Johnson* factors are applicable." *Plunkett v. Firstkey Homes LLC*, No. 3:23-cv-2684, 2024 U.S. Dist. LEXIS 224946, at *21 (N.D. Tex. Nov. 21, 2024).

An evaluation of each factor strongly supports the one-third fee request here which, as set forth, *supra*, is the fee percentage most frequently requested and approved in common fund cases. *See Stoneridge Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 at *66 (E.D. Mo. June 30, 2005) ("The fact remains that 33% remains the fee most frequently requested.").

       1. <u>The time and labor required.</u>

The time and labor to litigate data breach class actions is significant, particularly because of the novelty of the issues presented. As detailed in their declarations and supporting exhibits, Settlement Class Counsel have expended substantial effort to prosecute this case over the duration of the litigation and expect to expend even more time to bring this Settlement Agreement to a

---

[3] The nature of the attorney-client relationship does not apply and thus can be disregarded or treated as neutral in considering the fee.

conclusion. Settlement Class Counsel's contemporaneous time records reflect 756.7 hours of attorney and paralegal time to investigate the claims, draft and file the initial pleadings, conduct in informal discovery, prepare for and attend mediation, engage in settlement negotiations, draft the Settlement Agreement and its exhibits, draft the motion for preliminary approval, and oversee the notice process to ensure that all Settlement Class Members receive appropriate payment. Federman Fee Decl., ¶¶ 7, 15, 17. Settlement Class Counsel anticipate expending at least an additional 50-100 hours in preparation of the eventual motion for final approval of the Settlement Agreement and participating in the Final Approval Hearing, communicating with the Claims Administrator regarding administration of the settlement funds, and answering any questions the Settlement Class Members may have. *Id.* at ¶ 18.

2. <u>The novelty and difficulty of the questions involved.</u>

"Data breach cases are particularly risky, expensive, and complex." *Yvonne Mart Fox v. Iowa Health Sys*., No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *13-14 (W.D. Wis. Mar. 4, 2021) (internal quotation, citation, ellipsis omitted). Such cases are endlessly "evolving" with "no guarantee of the ultimate result," and require substantial documentary and expert evidence to prove. *See id*.

Although nearly all class actions involve a high level of risk, expense, and complexity – undergirding the strong judicial policy favoring amicable resolutions (*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)) – "data breach class actions are among the riskiest and uncertain of all class action litigation due to the absence of direct precedent certifying data breach cases as class actions." *Gaston v. Fabfitfun, Inc*., 2021 U.S. Dist. LEXIS 250695, at *7; *In re Sonic Corp. Customer Data Sec. Breach Litig*., No. 1:17-md- 2807, 2019 U.S. Dist. LEXIS 135573, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."); *Pfeiffer*

*v. Radnet, Inc.*, No. 2:20-cv-09553-RGK-SK, 2022 U.S. Dist. LEXIS 125933, at *6-7 (C.D. Cal. Feb. 15, 2022) ("Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification. . . . in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award.").

Indeed, the risks identified above illustrate the novelty and difficulty of the issues in this Litigation. Here, Settlement Class Counsel conducted a thorough factual investigation and constructed a well-pled Consolidated Class Action Complaint (Dkt. No. 30). Should litigation continue, they would face a minefield of defenses to class certification and the merits, including those that concern proving class-wide injury and causation, but nevertheless secured strong class-wide relief. Therefore, the Settlement Agreement achieved, especially considering the novelty and risk inherent in data breach litigation, supports the request for attorneys' fees.

3.   The skill requisite to perform the legal service properly.

In light of the novelty, difficulty, and constantly evolving nature of questions related to data privacy, the skill required to advocate for victims of data breaches is high. Settlement Class Counsel's skills and experience in complex class action litigation weigh in favor of approval of the requested fee award. *Bendon v. DTG Operations, Inc.*, No. ED CV 16-0861 FMO, 2018 U.S. Dist. LEXIS 143027, at *22 (C.D. Cal. Aug. 22, 2018) (finding that experienced class counsel weighs in favor of granting the fee request). Settlement Class Counsel's background demonstrates that Settlement Class Counsel is experienced in the highly specialized field of data breach class action litigation, well credentialed, and uniquely qualified to face the difficult and novel tasks at hand. Federman Fee Decl., ¶ 10. Settlement Class Counsel's fee request is commensurate with their experience, which was leveraged here to procure the Settlement Agreement. The skill demonstrated by Settlement Class Counsel in developing the initial filing documents, cooperating

to move the Litigation forward for the good of the Settlement Class Members, and mediating and reaching an early and excellent resolution further support the fees requested.

### 4. The preclusion of employment by the attorney due to acceptance of the case.

This factor also weighs in favor of the attorneys' fee request because the pursuit of this Litigation required a certain concentration of effort which prevented Settlement Class Counsel from dedicating additional time to other matters. Indeed, Settlement Class Counsel invested substantial time, effort, and resources into litigating this risky and uncertain case with no guarantee or promise of return on their investment. Federman Fee Decl., ¶ 8–10, 15, 17, 20.

### 5. The fee request comports with customary fees awarded in similar cases.

The fifth and twelfth *Johnson* factors – the customary fee awards in similar cases – also weigh in favor of awarding the requested fee. Courts in this Circuit and federal district courts across the country have awarded similar attorneys' fees in data breach class actions involving non-reversionary settlement funds. In the Eighth Circuit, courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving 36% of settlement fund in attorneys' fees); *Schleicher v. API Financial Solutions, Inc.*, No. 4:23-cv-01431, (E.D. Mo. Mar. 25, 2025) (approving 33% of settlement fund in attorneys' fees); *Custom Hair Designs by Sandy, LLC v. Central Payment Co.*, Case No. 8:17CV310, 2022 U.S. Dist. LEXIS 149341, at *15 (D. Neb. Aug. 17, 2022) (same); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (awarding 33.33% of $60,000,000 common fund); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 U.S. Dist. LEXIS 67108 at *22 (D. Minn. Sept. 18, 2006) (finding that a 35.5% attorneys' fee award was reasonable).

The one-third benchmark is true for data breach and privacy settlements beyond the Eighth Circuit as well. *Kotska, et al. v. Dickey's Barbecue Restaurants Inc.*, *et al.*, Case No. 3:20-cv-3424-K, Dkt. No. 103 (N.D. Tx. June 6, 2023) (awarding attorneys' fees equal to 33% of the common fund); *Thomsen, et al. v. Morley Companies, Inc.*, Case No. 1:22-cv-10271-TLL-PTM Dkt. 39 (E.D. Mi. May 12, 2023) (same); *Sanders, et al. v. Ibex Global Solutions Inc., et al.*, Case No. 1:22-cv-00591-TNM, Dkt No. 32 (D.D.C. March 10, 2023) (same); *In re: UKG Inc. Cybersecurity Litigation*, Case No. 3:22-cv-00346, Dkt. No. 80 (N.D. Cal. Nov. 17, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, Case No. 6:22-cv-00106-CHB-HA, Dkt. No. 47(E.D. Ky. Oct. 25, 2023) (same); *Abrams, et al. v. The Savannah College of Art and Design Inc*, Case No. 1:22-cv-04297-LMM, Dkt No.  (N.D. Ga. Sept. 19, 2023) (same); *Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-CV-2047-EFM-ADM, 2024 U.S. Dist. LEXIS 133324 (D. Kan. July 29, 2024) (same).

As the case law from this Circuit and other federal courts makes clear, the requested attorneys' fee award of one-third of the Total Settlement Consideration (*i.e.*, $1,416,666.67) is customary and reasonable under the percentage method. Accordingly, this factor weighs in favor of approval of the fee request.

### 6.   Whether the fee is fixed or contingent.

Settlement Class Counsel undertook this Litigation on a purely contingent basis, with no assurance of recovery of expenses or compensation for their time and based on the reasonable expectation that, if they were successful, they would receive fees comparable to those in other recent data breach class actions. Federman Fee Decl., ¶¶ 8–10. The nature of contingency fees is that they are inherently uncertain and require counsel to assume more risk than in cases where compensation is based on billable hours. However, despite the substantial risks, Settlement Class

Counsel remained steadfast in their representation of Plaintiffs and did so on a contingency basis. *See Brulee v. Dal Global Servs., LLC*, No. CV 17-6433, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal. Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature"); *Caligiuri,* 855 F.3d at 866 (affirming fee award where lower court reasoned, in part, that "[p]laintiffs' counsel, in taking this case on a contingent fee basis, was exposed to significant risk"); *accord Equifax*, 2020 U.S. Dist. LEXIS 118209, at *243 ("This action was prosecuted on a contingent basis and thus a larger fee is justified."). Because Settlement Class Counsel invested substantial time, effort, and resources into this risky and uncertain Litigation on a contingent basis, with no guarantee or promise of return on their investment, this factor weighs in favor of granting the one-third fee request.

## 7. Time limitations imposed by the client or the circumstances.

Due to the inherent and time-sensitive risks associated with data breaches, such as the increased risk of fraud and identity theft, Settlement Class Counsel diligently litigated this case in an efficient manner to ensure that Settlement Class Members received timely relief. While no time limitations were imposed by Plaintiffs, Settlement Class Counsel took on the Litigation with the understanding that, due to the nature of the alleged Data Incident, the sooner the Settlement Class receives relief – especially the free Credit Monitoring and Insurance Services benefit – the better. The timeliness with which Settlement Class Counsel obtained this extraordinary relief on behalf of the Settlement Class is independently valuable and weighs in favor of granting the fee request here. Efficiency – and providing expeditious relief – is best for the Settlement Class, the Court, and the Defendant. *See Yarrington*, 697 F. Supp. 2d at 1062 ("[T]he Settlement Class will receive settlement benefits faster than they would receive awards obtained after trial and a likely appeal."); *Xcel Energy*, 364 F. Supp. 2d at 1001 ("[C]ontinued litigation, which could have extended several

years, would have delayed recovery by the Class. Instead, the settlement immediately confers benefits.").

8.  <u>The amount involved and the results obtained.</u>

First and foremost, the Settlement Agreement represents a significant recovery for the Settlement Class. "In considering a fee award, the 'most critical factor' is 'the degree of success obtained.'" *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1104 (D. Minn. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here the Settlement Agreement provides significant monetary and mitigative relief. SA, § IV.2. Specifically, Settlement Class Counsel successfully obtained a $4,250,000.00 non-reversionary common fund – the Total Settlement Consideration – for the benefit of the Settlement Class Members, which is a significant result considering the size of the Class, the scope of the Data Incident, and the nature of the information obtained in the Data Incident. *Id.* at § I. As noted, the Settlement Agreements permits Settlement Class Members to obtain submit a claim for reimbursement of documented losses up to $5,000.00. *Id.* at ¶ 2.2(b). In lieu of the Documented Loss Payment, Settlement Class Members can elect to receive a Cash Award payment calculated by dividing the Post Loss Payment Net Settlement Fund by the total number of valid and timely Claim Forms submitted by Settlement Class Members who elected a Cash Award but shall not exceed $5,000.00. *Id.* at ¶ 2.4(b). In addition, each Settlement Class Member who submits a valid and timely Claim Form may elect to receive three (3) years of three-bureau Credit Monitoring and Insurance Services regardless of whether they also make a claim for Documented Loss Payment or Cash Award. *Id.* at ¶ 2.3.

As such, under this Settlement Agreement, Settlement Class Members will be made whole for any losses they already suffered as a result of the Data Incident. Moreover, this Settlement Agreement compares favorably to other common fund data breach settlements approved by courts

across the country. *See supra*, § I.B.5. Such an excellent result represents the maximum amount available on behalf of the Settlement Class and therefore weighs in favor of the requested attorneys' fee award.

### 9. The experience, reputation, and ability of the attorneys.

Settlement Class Counsel have demonstrated to the Court that they competently handled this Litigation and, based on the firm resumes submitted herewith, Settlement Class Counsel are well-credentialed and have significant experience prosecuting and settling cases in the highly specialized field of data breach class actions. As such, Settlement Class Counsel's fee request is commensurate with that experience, which was leveraged here to procure the Settlement Agreement. Settlement Class Counsel had to expend meaningful effort to secure a prompt and favorable settlement for the Settlement Class, further demonstrating that Settlement Class Counsel managed this Litigation skillfully, always mindful of Plaintiffs' and Settlement Class Members' best interests, while facing challenging opponents. Such an achievement demonstrates that they possess "the skill requisite to perform the legal service properly." *Target*, 892 F.3d at 977 n.7. This factor, therefore, weighs in favor of the requested fee award.

### 10. The undesirability of the case.

Given that data breach cases pose unique challenges, with unsettled areas of law that make outcomes of cases uncertain and difficult to predict, these cases may be less desirable. Moreover, class action litigation is more involved, is lengthier from time of filing to resolution, and requires more discovery and more investigation than other types of litigation. Settlement Class Counsel also undertook the Litigation on a contingency fee basis, which in itself carries more risk, as further discussed, *supra*. All these factors contribute to the undesirability of the case, yet Settlement Class

Counsel remained steadfast and engaged in arm's-length negotiations to secure a favorable settlement that provided the Settlement Class with the maximum amount of benefits available.

11. <u>The nature and length of the professional relationship with the client.</u>

Settlement Class Counsel spent time building relationships with Plaintiffs, discussing Plaintiffs' claims with them, and addressing Plaintiffs' questions and concerns. Settlement Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers, all in order to carefully craft a detailed and well-pled Complaint. Accordingly, this factor is neutral because Settlement Class Counsel's relationship with Plaintiffs does not give rise to concerns weighing either for or against the fee request.

**C.    The Requested Fee is Reasonable Under a Lodestar Cross-check.**

While the Eighth Circuit has recognized the primacy of the percentage of recovery approach, it has also endorsed use of the lodestar method as a "cross check." *Petrovic*, 200 F.3d at 1157; *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 at 1065 (E.D. Mo. 2002). Although courts may use the lodestar to "cross check" the reasonableness of the percentage awarded, there is no requirement to do so in this Circuit. *See, Xcel Energy*, 364 F. Supp. 2d 980. Further, Eighth Circuit courts have made clear that the lodestar cross-check "does not trump the court's primary reliance on the percentage of common fund method." *Id*. at 999. The district court first computes the base "lodestar" figure by "multiply[ing] the number of hours reasonably expended times *the lawyer's regular hourly rate.*" *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 139 (8th Cir. 1982) (emphasis added). As the percentage-of-the-fund analysis above demonstrates, Settlement Class Counsel seek a reasonable fee for their services, and that conclusion is further confirmed by performing a lodestar cross-check.

1.    <u>Hours Expended by Settlement Class Counsel and Hourly Rates</u>

The total hours expended by Settlement Class Counsel have been reasonable and necessary. Federman Fee Decl., ¶ 15. At the time of this filing, Settlement Class Counsel have invested **756.7** hours, which is appropriate for a class action like this in which a swift resolution was achieved on behalf of the Settlement Class. The tasks that Settlement Class Counsel spent this time achieving are summarized in § I.B.1 above, as well as in the Federman Declaration submitted herewith. *See* Federman Fee Decl., ¶¶ 4–7. Furthermore, Settlement Class Counsel expects to expend additional time going forward drafting the final approval motion, preparing for, and appearing at, the Final Approval Hearing, and overseeing the final weeks of the claims administration process. *Id*. ¶ 18.

Settlement Class Counsel's total lodestar to date is **$607,057.20**. Federman Fee Decl., ¶ 17. Settlement Class Counsel are well regarded as leaders in data breach litigation and have extensive experience in class actions and complex litigation and, as such, were able to efficiently achieve this Settlement Agreement for the Settlement Class. *Id*. ¶ 10. Settlement Class Counsel should be compensated at hourly rates that reflect this experience and the reasonable market value of their legal services, based on their skill, experience and expertise. *See In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772 at *55 (the Court should also take into account the attorneys' legal reputation, experience and status).

The hourly rates sought by Settlement Class Counsel are consistent with the prevailing market rates in forums across the country for attorneys of comparable experience, reputation, and ability and have been accepted by judges in similarly complex class actions both in this District and across the country. Federman Fee Decl., ¶¶ 24–25, Exs. A-C. Given the wealth of experience of Settlement Class Counsel, the complexities of data breach litigation, and the timely and

excellent result achieved for the Settlement Class, the hours expended and hourly rates applied in the lodestar calculation should be deemed reasonable.

2.    <u>Settlement Class Counsel's Lodestar Multiplier of 2.33 is Reasonable.</u>

The multiplier is intended to account for, among other things, the results achieved, the quality of representation, the complexity and magnitude of the litigation, the consequent risk of nonpayment viewed as of the time of filing the suit, and the contingent nature of the expected compensation for services rendered. *In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772 at \*56 (quoting *In re Ivan F. Boesky Secs. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995)). This lodestar multiplier is equal to or less than lodestar multipliers awarded in this District, the Eighth Circuit, and similar data breaches across the country. *Huyer*, 849 F.3d at 399 (awarding fees with a lodestar multiplier of 1.82); *Schleicher*, No. 4:23-cv-01431, (E.D. Mo. Mar. 25, 2025) (awarding fees with a lodestar multiplier of 1.92); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at \*258  (N.D. Ga. Mar. 17, 2020) (2.62 lodestar multiplier reasonable in data breach class action settlement.); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (finding multiplier of 3.5 appropriate); *Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 U.S. Dist. LEXIS 71253, at \*5 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6); *In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772, at \*69 (approving fee request with a lodestar multiplier of 5.61). As these comparisons make clear, the Court should approve Plaintiffs' fee request representing a 2.33 multiplier.

**II.    THE COURT SHOULD APPROVE SETTLEMENT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES.**

14

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.'" *Yarrington*, 697 F. Supp. 2d at 1067 (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Settlement Class Counsel have reasonably and necessarily incurred $13,167.18 in expenses for such items as filing fees, service fees, mediation, and legal research. Federman Fee Decl., ¶ 28; *see Tussey*, 2019 U.S. Dist. LEXIS 138880, at *15 ("Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." (citing Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.))). Settlement Class Counsel kept costs at a reasonable level throughout the Litigation. Federman Fee Decl., ¶¶ 13, 20-21, footnote 2; *see also Tussey*, 2019 U.S. Dist. LEXIS 138880. As such, the Court should approve Plaintiffs' expense reimbursement request.

## III.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS.

Courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class. The factors for deciding whether the service awards are warranted are: "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri*, 855 F.3d at 867.

Here, the Representative Plaintiffs performed important work throughout this Litigation, including time-consuming gathering of facts and documents, assisting Settlement Class Counsel with the allegations in the Complaint, and reviewing the Settlement Agreement, which advanced

the Litigation and protected the Settlement Class's interests. Federman Fee Decl., ¶¶ 32–34. Indeed, Plaintiffs' time and effort made this Settlement possible.

Finally, the requested Service Awards are significantly lower than other awards that have been approved in the Eighth Circuit. *See Caligiuri*, 855 F.3d at 867 ("[C]ourts in this circuit regularly grant service awards of $10,000 or greater."); *Huyer v. Njema,* 847 F.3d 934, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs). The Court should therefore approve the requested Service Awards of $2,500.00 for each of the Representative Plaintiffs.

<u>**CONCLUSION**</u>

Accordingly, Plaintiffs respectfully request that the Court approve the requested fee of one-third of the Total Settlement Consideration (*i.e.*, $1,416,666.67), reimbursement of expenses in the amount of $13,167.18, and Service Awards of $2,500.00 for each of the Plaintiffs, (for a total of $27,500.00).

DATE: September 16, 2025

Respectfully Submitted,

*/s/Tyler J. Bean*
Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (646) 357-1732
tbean@sirillp.com

Daniel O. Herrera*
Nickolas J. Hagman (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL, LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Tel: (312) 782-4880
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave. Oklahoma
City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

*Settlement Class Counsel*

# **<u>EXHIBIT 1</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| MICHAEL DOUGLAS, DOROTHY GOODON, DOROTHY ALEXANDER, STELLA KERITSIS, JOHNNIE JONES, YOLANDA BETTS, LOGAN ALDRIDGE, STEVEN D'ANGELO, CHRISTINE ASHE, VERNITA FORD, and DIANE YOUNG,<br><br>        Plaintiffs,<br><br>v.<br><br>PURFOODS, LLC,<br><br>        Defendant. | No. 4:23-cv-00332-RGE-SBJ |

**DECLARATION OF WILLIAM B. FEDERMAN IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

I, William B. Federman, declare and state as follows:

1.       I am licensed to practice law in the states of Oklahoma, Texas and New York and admitted to practice in several federal courts across the country. I am co-counsel of record for Plaintiffs Michael Douglas, Dorothy Goodon, Dorothy Alexander, Stella Keritsis, Johnnie Jones, Yolanda Betts, Logan Aldridge, Steven D'Angelo, Christine Ashe, Vernita Ford, and Diane Young in the Litigation. I am the Managing Partner of Federman & Sherwood and have served or am currently serving as lead class counsel in dozens of other class actions including data breach and privacy matters like this one, as further set forth in my firm resume attached hereto as **Exhibit A**. I am one of the proposed Settlement Class Counsel.

2.       Throughout this Litigation, my law firm and those of my co-counsel have been primarily responsible for the prosecution of Plaintiffs' claims on behalf of the proposed Settlement Class. On June 17, 2025, Cafferty Clobes Meriwether & Sprengel LLP, Milberg Coleman Bryson

1

Phillips Grossman PLLC, Siri & Glimstad LLP, and Federman & Sherwood were appointed Settlement Class Counsel for the Settlement Class in the Court's Preliminary Approval Order. *See* ECF No. 59, pp. 3.

3.    I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration based on active participation in all aspects of the prosecution and resolution of the Litigation. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

## **Summary of the Action**

4.    The Litigation arises from the Data Incident involving Defendant PurFoods, LLC d/b/a Mom's Meals, which led to the filing of multiple lawsuits. These include *Michael Douglas and Dorothy Goodon v. PurFoods, LLC d/b/a Mom's Meals*, No. 4:23-cv-00332, filed September 1, 2023; *Dorothy Alexander v. PurFoods, LLC d/b/a Mom's Meals*, No. 4:23-cv-00338, filed September 6, 2023; *Stella Keritsis v. PurFoods, LLC d/b/a Mom's Meals*, No. 4:23-cv-00339, filed September 6, 2023; *Maria Clements and Johnnie Jones v. PurFoods, LLC d/b/a Mom's Meals*, No. 4:23-cv-00340, filed September 6, 2023; *Yolanda Betts v. PurFoods, LLC d/b/a Mom's Meals*, No. 4:23-cv-00352, filed September 11, 2023; *Logan Aldridge v. PurFoods, LLC d/b/a Mom's Meals,* No. 4:23-cv-00357, filed September 13, 2023; and *Steven D'Angelo v. PurFoods, LLC d/b/a Mom's Meals*, No. 4:23-cv-00358, filed September 13, 2023, in the United States District Court for the Southern District of Iowa against Defendant shortly after receiving Defendant's notice letter regarding the Data Incident.

5.    After Plaintiffs self-organized the related cases, they filed their Consolidated Class Action Complaint on November 28, 2023 and, soon thereafter, the Parties engaged in settlement

discussions that included a full day of mediation on May 6, 2024 before experienced data breach mediator, Jill Sperber, Esq. of Judicate West (the "Mediation"). As a prelude, Plaintiffs obtained information and supporting documents from Defendant and public sources on a number of topics related to the Litigation and Data Incident, including the number of individuals whose Private Information was impacted during the Data Incident; the types of Private Information potentially accessed; confirming the Class size and composition, information about the nature of the Data Incident and corrective actions by Defendant, and the terms of any potentially applicable insurance coverage. After obtaining additional information and prolonged discussions regarding the potential for early resolution, the Parties participated in the Mediation and were able to reach a settlement in principle based on a proposal by the neutral mediator.

6.      Over the next several weeks, the Parties continued negotiations regarding the terms of the Settlement Agreement and associated exhibits. Substantial time and effort was expended negotiating the specific terms of the Settlement, drafting the Settlement Agreement, and presenting it to the Court for approval. On June 17, 2025, the Court granted preliminary approval of the Settlement Agreement.

## Summary of Work Performed

7.      Settlement Class Counsel's work in this matter involved investigating the cause and effects of this Data Incident; interviewing potential clients; evaluating potential class representatives; contributing to the evaluation of the merits of the case; conducting legal research; coordinating with the other Plaintiffs' counsel to self-organize the various actions; drafting and filing consolidation and leadership motions; conducting substantial informal discovery regarding the Data Incident and the class size and makeup; engaging in arms-length settlement negotiations with Defendant's Counsel; participating in the Mediation and subsequent negotiations; drafting

3

the Settlement Agreement and Plaintiffs' motion for preliminary approval; seeking competitive bids from potential settlement administrators; communicating with defense counsel; updating and handling questions from our Plaintiffs; and overseeing the notice to the Settlement Class and the ongoing claims process.

### Factors Supporting an Award of Attorneys' Fees, Expenses, and Service Awards

8.    Despite the clear risks involved in pursuing this Litigation on a wholly contingency basis, Settlement Class Counsel undertook this matter with no guarantee of recovery and have committed substantial resources of attorney and staff time, in addition to out-of-pocket costs, towards investigating, litigating, and settling the matter. In doing so, we assumed the risk of the significant delay associated with achieving a final resolution through trial or any appeals.

9.    The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the Litigation, determine all the contours of the proposed Settlement Class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length with the assistance of a neutral mediator.

10.    As demonstrated in each of Settlement Class Counsels' biographies being filed contemporaneously herewith, Settlement Class Counsel have significant experience in litigating class actions of similar size, scope, and complexity to the instant action.

11.    Defendant presented a vigorous defense and is represented by experienced lawyers from the international law firm Covington & Burling, LLP and Nyemaster Goode, P.C., both well-respected, experienced and well-funded law firms. Notwithstanding this formidable opposition, Settlement Class Counsel developed a strong case and negotiated settlement terms that are highly favorable to Settlement Class Members.

12.     Plaintiffs and Settlement Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain. Indeed, as identified above, the uncertainties of data breach claims, and maintaining a class throughout trial and appeal or surviving summary judgment posed real and immediate risks to this Litigation.

13.     Absent this Settlement, if this Litigation were to progress to trial, Defendant would undoubtedly raise a number of potentially case dispositive defenses, which, if successful, could deprive Plaintiffs and the Settlement Class of any recovery whatsoever.

14.     The requested Fee Award represents one-third of the Settlement Fund, which represents a fair and reasonable fee award in class action litigation. *See* 4 *Newberg on Class Actions* § 14:6 (4th ed.) ("empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in the class actions average around one-third of the recovery").

15.     Settlement Class Counsel have expended substantial time and effort in the Litigation and settlement of this Litigation and will continue to do so through final approval and the closing out of the claims administration process. Collectively, based on their audited time records, Settlement Class Counsel have devoted a total of 756.7 hours, yielding a lodestar of $607,057.20. The total hours expended by Settlement Class Counsel have been reasonable and necessary.

16.     As detailed in the Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, the percentage-of-recovery method is regularly awarded in the Southern District of Iowa, while a lodestar cross-check may be utilized to ensure the fairness of the percentage-of-recovery method. *See, e.g. PHT Holding II LLC v. N. Am. Co. for*

*Life*, No. 4:18-cv-00368, 2023 U.S. Dist. LEXIS 222028, at *19 (S.D. Iowa Nov. 30, 2023); *Keil*

*v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *In re CenturyLink Sales Pracs. & Sec. Litig.*, MDL

No. 17-2795, 2020 U.S. Dist. LEXIS 227558, at *38 (D. Minn. Dec. 4, 2020).

17.     The following table summarizes Settlement Class Counsel's combined lodestar as

of the filing of the fee motion:[1]

| Firm | Hours | Lodestar |
|------|-------|----------|
| Cafferty Clobes Meriwether & Sprengel LLP | 272.9 | $228,545.00 |
| Federman & Sherwood | 168.20 | $141,705.00 |
| Milberg Coleman Bryson Phillips Grossman PLLC | 163.0 | $152,353.20 |
| Siri & Glimstad LLP | 152.6 | $84,454.00 |
| **TOTAL** | 756.7 | $607,057.20 |

18.     The lodestar forming the basis for the cross-check of Plaintiffs' requested Fee

Award and Costs does not include future time and expenses committed to the Litigation, including

time to be spent obtaining final approval and overseeing implementation of the Settlement. I

estimate that Settlement Class Counsel will spend an additional 50-100 hours in preparation of the

eventual motion for final approval of the Settlement Agreement, participating in the Final

Approval Hearing, communicating with the Claims Administrator regarding administration of the

settlement funds, and answering any questions the Settlement Class Members may have.

19.     Furthermore, over the course of the Litigation, Settlement Class Counsel took

reasonable efforts to minimize inefficiency and prevent the duplication of work. Tasks were

efficiently divided amongst Settlement Class Counsel to avoid duplication of efforts and to ensure

that appropriately skilled personnel performed each task. Settlement Class Counsel also routinely

communicated with each other to monitor progress and ensure that tasks were being performed in

a timely and effective manner.

---

[1] Declarations detailing the billing rates and time expended of additional Settlement Class Counsel on a per-professional basis are attached to this Declaration as Exhibits B-D.

## Costs and Expenses

20.     Over the course of the Litigation, Settlement Class Counsel kept records of all Litigation expenses, totaling $13,167.18. These unreimbursed expenses include costs associated with research, mediation, and filing fees. These costs also reflect typical expenses of the type ordinarily passed on to fee-paying clients in a general legal practice and are also typically recoverable in a specialized complex class action practice as they are necessary and reasonable to prosecuting a class action. Settlement Class Counsel's litigation expenses were calculated from receipts, expense vouchers, check records and other documents maintained by Settlement Class Counsel. Settlement Class Counsel kept costs at a reasonable level throughout the allegation, incurring only necessary expenses. Thus, reimbursement of the requested costs and expenses is warranted.

21.     A breakdown of the reasonable litigation costs and expenses incurred by Settlement Class Counsel is as follows:[2]

### COMBINED EXPENSE CHART

| FIRM | Amount |
|---|---|
| Cafferty Clobes Meriwether & Sprengel LLP | $3,768.94 |
| Federman & Sherwood | $3,102.31 |
| Milberg Coleman Bryson Phillips Grossman PLLC | $3,093.75 |
| Siri & Glimstad LLP | $3,102.31 |
| **TOTAL** | **$13,167.18** |

## Federman & Sherwood's Lodestar and Expenses

---

[2] Declarations regarding the expenses incurred by additional Settlement Class Counsel in the prosecution of the Litigation are attached to this Declaration as Exhibits B-D.

22.    A detailed summary of the rates and hours expended by my firm in the prosecution and resolution of the Litigation, to date, are as follows:

| Federman & Sherwood | | | | | |
|---|---|---|---|---|---|
| Name | Position | Years of Experience | Total Hours | Rate | Total Lodestar |
| William B. Federman | Managing Partner | 40+ years | 74.90 | $1,150.00 | $86,135.00 |
| Jessica A. Wilkes | Attorney | 4 years | 78.80 | $650.00 | $51,220.00 |
| Tiffany Peintner | Paralegal | 10+ years | 11.20 | $300.00 | $3,360.00 |
| Tashia Peintner | Paralegal | 10+ years | 0.50 | $300.00 | $150.00 |
| Frandelind Traylor | Legal Assistant | 20+ years | 2.80 | $300.00 | $840.00 |
| **Firm TOTAL** | | | 168.20 | | $141,705.00 |

23.    In my opinion, this time was reasonable and necessary for the prosecution of this litigation and my firm took meaningful steps to ensure the efficiency of our work. Specifically, all of the services performed by my firm were undertaken on a contingent fee basis, and we have not been compensated for any of this work to date. My firm took risks in litigating this matter under a complete contingency arrangement with no guarantee of any recovery whatsoever, and there was a substantial risk of no recovery at all given the threshold issues raised by Defendant and the uncertain nature of consumer class action litigation.

24.    Federman & Sherwood's rates are reasonable and have been approved by courts nationwide. My firm's current hourly rates are as follows: Managing Partner: $1,150.00; Attorneys: $650.00–$400.00; Paralegals/Legal Assistants: $300.00. These hourly rates are the current usual and customary rates set by my firm for everyone and used in all current litigation matters, as periodically adjusted according to market rates. *See, e.g.*, *Green v. NOW Health Group, Inc.*, Case No. 2023LA000116 (11th J. Cir., McLean County, IL); *Denwood v. Peachtree*

8

*Orthopaedic Clinic, P.A.*, File No. 23-CV-1234-3 (Sup Ct. Forsyth County, GA); *Ebert v. PRGX Global, Inc.*, Case No. 1:23-CV-04233-TWT (N.D.Ga); *In re: Orrick, Herrington & Sutcliffe, LLP Data Breach Litigation*, Case No. 3:23-cv-04089-SI (N.D.Ca.). These rates reflect what would be charged to a fee-paying client in the private legal marketplace for complex litigation. The rates are also in line with the rates charged by other firms that handle complex cases and class actions.

25.    My firm and I have general familiarity with the range of hourly rates typically charged by plaintiffs' class action counsel in data breach and complex consumer class actions throughout the United States, both on a current and historical basis. I believe that the rates charged by Federman & Sherwood in this Litigation are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise for legal services furnished in complex contingency class action litigation such as this.

26.    Federman & Sherwood maintained detailed records regarding the amount of time its attorneys spent on this Litigation, and the lodestar calculation is based on attorneys' current billing rates. The information was prepared from contemporaneous, daily time records regularly prepared and maintained by Federman & Sherwood.

27.    In connection with the Litigation, my firm also advanced costs and expenses.

28.    As of the date of this Declaration, Federman & Sherwood has incurred $3,202,18 in costs and expenses in connection with the Litigation. Below is a table categorizing these expenses:

| Category | Amount |
|---|---|
| Research | $98.93 |
| Mediation | $3,093.75 |
| Copies | $7.50 |
| Postage | $2.00 |
| **Total** | $3,202.18 |

29.     These costs and expenses are reflected on the books and records of Federman &
Sherwood. These books and records are prepared from expense vouchers, check records, and other
source materials and are an accurate record of the costs and expenses incurred. It is anticipated
that costs may continue and expenses to accrue.

30.     The amount of expenses stated above does not include internal and other additional
costs that my firm incurred in this Litigation but, in an exercise of discretion, do not seek to
recover.

31.     Based on my experience prosecuting the Litigation, all of these expenses were
necessary and reasonable and incurred in connection therewith.

**Plaintiffs' Service Awards**

32.     Plaintiffs took active roles in the Litigation, including reviewing pleadings, staying
in regular contact with Settlement Class Counsel about the status of the case, remaining informed
about settlement discussions, being available for consultation during the negotiation period, and
reviewing and approving the settlement agreement.

33.     Generally, Plaintiffs understood their role as Representative Plaintiffs and maintained
consistent communication with Settlement Class Counsel throughout the Litigation.

34.     Moreover, they carefully reviewed and considered the Settlement, and consulted
with Settlement Class Counsel, before approving it. Considering their work, the requested service
award of $2,500.00 for each Plaintiff is reasonable.

I declare under penalty of perjury of the laws of the United States that the foregoing is true
and correct.

Executed on this 16th day of September, in Oklahoma City, Oklahoma.

*/s/ William B. Federman*
William B. Federman

10

# **<u>EXHIBIT A</u>**

# FEDERMAN & SHERWOOD

(An Association of Attorneys and Professional Corporations)

10205 N. PENNSYLVANIA AVENUE
OKLAHOMA CITY, OKLAHOMA 73120
TELEPHONE:  405-235-1560
FACSIMILE: 405-239-2112

4131 NORTH CENTRAL EXPRESSWAY, STE. 900
DALLAS, TEXAS 75204
TELEPHONE: 214- 696-1100
FACSIMILE: 214-740-0112

## FIRM RESUME

**WILLIAM B. FEDERMAN.**  _Education_:  Boston University (B.A., cum laude, 1979); University of Tulsa (J.D., 1982); Phi Alpha Delta (Treasurer, 1980-1982).  _Admitted to practice_: United States District Courts for the following Districts:  Western, Northern and Eastern, Oklahoma; Eastern, Northern, Southern, and Western, New York; Southern, Northern, Eastern and Western, Texas; Eastern and Western, Arkansas; District of Columbia; District of Colorado; Central and Northern Districts of Illinois; Northern District of Ohio; District of Nebraska; Eastern  and Western Districts of Michigan; Eastern District of Wisconsin; United States Court of Appeals for the following Circuits: First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh and Federal; and United States Supreme Court. _Lectures/Publications_: _"Class Actions, New Rules and Data Breach Cases," 40th Annual OCBA Winter Seminar 2019; "A Case Study of Ethical Issues in Complex Litigation and Trends in Class Certification,"_ 39th Annual OCBA Winter Seminar, 2018; _"Talkin' About Insurance Coverage and Complex Litigation: What Every Lawyer and Client Should Know,"_ 38th Annual OCBA Winter Seminar, 2017; _"Securities Litigation: Using Data to Make the Case,"_ by Bloomberg BNA, 2016; _"The Changing Landscape for Prosecution of Financial Claims Involving Insolvent Companies"_ 37th Annual OCBA Winter Seminar, 2016; _"Current Status of Securities Class Actions: Where are the Courts Taking Us?"_ Houston Bar Association, 2014. _"Class & Derivative Actions and Securities Litigation,"_ 2013 Annual Meeting of the American Bar Association; _"Litigation and Employment Law Update,"_ Securities Industry Association Compliance and Legal Division; _"Inside a Disclosure Crisis",_ 30th Annual Northwest Securities Institute Annual Meeting and sponsored by the Washington Bar Association; _"Managing Directors' Liability,"_ 3rd Annual Energy Industry Directors Conference and sponsored by Rice University; _"Executive Liability - 2009 D & O Market Trends,"_ Chartis Insurance; _"Derivative Actions and Protecting the Corporation – Critical Issues in Today's Banking,"_ Oklahoma Bar Association and the Oklahoma Bankers Association; _"Arbitration - What Is It?  Why Should a Lawyer Suggest or Use It?,"_ Oklahoma Bar Association; _"The Attorney and Accountant as Targets in Failed Financial Institution Litigation,"_ American Bar Association Trial Practice Committee; _"Effective Arbitration in the 1990's - Adapting to Build a Successful Practice,"_ Oklahoma County Bar Association; _"Current Issues in Direct Investments and Limited Partnerships: The Litigation Scene From All Perspectives,"_ American Bar Association Litigation Section; _"Stockbroker Litigation and Arbitration,"_ Securities Arbitration Institute. Author: _"Who's Minding the Store: The Corporate Attorney-Client Privilege,"_ 52 O.B.J. 1244, 1981; _"Potential Liability From Indirect Remuneration in Private Oil and Gas Offerings,"_ 11 Sec. Reg. L.J. 135, 1983; _"Capitalism and Reality Meet in the Courts. . . Finally,"_ 59 O.B.J. 3537, 1987; _"Class Actions, New Rules & Data Breach Cases,"_ Annual OCBA Winter Seminar, 2019; From Breach to Bench, Data Breach Litigation and a Look as What's Next (9th Annual Class Action Money & Ethics Conference – 2025). _Membership_: Arbitration Panel, New York Stock Exchange; Federal Bar Association; Oklahoma County Bar Association (Committee on Professionalism, 1987-1990); Oklahoma Bar Association (Civil Procedure/Evidence Code, Lawyers Helping Lawyers Assistance Program and Rules of Professional Conduct Committees, 2017-2020); American Bar Association (Committee on Securities Litigation and Corporate Counsel); American Inns of Court (Barrister 1990-1993 and Master 2002-2004); inducted into the Outstanding Lawyers of America, 2003; received the Martindale-Hubbell peer review rating of AV Preeminent in both ethical standards and legal ability; recognized as one of the "Top Lawyers of 2013" for excellence and achievements in the legal community; Litigation Counsel of America (Trial Lawyer & Appellate Lawyer Honorary Society). _Awards/Honors_:  Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2018 (Global Law Experts Annual Awards); Securities Litigation and Arbitration Law Firm

of the Year in Oklahoma – 2019, 2020 (Corporate INTL Magazine); Oklahoma Super Lawyers list by Thomson Reuters – 2019; Recognized for Exceptional Service and Outstanding Performance on behalf of the Federal Bar Association (Oklahoma City Chapter) Pro Bono Program – 2018-2019, 2020, Oklahoma Super Lawyer for 2022.

**STUART W. EMMONS. (In Memoriam)** _Education_: University of Oklahoma (J.D., 1987, with distinction); University of Oklahoma (B.B.A., Accounting, 1984, with distinction). _Admitted to practice_: 1987, Oklahoma; 1987, U.S. District Court for the Western District of Oklahoma; 1990, U.S. District Court for the Northern District of Oklahoma; 1992, U.S. Court of Appeals, Tenth Circuit; 1994, U.S. Court of Appeals, Eighth Circuit; U.S. Patent and Trademark Office; 2002, U.S. District Court for the District of Colorado; U.S. District Court for the Southern District of Texas; 2003, U.S. Court of Appeals, Second Circuit; 2004, U.S. District Court for the Northern District of Texas; U.S. Court of Appeals, Fifth Circuit; 2005, United States Supreme Court; 2005 U.S. Court of Appeals, Fourth Circuit; 2015, U.S. Court of Appeals, First Circuit; 2016, U.S. Court of Appeals, Ninth Circuit and U.S. Court of Appeals for the First Circuit.  1988-1989, Law Clerk to the Hon. Layn R. Phillips, U.S. District Court for the Western District of Oklahoma. _Published Decisions:  American Fidelity Assurance Company v. The Bank of New York Mellon,_ 810 F.3d 1234 (10th Cir. 2016); _Paul Spitzberg v. Houston American Energy Corporation, et al.,_ 758 F.3d 676 (5th Cir. 2014); _Patipan Nakkhumpun v. Daniel J. Taylor, et al.,_ 782 F.3d 1142 (10th Cir. 2015); _Membership_: Oklahoma County and Oklahoma Bar Associations.

**SARA E. COLLIER.** _Education_:  Oklahoma Christian University (B.S. 2000); Oklahoma City University School of Law (J.D., 2004). _Admitted to practice_: Oklahoma, 2005; U.S. District Courts for the Western, Eastern and Northern Districts of Oklahoma, 2007; U.S. District Court for the Southern District of Texas, 2007, United States Court of Appeals for Veterans Claims in Washington, DC. _Membership_:  Oklahoma Bar Association, American Bar Association. Ms. Collier focuses her practice on shareholder rights and shareholder derivative actions in state and federal courts.

**KENNEDY M. BRIAN**. _Education:_ University of Central Oklahoma (B.M. in Musical Theater, 2018, cum laude; Minor in Real Estate Finance), University of Oklahoma (J.D., 2021; Dean's Honor Roll; Academic Achievement Award, Trial Techniques; 1L Moot Court Competition Distinguished Speaker Award; American Indian Law Review). _Admitted to practice:_ Oklahoma 2021; U.S. District Court for the Eastern District of Oklahoma, 2022; U.S. District Court for the Western District of Oklahoma, 2022; U.S. District Court for the Northern District of Oklahoma, 2023; U.S. District Court for the Northern District of Texas, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Eastern District of Texas, 2024. _Membership:_ Oklahoma Bar Association; Federal Bar Association; Junior League of Oklahoma City; Oklahoma County Bar Association. Ms. Brian focuses her practice on complex class action litigation, including consumer and data breach cases in state and federal courts across the nation.

**JESSICA A. WILKES.** _Education:_ Oklahoma State University (B.S. in Finance, Economics, and Economics, with honors, 2018, magna cum laude), Baylor University School of Law (J.D. 2021, cum laude; Dean's Academic Excellence Full-Tuition Scholarship; Baylor Law Review, Technical Editor & Alumni Relations Coordinator; Research Assistant for Dean and Professors; Baylor Barrister Society; Mock Trial Team; Baylor Public Interest Society; Student Bar Association). _Admitted to practice:_ Oklahoma 2021; U.S. District Court for the Eastern District of Oklahoma, 2021; U.S. District Court for the Western District of Oklahoma, 2021; U.S. District Court for the Northern District of Oklahoma, 2021; 10th Circuit Court of Appeals, 2021; U.S. District Court for the District of Colorado, 2024; U.S. District Court for the Northern District of Texas, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Eastern District of Texas, 2024; the Western District of Texas, 2024. _Membership:_ Oklahoma Bar Association; Friends of Trivera; Junior League of Oklahoma City. Ms. Wilkes focuses her practice on complex class action litigation, including consumer, data breach, and

securities cases in state and federal courts across the nation. Ms. Wilkes has experience in and engages in trial and appellate work. Prior to joining Federman & Sherwood, Ms. Wilkes actively practiced in litigation for the Oklahoma Attorney General's Office.

**TANNER R. HILTON.** *Education:* Texas A&M University (B.S. in Political Science, 2019); Oklahoma City University School of Law (J.D., 2022; Dean's List Spring of 2021; Order of the Barristers; Native American Law Student Association Moot Court Team, 2020-2022; CALI Award for Secured Transactions (2021)). Mr. Hilton graduated from Oklahoma City University School of Law in May of 2022. *Admitted to practice:* Oklahoma 2023; U.S. District Court for the Western District of Oklahoma, 2024; U.S. District Court for the Eastern District of Oklahoma, 2024; U.S. District Court for the Northern District of Oklahoma, 2024; U.S. District Court for the Eastern District of Texas, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Northern District of Texas, 2024; U.S. District Court for the Western District of Texas, 2024; U.S. District Court for the Northern District of New York, 2024. *Membership:* Oklahoma Bar Association, Federal Bar Association, and Order of the Barristers. Mr. Hilton's primary focus is in complex and class action litigation, including federal securities class actions, data breaches, and consumer class actions.

**ALEX J. EPHRAIM.** *Education:* University of Colorado – Denver (B.A. Political Science – Public Policy Analysis, 2018, summa cum laude, honor society, dean's list); University of Missouri – Kansas City School of Law (J.D. 2021; Second Century scholarship recipient, mock trial team, dean's list). *Admitted to practice:* Oklahoma, 2022; U.S. District Court for the Eastern District of Oklahoma, 2022; U.S. District Court for the Western District of Oklahoma, 2022; U.S. District Court for the Northern District of Oklahoma, 2022; U.S. District Court for the Southern District of New York, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Eastern District of Texas, 2024. *Membership:* Oklahoma Bar Association, Oklahoma County Bar Association, Federal Bar Association. Mr. Ephraim focuses his practice on complex class action litigation, including securities class actions, data breach, and consumer class actions.

**JONATHAN J. HERRERA.** *Education:* Austin College (B.A. in Business and Spanish, 2010, with Honors), University of Oklahoma College of Law (J.D., 2018, with Honors; Dean's Honor Roll, Order of the Solicitors, Hispanic National Bar Association President, 3L Service Award, Moot Court Competition Team Captain, Top Speaker Award). *Admitted to practice:* Oklahoma 2018. *Membership:* Oklahoma Bar Association; Oklahoma County Bar Association; Hispanic National Bar Association; OBA Law School Committee; OBA Awards Committee. Mr. Herrera is a transactional attorney whose multi-faceted practice encompasses a broad range of business litigation and disputes, including data breach and consumer class actions. He represents clients in complex business and commercial disputes in state and federal courts and administrative proceedings. Prior to joining Federman & Sherwood, Mr. Herrera practiced Criminal Defense in Oklahoma for over 5 years achieving successful outcomes for clients throughout Oklahoma.

*OF COUNSEL:*

**JOHN CHARLES SHERWOOD. (In Memoriam)** *Education:* Texas Christian University, (BBA, magna cum laude, 1981); Baylor School of Law (J.D., 1984). *Areas of Practice:* Litigation. *Board Certified:* Civil Trial Law, Personal Injury Trial Law, Texas Board of Legal Specialization. *Organizations:* Texas Trial Lawyers, Association of Trial Lawyers of America, Dallas Trial Lawyers Association, Dallas Bar Association, Former Chairperson of the Solo and Small Firm Section of the Dallas Bar Association (1999), Member of the College of the State Bar of Texas and founding President of Citizens For a Fair Judiciary (Political Action Committee). *Licenses and Courts of Practice:* Member of the State Bar of Texas, National Board of Trial Advocacy, Licensed as a Certified Public Accountant by the Texas State Board of Public Accountancy, admitted to practice before the United States Tax Court, United States

District Court, Northern District of Texas, United States Fifth Circuit Court of Appeals, and the United States Supreme Court. *Papers Presented*: *Other People's Money,* Presented to the Dallas Bar Association, Solo and Small Firm Section; *Recognition*: "Top Attorneys in Texas, Business Litigation," (2012).

**JOSHUA D. WELLS.** *Education*: Oklahoma Baptist University (B.A. 2004); Oklahoma City University College of Law (J.D. 2008) (Dean's List, Faculty Honor Roll, OCU American Trial Lawyers Association Moot Court Team, 2008; Staff Member, Law Review, 2006-07; Executive Editor, Law Review, 2007-08). *Admitted to practice*: Oklahoma, 2008; U. S. District Court for the Western District of Oklahoma; 2009, U.S. District Court for the Eastern District of Oklahoma; 2011, U.S. District Court for the Northern District of Oklahoma; 2012, U.S. Court of Appeals for the Tenth Circuit; 2016, U.S. Court of Appeals, Fourth Circuit. *Membership*: Oklahoma Bar Association; Federal Bar Association; American Bar Association. *Publication*: *Stuck in the Mire: The Incomprehensible Labor Law,* 34 Okla. City U.L. Rev. 131 (2009). *Experience*: Research Assistant to J. William Conger, General Counsel and Distinguished Lecturer of Law, Oklahoma City University and President of the Oklahoma Bar Association (2007-08). General Counsel for Reaching Souls International (2013-2016). Mr. Wells has significant experience in complex and class action litigation in various state and federal courts, with more than a decade of experience protecting consumer and shareholder rights. Mr. Wells knows how to efficiently prosecute complex cases to conclusion and practices in areas of estate planning, probate, and guardianships for both children and adults. He is the recipient of the Federal Bar Association Pro Bono Exceptional Service Award (2019) and is a leader in his church.

### *PARALEGALS:*

**JANE E. ADAMS.** Mrs. Adams has over 25 years of Administrative and Finance experience focusing her career on Human Resources. Additionally, she has first-hand experience with FEMA response as well as government contractual administration.

**TIFFANY R. PEINTNER.** Mrs. Peintner has worked in the legal community for over fifteen years. Before joining Federman & Sherwood, Mrs. Peintner worked in patent law, oil and gas, probate, banking and real estate, family law, personal injury and insurance defense. She works in securities and civil litigation for the firm.

**TASHIA D. POORE.** Ms. Poore has worked in the legal community for over fifteen years. Before joining Federman & Sherwood, Ms. Poore worked in complex civil litigation, real estate and transactions, oil & gas, trusts and estate planning, banking and construction law. She works in the areas of data breach, shareholder derivative litigation, securities and complex litigation for the firm.

**FRANDELIND V. TRAYLOR.** Mrs. Traylor has worked in the legal community for over fifteen years. She provides class action, securities and derivative litigation, and product liability support for the firm.

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| CONSUMER CLASS ACTIONS | COURT |
|---|---|
| ABC Legal Services, LLC (Data Breach) | USDC Western District of Washington |
| Accreditation Commission for Education in Nursing (Data Breach) | USDC Northern District of Georgia |
| Albany ENT & Allergy (Data Breach) | Supreme Courts of the State of New York, Albany County |
| Altice USA, Inc. (Data Breach) | USDC Southern District of New York |
| American Water Works Company, Inc. (Data Breach) | USDC District of New Jersey |
| Arden Claims Service LLC (Data Breach) | Supreme Court of the State of New York |
| Arkansas Heart Hospital, LLC | Circuit Court, Pulaski County, Arkansas – Civil Division |
| Artech, LLC (Data Breach) | USDC Northern District of California |
| AssistRx, et al (Data Breach) | USDC Middle District of Florida |
| AT&T Services Inc | USDC Northern District of Texas |
| Autobell Car Wash, LLC (Data Breach) | USDC Western District of North Carolina |
| Avem Health Partners, Inc. (Data Breach) | USDC Western District of Oklahoma |
| BHI Energy Services (Data Breach) | USDC District of Massachusetts |
| Brinker International, Inc. (Chili's) (Data Breach) | USDC Middle District of Florida |
| Bryan Cave Leighton Paisner LLP (Data Breach) | USDC Northern District of Illinois |
| Burgerville, LLC (Data Breach) | Circuit Court, State of Oregon, Multnomah County |
| Carruth Compliance Consulting, Inc. (Data Breach) | USDC District of Oregon, Pendleton Division |
| Carvin Wilson Software, LLC (Data Breach) | USDC District of Arizona |
| CentralSquare Technologies LLC (Data Breach) | USDC Southern District of Florida |
| Christie Business Holdings Company PC (Data Breach) | USDC Central District of Illinois |
| Colorado Dept. of Health Care Policy & Financing/IBM (Data Breach) | District Court, City and County of Denver, State of Colorado |
| Dakota Growers Pasta Company, Inc. (Food Mislabeling) | USDC District of Minnesota/District of New Jersey |
| Dell, Inc. (Data Breach) | USDC Western District of Texas |
| Eisner Advisory Group, LLC (Data Breach) | USDC Southern District of New York |
| Express Services, Inc. (Data Breach) | USDC Western District of Oklahoma |
| Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center (Data Breach) | USDC Western District of Oklahoma |
| Filters Fast, LLC (Data Breach) | USDC Western District of Wisconsin |
| Golden Corral Corporation (Data Breach) (PSC) | USDC Eastern District of North Carolina |
| Great Plains Regional Medical Center (Data Breach) | USDC Western District of Oklahoma |
| Grede Holdings, LLC (Data Breach) | USDC Eastern District of Michigan |
| Hy-Vee, Inc. (Data Breach) | USDC Central District of Illinois |
| Integris (Data Breach) (Co-Lead) | District Court of Oklahoma County State of Oklahoma |
| Intellihartx (Data Breach) (Executive Lead Counsel) | USDC Northern District of Ohio |
| Johns Hopkins Health System & Johns Hopkins University (Data Breach) | Circuit Court of Maryland for Baltimore City |
| Lansing Community College (Data Breach) (PSC) | USDC Western District of Michigan |
| LeafFilterNorth, LLC/LeafFilter North of Texas, LLC (Data Breach) | USDC Western District of Texas |
| Legends International, LLC (Data Breach) | USDC Southern District of New York |
| Lime Crime, Inc. (Data Breach) | USDC Central District of California |
| Mason Construction, LLC (Data Breach) | District Court of Texas, Jefferson County |
| McMurry University, LLC (Data Breach) | District Court of Texas, Taylor County |
| Medical Review Institute of America, LLC (Data Breach) | USDC District of Utah |
| Mednax Services, Inc. (Data Breach) | USDC Southern District of Florida |
| MedQ, Inc. (Data Breach) | USDC Eastern District of Texas |
| Mercer University (Data Breach) | USDC Middle District of Georgia |
| MidFirst Bank and Midland Financial Co. (Data Breach) | USDC Western District of Oklahoma |
| Morris Hospital (Data Breach) | Circuit Court of the Thirteenth Judicial Circuit Grundy, County, Illinois |
| Infosys McCamish Systems, LLC (Data Breach) (Plaintiffs' Executive Committee) | USDC Northern District of Georgia |
| In re: ALN Medical Management LLC Data Breach Incident Litigation | USDC District of Nebraska |
| In re: Navvis & Company, LLC Data Breach Litigation (Data Breach) | USDC Eastern District of Missouri |
| Oklahoma Spine Hospital LLC | District Court of Oklahoma County, State of Oklahoma |
| OneTouchPoint (Data Breach) (PSC) | USDC Eastern District of Wisconsin |
| In Re: Orrick, Herrington & Sutcliffe Data Breach Litigation (Data Breach) (Interim Lead Counsel) | USDC Northern District of California |
| Panera, LLC (Data Breach) | USDC Eastern District of Missouri, Eastern Division |
| Peachtree Orthopaedic Clinic, P.A. (Data Breach) | Superior Court of Forsyth County, State of Georgia |
| Peco Foods, Inc. (Data Breach) (Plaintiffs' Executive Committee) | USDC Northern District of Alabama |
| Performance Health Technology Inc. | Circuit Court of the State of Oregon |
| Physician's Business Office, Inc. (Data Breach) | Circuit Court of Wood County, West Virginia |
| PracticeMax (Data Breach) | USDC District of Arizona |
| Prentke Romich Company (Data Breach) | USDC Northern District of Ohio |
| Progressive Casualty Insurance (Data Breach) | USDC Northern District of Ohio |

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| | |
|---|---|
| In re: QTC Commercial Services, LLC d/b/a IMX Medical Management Services, LLP (Data Breach) | USDC Eastern District of Pennsylvania |
| Sabre GLBL, Inc. (Data Breach) | USDC Northern District of Texas |
| Seven Counties Services, Inc. (Data Breach) | Commonwealth of Kentucky, Jefferson Circuit Court |
| Skidmore College (Data Breach) | USDC Northern District of New York |
| Smile Brands (Data Breach) | USDC Central District of California |
| Snap Finance (Data Breach) | USDC District of Utah |
| Solara Medical Supplies, LLC (Data Breach) | USDC Southern District of California |
| St. Clair Orthopaedics & Sports Medicine, P.C. (Data Breach) | State of Michigan in the 16th Judicial Circuit Court for Macomb County |
| Sysco Corporation (Data Breach) (PSC) | USDC Southern District of Texas |
| TD Ameritrade, Inc. (Data Breach) | USDC District of Nebraska |
| TMX Finance Corporation Services, Inc. (Data Breach) (PSC) | USDC Southern District of Georgia |
| Trinity Petroleum Management, LLC | USDC District of Colorado |
| Varsity Brands (Data Breach) | USDC Northern District of Texas, Dallas Division |
| Verisource Services, Inc. (Data Breach) | USDC Southern District of Texas |
| Wichita State University (Data Breach) | USDC District of Kansas |
| Yuma Regional Medical Center (Data Breach) | USDC District of Arizona |
| Zeroed-In Technologies, LLC (Data Breach) (Executive Committee) | USDC Middle District of Florida |
| **SHAREHOLDER DERIVATIVE CASES** | |
| Abercrombie & Fitch Company | USDC Southern District of Ohio |
| American Superconductor Corporation | Superior Court, Commonwealth of Massachusetts |
| Antares Pharma, Inc. | USDC District of New Jersey |
| In Re: Archer-Daniels-Midland Company Derivative Litigation | USDC District of Delaware |
| Arrowhead Research Corporation | Superior Court, State of California, County of Los Angeles |
| Carrier Access Corporation | USDC District of Colorado |
| Catalina Marketing Corporation | Chancery Court of the State of Delaware |
| Cell Therapeutics, Inc. | USDC Western District of Washington |
| Computer Associates | USDC Eastern District of New York |
| Delcath Systems, Inc. | USDC Southern District of New York |
| Dendreon Corporation | USDC Western District of Washington |
| Digital Turbine, Inc. | USDC Western District of Texas |
| Doral Financial Corporation | USDC Southern District of New York |
| Dynavax Technologies Corporation | Superior Court of the State of California; county of Alameda |
| First Bancorp | USDC District of Puerto Rico |
| Flowers Foods, Inc. | USDC Middle District of Georgia |
| Genta, Inc. | USDC District of New Jersey |
| GMX Resources, Inc. | District Court of Oklahoma County, Oklahoma |
| Great Lakes Dredge & Dock Corporation | Circuit Court of Illinois, Dupage County Chancery Division |
| Host America Corporation | USDC District of Connecticut |
| Motricity Inc. | USDC Western District of Washington |
| NutraCea | Superior Court of Maricopa County, Arizona |
| Nuverra Environmental Solutions, Inc. | Superior Court of Maricopa County, Arizona |
| Nyfix, Inc. | USDC District of Connecticut |
| OCA, Inc. | USDC Eastern District of Louisiana |
| ONEOK, Inc. | District Court of Tulsa County, Oklahoma |
| PainCareHoldings, Inc. | USDC Middle District of Florida |
| Seitel, Inc. | USDC Southern District of Texas |
| Southwest Airlines | USDC Northern District of Texas |
| Spectrum Pharmaceuticals, Inc. | USDC District of Nevada |
| Super Micro Computer, Inc. | USDC Northern District of California |
| The Spectranetics Corporation | USDC District of Colorado |
| ValueClick, Inc. | USDC Central District of California |
| Zix Corporation | USDC Northern District of Texas |
| **SECURITIES CLASS ACTIONS** | |
| Automatic Data Processing, Inc. (ADP) | USDC District of New Jersey |
| Amyris, Inc. | USDC, Northern District of California |
| Bellicum Pharmaceuticals, Inc. | USDC Southern District of Texas |
| Broadwind Energy, Inc. | USDC Northern District of Illinois |
| China Valves Technology, Inc. | USDC Southern District of New York |
| Cryo-Cell International, Inc. | USDC Middle District of Florida |
| Delta Petroleum, Inc. | USDC District of Colorado |
| Direxion Shares ETF Trust | USDC Southern District of New York |
| Ener1, Inc. | USDC Southern District of New York |

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| | |
|---|---|
| Exide Technologies | USDC Central District of California |
| Galena Biopharma, Inc. | USDC District of New Jersey |
| Houston American Energy Corp. | USDC Southern District of Texas |
| Image Innovations Holdings, Inc. | USDC Southern District of New York |
| IZEA, Inc. | USDC Central District of California |
| Motive, Inc. | USDC Western District of Texas |
| Quest Energy Partners LP | USDC Western District of Oklahoma |
| Secure Computing Corporation | USDC Northern District of California |
| Superconductor Technologies, Inc. | USDC Central District of California |
| UTi Worldwide, Inc. | USDC Central District of California |
| Unistar Financial Service Corp. | USDC Northern District of Texas |
| **MDL PROCEEDINGS** | |
| In re: Farmers Insurance Co. (Co-Lead and Liaison Counsel) | USDC Western District of Oklahoma |
| In re: Fortra File Transfer (Sub-Group Lead Counsel for Intellihartx) | USDC Southern District of Florida |
| In re: Home Depot, Inc. (Executive Committee) | USDC Northern District of Georgia |
| In re: Mednax Services Inc. (Data Breach – Co-Lead Counsel) | USDC Southern District of Florida |
| In re: Premera Blue Cross (Data Breach–Participating Counsel) | USDC District of Oregon |
| In re: Samsung Electronics America, Inc. (Co-Lead Counsel) | USDC Western District of Oklahoma |
| In re: The Sonic Corp. (Lead Counsel) | USDC Northern District of Ohio |
| **DEAL CASES (MERGERS)** | |
| Easylink Services International Corp. | Superior Court of Gwinnett County, Georgia |
| Genon Energy, Inc. | Chancery Court of the State of Delaware |
| Lawson Software, Inc. | Chancery Court of the State of Delaware |
| Network Engines, Inc. | Chancery Court of the State of Delaware |
| Paetec Holding Corp. Shareholder Litig. | Chancery Court of the State of Delaware |
| Williams Pipeline Partners, L.P. | District Court of Tulsa County, Oklahoma |
| Xeta Technologies, Inc. | District Court of Tulsa County, Oklahoma |

# **EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

MICHAEL DOUGLAS, DOROTHY
GOODON, DOROTHY ALEXANDER,
STELLA KERITSIS, JOHNNIE JONES,
YOLANDA BETTS, LOGAN ALDRIDGE,
STEVEN D'ANGELO, CHRISTINE ASHE,
VERNITA FORD, and DIANE YOUNG,

              Plaintiffs,

v.

PURFOODS, LLC,

              Defendant.

No. 4:23-cv-00332-RGE-SBJ

---

**DECLARATION OF TYLER J. BEAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

I, Tyler J. Bean, declare and state as follows:

1.      I am duly licensed to practice law in the State of Oklahoma. I am Settlement Class Counsel for Plaintiffs Michael Douglas, Dorothy Goodon, Dorothy Alexander, Stella Keritsis, Johnnie Jones, Yolanda Betts, Logan Aldridge, Steven D'Angelo, Christine Ashe, Vernita Ford, and Diane Young, in the above-captioned case (the "Litigation"). I am a partner at Siri & Glimstad LLP and am experienced in data breach class actions and class actions in general. My firm resume is attached hereto as **Exhibit 1**.

2.      I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration based on my participation in the prosecution and resolution of the Action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

## Summary of Work Performed

3.      My firm's work in this matter involved investigating the cause and effects of Defendant PurFoods, LLC d/b/a Mom's Meals' Data Incident, interviewing potential clients, evaluating potential representative plaintiffs, contributing to the evaluation of the merits of the case before filing our initial complaint on behalf of Plaintiffs; conducting legal research; coordinating with the other Plaintiffs' counsel to self-organize the various actions, drafting and filing consolidation and leadership motions; conducting substantial informal discovery regarding the Data Incident and the class size and makeup; engaging in arms-length settlement negotiations with Defendant's Counsel; participating in the Mediation and subsequent negotiations; drafting the Settlement Agreement and Plaintiffs' motion for preliminary approval; seeking competitive bids from potential settlement administrators; communicating with defense counsel; updating and handling questions from our Plaintiffs; and overseeing the notice to the Settlement Class and the ongoing claims process.

## Siri & Glimstad LLP's Lodestar and Expenses

4.      All of the services performed by my firm were undertaken on a contingent fee basis, and we have not been compensated for any of this work to date. My firm took risks in litigating this matter under a complete contingency arrangement with no guarantee of any recovery whatsoever, and there was a substantial risk of no recovery at all given the threshold issues raised by Defendant and the uncertain nature of data breach class action litigation.

1.      Siri & Glimstad LLP's rates are reasonable and have been recently approved by other courts in similar class action settlements. My firm's current hourly rates are as follows: $725-$975/hour for partners; $575-$585/hour for associates; and $260/hour for paralegals. These hourly rates are the current usual and customary rates set by my firm for each individual and used in all

current litigation matters, as periodically adjusted according to market rates. *See, e.g.*, *Puller-Soto v. UNITE HERE*, No. 1:24-cv-01565, Docket No. 46 (S.D.N.Y. May 15, 2025) (approving S&G's hourly fee rates); *Tuteur v. Metropolitan Opera Association*, No. 23-cv-3997, Docket No. 72 (S.D.N.Y. Mar. 27, 2025) (approving fee application on a lodestar basis); *In re Onix Group, LLC Data Breach Litig.*, No. 23-2288-KSM, Docket. No. 47-6 (E.D. Pa. Dec. 13, 2024) (finding hourly rates of up to $1,057 for partners and between $575 and $725 for Siri & Glimstad associates to be reasonable); *Holden v. Guardian Analytics, Inc*., No. 2:23-cv-2115, 2024 U.S. Dist. LEXIS 100349, at *36 (D.N.J. June 5, 2024) (accepting as a reasonable the hourly rates submitted by Siri & Glimstad, which ranged from $675 to $825 per hour for associates and $975 per hour for partners); *Boudreaux v. Systems East, Inc.,* No. 5:23-cv-1498, Docket No. 32 (N.D.N.Y. Dec. 4, 2024) (approving fee application); *Medina v. Albertsons Companies, Inc.*, Case No. 1:23-cv-00480-MN, Docket No. 34 (D. Del. April 6, 2024) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100, Docket No. 51 (D. Mass. July 23, 2024) (same); *Carter et al. v. Vivendi Ticketing US LLC b/b/a See Tickets*, Case No. 22-01981-CJC (DFMx), Docket No. 53 (C.D. Cal. Oct. 30, 2023) (the court approved Siri & Glimstad's hourly rates and stated that it "reviewed the information provided and concludes that the lodestar amount with the requested multiplier fairly compensates the attorneys in this case given the excellent result they achieved for the class, the able representation of counsel, the investigation, discovery, negotiation, and other work performed, and the substantial risk counsel undertook in this data breach class action.").

5.     The rates reflect what would be charged to a fee-paying client in the private legal marketplace for complex litigation. The rates are also in line with the rates charged by other firms that handle complex cases and class actions.

6.      My firm and I have general familiarity with the range of hourly rates typically charged by plaintiffs' class action counsel in data breach and complex consumer class actions throughout the United States, both on a current and historical basis. I believe that the rates charged by Siri & Glimstad LLP in this Litigation are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise for legal services furnished in complex contingency class action litigation such as this.

7.      Siri & Glimstad LLP kept detailed records regarding the amount of time its attorneys spent on this Litigation, and the lodestar calculation is based on attorneys' current billing rates. The information was prepared from contemporaneous, daily time records regularly prepared and maintained by Siri & Glimstad LLP.

8.      Through September 4, 2025, my firm has expended 152.6 hours pursuing this Litigation on behalf of the Settlement Class.

9.      My firm's total lodestar through September 4, 2025, is $84,454.00. A summary of rates and hours expended are as follows:

| Siri & Glimstad LLP | | | | |
|---|---|---|---|---|
| Name | Position | Total Hours | Rate | Total Lodestar |
| Mason Barney | Senior Partner | 0.6 | $975 | $585.00 |
| Tyler Bean | Partner | 62.5 | $725 | $45,312.50 |
| Neil Williams | Associate | 1.6 | $585 | $936.00 |
| Gabrielle Williams | Associate | 46.3 | $575 | $26,622.50 |
| Quinn Taylor | Summer Associate | 2.8 | $325 | $910.00 |
| Alcira Pena | Paralegal | 3.7 | $260 | $962.00 |
| Delilah Estefano | Paralegal | 12.2 | $260 | $3,172.00 |
| Cherie Cornfield | Paralegal | 7.6 | $260 | $1,976.00 |

| Enrica Peters | Paralegal | 15.3 | $260 | $3,978.00 |
|---|---|---|---|---|
| **TOTAL** | | **152.6** | | **$84,454.00** |

10.     In my opinion, this time was reasonable and necessary for the prosecution of this Litigation and my firm took meaningful steps to ensure the efficiency of our work.

11.     My firm expects to spend a significant amount of additional time on this case until it is fully resolved.

12.     In connection with the Litigation, Siri & Glimstad LLP also advanced costs and expenses.

13.     As of the date of this declaration, Siri & Glimstad LLP has incurred $3,102.31 in costs and expenses in connection with this Litigation. Below is a table categorizing these expenses:

| Category | Amount |
|---|---|
| CLRA Notice Letter via Certified Mail | $8.56 |
| Mediation Fee | $3,093.75 |
| **Total** | $3,102.31 |

14.     The costs and expenses incurred in this Litigation are reflected on the books and records of Siri & Glimstad LLP. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the costs and expenses incurred. It is anticipated that costs may continue and expenses to accrue.

15.     The amount of expenses stated above does not include internal and other additional costs that my firm incurred in this Litigation but, in an exercise of discretion, do not seek to recover.

16.     Based on my experience prosecuting and overseeing the conduct of the Litigation, all of these expenses were necessary and reasonable and incurred in connection therewith.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on this 16th day of September, in Oklahoma City, Oklahoma.

*/s/ Tyler J. Bean*
Tyler J. Bean

# EXHIBIT 1

# Siri | Glimstad

## FIRM RESUME



# Class Action Practice Group

With attorneys across the country, Siri & Glimstad LLP represents clients from coast to coast in class actions and mass torts in state and federal courts. Utilizing decades of experience at major global law firms, we tackle each dispute with a sophisticated, strategic approach, and we fight hard for every one of our clients.

# Offices Nationwide

**NEW YORK**
745 Fifth Ave • Suite 500
New York, NY 10151

**PHOENIX**
11201 N. Tatum Boulevard • Ste 300
Phoenix, AZ 85028

**WASHINGTON D.C.**
1025 Thomas Jefferson Street, N.W.
Washington, D.C. 20007

**AUSTIN**
1005 Congress Avenue • Ste 925-C36
Austin, TX 78701

**MIAMI**
20200 West Dixie Highway • Ste 902
Aventura, FL 33180

**DETROIT**
220 West Congress Street • 2nd Floor
Detroit, MI 48226

**LOS ANGELES**
700 S Flower Street • Ste 1000
Los Angeles, CA 90017

**CHARLOTTE**
525 North Tryon Street • Ste 1600
Charlotte, NC 28202

**1-888-SIRI-LAW (747-4529)**

# Admitted States

Alabama • Arizona • California • Colorado • Connecticut • District of Columbia • Florida
Idaho • Illinois • Kentucky • Maryland • Massachusetts • Michigan • Mississippi • New Jersey
New York • North Carolina • Oklahoma • Oregon • Pennsylvania • South Carolina • Tennessee
Texas • Virginia



www.sirillp.com



# Attorney Profiles

## Aaron Siri
*Managing Partner*

Aaron Siri is the Managing Partner of Siri & Glimstad LLP and has extensive experience in a wide range of complex civil litigation matters, with a focus on civil rights, class actions, and commercial litigation.



Mr. Siri has successfully litigated numerous civil rights cases, prosecuted class actions against large corporations resulting in payments to hundreds of thousands of Americans, and has acted as counsel to clients in multiple commercial disputes exceeding one billion dollars, including regarding Oracle Team's challenge for the America's Cup and the collapse of the World Trade Center.

Prior to founding Siri & Glimstad, Mr. Siri was a litigation attorney at Latham & Watkins for over five years. Before Latham, Mr. Siri clerked for the Chief Justice of the Supreme Court of Israel from 2004-2005 where he advised the Chief Justice of relevant American, English (including Commonwealth Countries), and International Law precedents for cases of first impression.

Mr. Siri has also been involved in various pro-bono matters, including representation of asylum applicants, housing discrimination victims, and non-profit organizations in tenant-landlord disputes, as well as being chosen as a Frank C. Newman delegate to present a paper he authored before the United Nations Human Rights Sub-Commission.

Mr. Siri earned his law degree at the University of California, Berkeley School of Law where he received four Prosser Prizes and ten High Honors. He was also the Editor-in-Chief and founder of the Berkeley Business Law Journal, which he developed into a nationally recognized publication, and was ranked as the leading commercial law journal in the country.

Prior to law school, Mr. Siri was an auditor at Arthur Andersen LLP, where he examined internal controls and audited corporate documents for private and public micro-cap technology companies. Mr. Siri is a Certified Public Accountant and an attorney admitted in federal and state courts across the country.

Mr. Siri is regularly interviewed on national television for his expertise regarding certain legal issues. He has also been published in the Washington Post, Stat News, and Bloomberg.



# Mason A. Barney
*Senior Partner*



Mason A. Barney is an experienced trial attorney who for nineteen years has represented both individuals and corporations in complex litigations. Mr. Barney received his J.D., *summa cum laude* from Brooklyn Law School, in 2005, where he graduated second in his class of nearly 500 students, and received numerous academic honors, in addition to being an editor on the Brooklyn Law Review. He then served as a law clerk to the Honorable Judge David G. Trager in the U.S. District Court for the Eastern District of New York. After clerking, he joined the litigation department at Latham & Watkins LLP, and later joined Olshan Frome Wolosky LLP a large established New York City law firm. Before law school, Mr. Barney earned his B.A. from Bowdoin College, where he double majored in Computer Science and Studio Art, and after college he served as a lead database developer for three years at a successful Internet start-up in Washington D.C.

Mr. Barney focuses his practice on class actions and representing individuals in complex litigations. In this practice he has won tens of millions of dollars for his clients. Among other matters, Mr. Barney has fought to stop companies from illegally spamming consumers with unwanted phone calls, has worked to stop companies from illegally obtaining their customers' biometric information (e.g., facial scans and fingerprints), and obtained recovery for numerous victims of data breaches. Mr. Barney has also served as counsel of record for numerous lawsuits involving alleged violations of the Illinois Genetic Information Privacy Act, successfully opposing dispositive motions and defeating improperly raised affirmative defenses.

Mr. Barney is recognized by the New York Legal Aid Society for his outstanding pro bono work representing indigent individuals in matters concerning prisoners' rights, immigration, and special education.

Mr. Barney has published a number of articles concerning a variety of legal issues. These include authoring or co-authoring: *The FBI vs. Apple: What Does the Law Actually Say?,* Inc. Magazine (February 2016); *Can Lawyers Be Compelled to Produce Data They Compile? An Emerging Front in the Trenches of e-Discovery Battles*, Bloomberg BNA (May 2015); *Legal Landscape for Cybersecurity Risk is Changing as Federal Government and SEC Take Action*, Inside Counsel Magazine (May 2015); *Tellabs v. Makor, One Year Later*, Securities Law 360 (July 2008); *Not as Bad as We Thought: The Legacy of Geier v. American Honda Motor Co.in Product Liability Actions,* 70 Brooklyn L. Rev. 949 (Spring 2005). Mr. Barney serves as an adjunct professor at Brooklyn College in New York, teaching Education Law in its graduate studies program, and separately has presented continuing legal education instruction regarding the Foreign Corrupt Practices Act.



# Elizabeth Brehm
*Senior Partner*



Elizabeth Brehm graduated from Boston University with a Bachelor of Science and earned her master's degree from Long Island University at C.W. Post. She attended Hofstra Law School and obtained a Juris Doctorate, graduating *magna cum laude*, in 2008.

After law school, Ms. Brehm spent a year at Winston & Strawn LLP where she focused on products liability litigation. For nine years prior to joining Siri & Glimstad, Ms. Brehm worked for a New York law firm where she focused on antitrust class action lawsuits, health care fraud, and qui tam and whistleblower litigations.

Ms. Brehm has been an attorney at Siri & Glimstad for over two years and has handled numerous complex litigation matters, including class action matters.


# Walker Moller
*Partner*



Before law school, Walker Moller worked and volunteered for three years in 15 countries throughout Southeast Asia, Oceania, and Africa. While at Mississippi College School of Law, Walker clerked at the Mississippi Supreme Court and was on the Law Review. He graduated *summa cum laude* in 2014 and earned the highest grade in eight courses. After graduation, Walker clerked for a federal judge at the United States District Court, Western District of Louisiana, where he gained exposure to a large volume of employment discrimination matters, products liability cases, and constitutional litigation.

Walker then worked for the U.S. Army Corps of Engineers from 2015 to 2021, where his practice focused on federal contracts and civil litigation in various administrative courts. Immediately before joining Siri & Glimstad, Walker achieved full dismissal of a lawsuit against the Corps of Engineers that implicated $68M worth of federal contracts.



# Tyler J. Bean
*Partner*



Tyler J. Bean graduated from the University of Oklahoma's Michael F. Price College of Business in 2015 and obtained a Juris Doctorate from the University of Oklahoma in 2019, where he served as editor for the Oil and Gas, Natural Resources, and Energy Law Review Journal. Mr. Bean also received numerous academic honors as a law student, including being named to the Faculty Honor Roll and Dean's List.

After graduating law school and serving as in-house counsel for a large, multi-billion-dollar retail organization, Mr. Bean turned his focus to complex civil litigation and consumer class actions, with a particular emphasis on data breach and privacy matters. He has years of experience as a data breach and privacy lawyer, having played a significant role as class counsel in successfully litigating numerous data breach and privacy class actions from inception through discovery and court approved settlements, recovering millions of dollars for hundreds of thousands of consumers, patients, students, and employees across the country who have been victims of negligent data security and privacy practices.

# William M. Sweetnam
*Partner*



William M. Sweetnam practices in the areas of class action and complex litigation and appeals. He has prosecuted hundreds of class actions in federal and state courts across the country, including matters in which he was appointed lead counsel or co-lead counsel. His primary focus is on consumer protection and privacy matters, including class actions brought under the Fair Credit Reporting Act (FCRA), the Fair and Accurate Credit Transactions Act (FACTA), the Telephone Consumer Protection Act (TCPA), the Illinois Biometric Information Privacy Act (BIPA), the Illinois Genetic Information Privacy Act (GIPA) as well as cases brought under various state consumer fraud and deceptive business practices acts and federal securities and antitrust laws.

Mr. Sweetnam has been counsel of record in class action lawsuits resulting in recoveries totaling more than $20 billion. Some notable examples include:

*Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC*. Mr. Sweetnam was class counsel in this Fair Credit Reporting Act class action which resulted in a $21.5 million settlement on behalf of 23,000 consumers about whom LexisNexis was alleged to have reported inaccurate civil judgment and lien information in violation of the Fair Credit Reporting Act.



*Kelly v. Old National Bank*. Mr. Sweetnam obtained class certification and was appointed lead counsel for the class in this consumer fraud bank overdraft fee class action, ultimately resulting in an all-cash settlement of $4.9 million, representing more than 90% of the class' damages.

*Levey, et al. v. Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V.* Mr. Sweetnam was class counsel in this consumer fraud class action against Mexican airline Volaris alleging its failure to issue refunds to more than 23,000 passengers whose flights were canceled during the early phases of the Covid-19 pandemic. Although numerous other similar cases were filed against other airlines, Mr. Sweetnam obtained the only all-cash settlement, totaling $3.5 million.

Prior to joining Siri & Glimstad, Mr. Sweetnam was the managing partner of a Chicago class action litigation boutique and a partner or counsel to other nationally recognized class action firms. He received his B.A. from the University of Michigan and his JD from De Paul University College of Law.

# Kent. M. Williams
*Attorney*



Kent M. Williams has over 30 years of experience representing large classes of consumers, employees, and small businesses in antitrust, wage and hour, consumer fraud, data breach, privacy, employment discrimination, securities fraud, trespass, and product liability lawsuits.

Mr. Williams received his J.D. magna cum laude with legal writing honors from the University of Minnesota in 1991, where he was published in the University of Minnesota Law Review and competed against other law schools as a member of Minnesota's Jessup International Law Moot Court Competition Team.

After a summer internship with Jenner & Block in Chicago, Mr. Williams decided to remain in the Twin Cities, where he joined Dorsey & Whitney, one of the largest firms in the Midwest. After a few months, Mr. Williams yearned for more "hands on" experience, so he moved to Opperman Heins & Paquin (now known as Lockridge Grindal Nauen PLLP), a class action boutique where he was responsible for a variety of class and non-class matters. One of his most memorable experiences at OHP was coordinating the successful defense of the late Dr. John S. Najarian, a renowned surgeon who was accused by the Food and Drug Administration of illegally marketing and selling Minnesota antilymphocyte globulin ("MALG"), an anti-rejection drug that Dr. Najarian had developed into what became the immunosuppressive "gold standard" for transplant surgery.





In 1994, Mr. Williams and four other attorneys formed a new class action firm, Heins Mills & Olson, P.L.C.  His practice expanded to include class actions against major manufacturers of infant formula, industrial diamonds, hearing aids, polybutylene pipe, synthetic stucco, and other products. He advocated fiercely for consumers in antitrust cases, winning one of the first-ever contested indirect purchaser class certifications in the country, as well as an appellate court victory in North Carolina that established a private right of action for indirect purchasers in that state. Mr. Williams also represented landowners in class actions alleging trespass against railroads and telecommunications companies for burying fiber optic cable on private property without permission.

A firm believer that "variety is the spice of life," in the mid-2000s, Mr. Williams decided to open a solo practice that allowed him to branch out into other areas of the law, while continuing to represent plaintiffs in class actions and other complex commercial matters. Over the next twenty years, Mr. Williams successfully handled a diversity of probate, family law, land-use, administrative law, criminal law, and employment law matters. During that same time period, he served as trial and/or lead counsel in a number of behemoth class actions brought against Big Pharma, Microsoft, and other large corporations. Mr. Williams is recognized as one of the first lawyers in the country to wage mass arbitration "guerilla warfare" (in the words of one legal commentator) by bringing hundreds of individual wage-and-hour arbitrations against a large, well-known restaurant chain.

More recently, Mr. Williams has expanded his practice to include consumer privacy litigation. He manages the Firm's genetic and biogenetic information privacy litigation group, and he serves as class counsel in a number of privacy cases, including one brought against a well-known online healthcare company. At the same time, Mr. Williams continues to advocate for consumers victimized by price-fixing, monopolization, securities fraud, financial fraud, and other unlawful schemes.

## Oren Faircloth
*Attorney*

Oren Faircloth graduated from McGill University in 2009 with a Bachelor of Arts degree in Political Science. Before attending law school, he served in the armed forces from 2010 to 2011. Mr. Faircloth graduated from Quinnipiac University School of Law, *magna cum laude*, in 2016.



Prior to joining Siri & Glimstad, Mr. Faircloth worked for a boutique law firm where he spearheaded ERISA class action lawsuits against Fortune 500 companies, including: Huntington Ingalls, Rockwell Automation,

Raytheon, UPS, U.S. Bancorp, Delta Air Lines, and Sprint. Mr. Faircloth was involved in the prosecution of numerous successful class actions in which over $100 million dollars have been

Siri | Glimstad

www.sirillp.com



recovered for tens of thousands of employees around the country. In 2022, Mr. Faircloth was recognized by Super Lawyers magazine as a Rising Star in the field of class action.

Mr. Faircloth focuses his practice on class actions and representing individuals in complex litigations. He presently represents individuals who have been denied reimbursement for work-related expenses from their employers, denied sufficient lactation accommodations in the workplace, and denied actuarially equivalent pension benefits. Mr. Faircloth has also represented several individuals on a pro bono basis, negotiating favorable settlements for violations of their constitutional rights.

## Wendy Cox
*Attorney*



Prior to joining Siri & Glimstad, Ms. Cox served for 21 years in the United States Army as an Army Nurse Corps officer and as an Army Judge Advocate. As a nurse corps officer, Ms. Cox worked in several clinical settings to include a pediatric unit, a specialty surgical unit, and an orthopedic surgical unit. During her last year as an Army Nurse Corps officer, she taught Army medics in basic life-saving skills before being selected by the Army to attend law school. After graduating law school in 2005, Ms. Cox prosecuted soldiers, advised on operational law issues, taught Constitutional Law at West Point, and advised senior leaders on a variety of legal issues. Following her retirement from the United States Army in 2018, she went on to continue serving soldiers as an attorney for the Office of Soldiers' Counsel.

Wendy Cox graduated *cum laude* from the State University at Buffalo Law School in New York and *summa cum laude* from Norwich University with a Bachelor of Science in Nursing. She went on to get her Master of Laws (L.L.M.) degree in Military Law in 2008.

## Catherine Cline
*Attorney*



Catherine Cline has extensive experience in a wide range of civil law, including constitutional, administrative, employment, and election law. Prior to joining Siri & Glimstad, Ms. Cline served as a judicial law clerk for judges in the U.S. District Court for the Middle District of Pennsylvania, the Commonwealth Court of Pennsylvania, and the Supreme Court of Pennsylvania.

Ms. Cline attended law school on a full tuition scholarship, during which time she served as the Editor-in-Chief of the law review and as intern for a U.S. District Court Judge in the Middle District of Florida. Before attending law school, Ms. Cline received her Bachelor of Arts in Economics with a Minor in Business and the Liberal Arts



from Penn State University and worked in the Tax Credit Division of the Pennsylvania Department of Community and Economic Development.

# Dana Smith
*Attorney*



Dana Smith is a seasoned litigator. Prior to joining Siri & Glimstad, Ms. Smith focused most of her legal career on personal injury litigation, including representing individuals harmed due to corporate negligence. Ms. Smith is also experienced in various domestic areas of practice, including divorce, high-conflict custody disputes, and child welfare law.

Ms. Smith graduated *cum laude* from the North Carolina Central University School of Law. Additionally, she received her Bachelor of Arts in Romance Languages from the University of North Carolina at Chapel Hill.

# Sonal Jain
*Attorney*



Sonal Jain has experience in complex commercial litigations as well as class actions. Ms. Jain graduated from the New York University School of Law with an LLM in International Business Regulation, Litigation and Arbitration in 2020 where she gained experience with international dispute resolution. She received her first degree in law (B.A. LL.B.) from ILS Law College, Pune, a prime legal education institution in India. Prior to joining Siri & Glimstad, Ms. Jain held various internships with top-tier law firms in India where she specialized in complex dispute resolution ranging from consumer and corporate litigation to domestic arbitrations.

# Jack Spitz
*Attorney*



Jack R. Spitz is a graduate of Rutgers School of Law where he was a member of the Rutgers Law Record Journal and interned with the Essex County Public Defender's Office. Following law school, he served as Law Clerk for two judges at the Middlesex County Superior Court in New Brunswick, New Jersey. Subsequently, Mr. Spitz defended a wide variety of personal injury and property damage matters, as well as represented Plaintiffs in employment litigation matters. Prior to law school, Mr. Spitz graduated from Clemson University in South Carolina.



# Gabrielle Williams
*Attorney*

Ms. Williams obtained her J.D. from the University of Maryland Francis King Carey School of Law. During her time in law school, she represented clients in state court through the Justice for Victims of Crime Clinical Law Program. She also served as an Associate Editor on the Journal of Healthcare Law and Policy, Executive Board Member of the Black Law Students Association, and Class Representative for the Student Bar Association. Prior to joining Siri and Glimstad, Ms. Williams served as a Judicial Law Clerk on the Appellate Court of Maryland.



# Neil Williams
*Attorney*

With a robust background in data breach litigation, Mr. Williams is a seasoned legal professional dedicated to protecting the interests of clients in the digital age. Leveraging his extensive experience in cybersecurity law and privacy regulations, he has successfully represented numerous individuals in complex data breach cases. Mr. Williams meticulously navigates the intricate legal landscape surrounding data breaches, providing strategic counsel and vigorous advocacy to achieve favorable outcomes for his clients.



Mr. Williams received his J.D. from Charleston School of Law, where he was awarded CALI Awards on two occasions for the top grade in his class. He also worked alongside several South Carolina Pro Bono Services to ensure that competent legal representation was reaching the most at need populations in the area.  Mr. Williams received his undergraduate degree from the University of South Carolina.

# Sonjay Singh
*Attorney*

Sonjay Singh is a seasoned litigator with broad experience in data privacy matters.

Prior to joining Siri & Glimstad, Mr. Singh worked with prominent plaintiffs' firms in the District of Columbia and Pennsylvania, where he brought claims for individuals affected by data privacy violations, predatory lending, defective products, false advertising, institutional abuse, and other corporate misconduct. Mr. Singh has also practiced as a trial lawyer,



Siri | Glimstad

www.sirillp.com



pursuing personal injury, medical malpractice, defective premises, and other tort cases on behalf of his clients.

Mr. Singh graduated from Temple University's Beasley School of Law with both his J.D. and a certificate in Trial Advocacy and Litigation. During his time in law school, he was active on campus, and served as Vice President of the Student Bar Association. Mr. Singh also competed on Temple's highly-ranked Trial Team, winning the Inter-American Invitational at the University of Puerto Rico among other honors. For his dedication to plaintiffs' representation, Mr. Singh was named the Eisenberg Scholar, a scholarship given yearly to the outstanding student in civil litigation, and received the Trial Program Award for excellence in trial advocacy. Upon graduating, Mr. Singh was inducted into the Rubin Public Interest Society for his commitment to public service.

Mr. Singh is active in the legal community, and served as the 2022-23 Communications Chair for the MSBA Young Lawyers Division. Before starting his legal career, Mr. Singh co-founded a DEI hiring and recruiting startup, and was elected to serve as Democratic Committeeperson for the Townships of Marple and Newtown, PA.


# Jordan Underhill
*Attorney*

Prior to joining Siri & Glimstad, Jordan Underhill worked as an Assistant Attorney General for the Texas Office of Attorney General. While at the Texas OAG, he prosecuted multi-million-dollar civil fraud cases against pharmaceutical companies, hospital systems, and other entities accused of misappropriating taxpayer funds.



Mr. Underhill also worked for many years at a nonprofit organization where he provided free legal representation to low-income individuals. His work there covered a wide range of civil litigation, including housing/property law, family law, employment law, and criminal record sealing.

Mr. Underhill obtained his J.D. from the University of Colorado–Boulder, where he served as a student note editor for the Colorado Technology Law Journal and volunteered for the Colorado Innocence Project.

At Siri & Glimstad, he focuses on class actions involving data privacy issues.



# Notable Class Actions Handled
# By Siri & Glimstad LLP

**Buchanan v. Sirius XM Radio, Inc.**
Case No. 3:17-cv-00728 (N.D. Tex.)
Appointed co-lead class counsel in a case alleging violations of the TCPA, which resulted in a settlement of $25,000,000, plus free satellite radio service, to a class of 14.4 million members.

**Thomas v. Dun & Bradstreet Credibility Corp**.
Case No. 15-cv-3194 (S.D. Cal.)
Appointed co-lead class counsel in a case alleging violations of the TCPA which resulted in a settlement of $10,500,000.

**Gatto v. Sentry Services, Inc., et al.**
Case No. 13 CIV 05721 (S.D. N.Y.)
Appointed co-lead class counsel in a case involving ERISA claims relating to an ESOP which resulted in a settlement of $11,138,938.

**Kindle v. Dejana**
Case No. 14-cv-06784 (E.D. N.Y.)
Appointed co-lead trial counsel for plaintiffs in an ERISA matter filed as a class action involving breaches of fiduciary duty related to  the management  and termination of an ESOP, which settled after the beginning of trial for $1,080,000 for the class.

**MacNaughton v. Young Living Essential Oils, LC,**
67 F.4th 89 (2d Cir. 2023)
Successfully reversed motion to dismiss, creating a significant precedent regarding the definition of "puffery" in N.Y. false advertising cases.

**MacNaughton v. Young Living Essential Oils, LC,**
Case No. 24LA0329 (Cir. Ct. Ill.)
Received final approval of settlement in false advertising class action valued at $10,000,000.

**Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets**
Case No. 8:22-cv-01981 (C.D. Cal.)
Final approval granted, appointing firm as sole class counsel, in a data breach class action settlement involving 437,310 class members and a $3,000,000 non-reversionary settlement fund.





**Medina v. Albertsons Companies, Inc.**
Case No. 1:23-cv-00480 (D. Del.)
Obtained final approval of a class settlement involving 33,000 class members and a $750,000 non-reversionary settlement fund.

**In re Sovos Compliance Data Security Incident Litigation**
Case No. 1:23-cv-12100-AK (D. Mass.)
Obtained final approval of a class settlement that includes a non-reversionary settlement fund of $3,534,128.50 involving 490,000 individuals, and separate from the settlement fund, requires the defendant to pay for data security improvements.

**Owens v. US Radiology Specialists, Inc.,**
Case No. 22 CVS 17797 (N.C. Super. Ct.)
Received final approval for settlement in data breach involving 1,309,429 customer's private health information, creating non-reversionary settlement fund of $5,050,000 to compensate class members.

**In re: Planet Home Lending, LLC Data Breach**
Case No. 3:24-cv-127 (D. Conn.)
Final approval granted for data breach settlement affecting 285,000 individuals, which will create a non-reversionary settlement fund valued at $ 2,425,000.

**In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident**
Case No. 2:23-cv-07498 (C.D. Cal.)
Final approval of settlement in second data breach affecting 323,498 individuals, where the settlement agreement calls for the creation of a non-reversionary settlement fund in the amount of $3,250,000.

**Fortra File Transfer Software Data Security Breach Litigation**
Case No. 24-MD-03090-RAR (S.D. Fl.).
Appointed to leadership team in nationwide multi-district litigation concerning data breach affecting more than 4,000,000 individuals' personal and health information.

**In re UNITE HERE Data Security Incident Litigation**
Case No. 1:24-cv-01565-JSR (S.D.N.Y.)
Obtained final approval of data breach settlement affecting roughly 790,000 individuals, creating a non-reversionary settlement fund of $6,000,000 to compensate class members.

# **EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| MICHAEL DOUGLAS, DOROTHY GOODON, DOROTHY ALEXANDER, STELLA KERITSIS, JOHNNIE JONES, YOLANDA BETTS, LOGAN ALDRIDGE, STEVEN D'ANGELO, CHRISTINE ASHE, VERNITA FORD, and DIANE YOUNG, <br><br> Plaintiffs, <br><br> v. <br><br> PURFOODS, LLC, <br><br> Defendant. | No. 4:23-cv-00332-RGE-SBJ |

<u>**DECLARATION OF GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**</u>

I, Gary M. Klinger, declare and state as follows:

1.      I am duly licensed to practice law in the State of Illinois. I am counsel of record for Plaintiff Dorothy Alexander in the above-captioned case (the "Litigation"). I am a senior partner at Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") and am experienced in data breach class actions and class actions in general. My firm resume is attached hereto as **Exhibit 1**.

2.      I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration based on my participation in the prosecution and resolution of the Action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

**Summary of Work Performed**

3.      My firm's work in this matter involved investigating the cause and effects of Defendant PurFoods, LLC d/b/a Mom's Meals' Data Incident, interviewing potential clients, evaluating potential representative plaintiffs, contributing to the evaluation of the merits of the case before filing our initial complaint on behalf of Plaintiff Alexander; conducting legal research; and coordinating with the other Plaintiffs' counsel to self-organize the various actions. Me and my firm also played an integral role in getting defendant to agree to mediation, preparing for mediation (including engaging in informal pre-mediation discovery designed to fully inform us of the necessary facts to evaluate this case, and participating in the formal mediation. We then participated in the preparation and negotiation of the Settlement Agreement, the preliminary approval papers, and the necessary revisions thereto.

**Milberg's Lodestar and Expenses**

4.      All of the services performed by my firm were undertaken on a contingent fee basis, and we have not been compensated for any of this work to date. My firm took risks in litigating this matter under a complete contingency arrangement with no guarantee of any recovery whatsoever, and there was a substantial risk of no recovery at all given the threshold issues raised by Defendant and the uncertain nature of data breach class action litigation.

5.      Milberg's rates are reasonable, and set pursuant to the Laffey Matrix without deviation and have been recently approved by other courts in similar class action settlements. My firm's current hourly rates are as follows: $1141 to $878/hour for (partners); $948 to $581/hour for (associates); and $258/hour for (paralegals). These hourly rates are the current usual and customary rates set by my firm for each individual and used in all current litigation matters, as periodically adjusted according to market rates. The rates reflect what would be charged to a fee-

paying client in the private legal marketplace for complex litigation. The rates are also in line with the rates charged by other firms that handle complex cases and class actions.

6.    The fee rates of Milberg in complex class action cases have recently been approved by courts across the country, including in: *In re Onix Group Data Breach Litigation*, Case No. 23-2288-KSM (ED Pa. 12/13/2024, Doc. 57)(Judge Marston approving Lietz hourly rate and Milberg hourly rates); *In re: GE/CBPS Data Breach Litigation*, Case No. 1:20-cv-02903 (KPF) (S.D.N.Y. 3/28/2023, Doc. 123) (Judge Failla approving Milberg hourly rates); *Pagan v. Faneuil, Inc.*, Case No. 3:22-cv-297 (ED VA February 17. 2023, Doc. 53) (Judge Payne approving Milberg hourly rates); *Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (WD WI, July 22, 2022), Doc. 84) (Milberg fee application approved on a lodestar basis); *James v. Cohnreznick LLP*, Case Number: 1:21-cv-06544-LJL (SD NY September 20, 2022, Doc. 56 (approving Milberg fee application submitted on both percentage of benefit and lodestar calculation); *In re Deva Concepts Product Liability Litigation*, Case 1:20-cv-01234-GHW, Order Granting Motion for Attorneys' Fees, Doc. 129 (January 3, 2022); *see also* Doc. 121-1 (filed 10/01/21); *Lamie et al. v. LendingTree, LLC,* Case No. 3:22-cv-00307 (W.D. N.C. February 27, 2024, Doc. 60) (final approval order approving Milberg hourly rates as reasonable as part of a lodestar cross-check, and highlighting "the quality, skill, and experience of counsel" and "the excellent results"); *Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo. Doc. 76 (same); *Purvis, et al v. Aveanna Healthcare, LLC*, Case No. 1:20-cv-02277-LMM (N.D. Ga. October 2022, Doc. 79) (appointed class counsel; final approval granted) (same).

7.    My firm and I have general familiarity with the range of hourly rates typically charged by plaintiffs' class action counsel in data breach and complex consumer class actions throughout the United States, both on a current and historical basis. I believe that the rates charged

by Milberg in this Litigation are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise for legal services furnished in complex contingency class action litigation such as this.

8.      Milberg kept detailed records regarding the amount of time its attorneys spent on this Litigation, and the lodestar calculation is based on attorneys' current billing rates. The information was prepared from contemporaneous, daily time records regularly prepared and maintained by Milberg.

9.      Through August 31, 2025, my firm has expended 163.0 hours pursuing this Litigation on behalf of the Settlement Class.

10.     My firm's total lodestar through August 31, 2025 is $152,353.20. A summary of rates and hours expended are as follows:

]

| MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC | | | | |
|---|---|---|---|---|
| Professional | Years Experience | Hours | Rate($) | Billable ($) |
| Gary Klinger, Senior Partner | 15 | 66.5 | $948.00 | $63,042.00 |
| David Lietz, Senior Partner | 34 | 43.7 | $1,141.00 | $49,861.70 |
| John J. Nelson, Partner | 8 | 21.9 | $839.00 | $18,374.10 |
| CJ Cuneo, Associate | 14 | 13.0 | $948.00 | $12,324.00 |
| Dean Meyer, Associate | 4 | 10.4 | $581.00 | $ 6,042.40 |
| Sandra Passanisi, Paralegal | | 1.6 | $258.00 | $   412.80 |
| Ashley Tyrrell, Paralegal | | 7.1 | $258.00 | $ 1,831.80 |
| Heather Sheflin, Paralegal | | 1.8 | $258.00 | $   464.40 |
| **TOTAL** | | 163.0 | | $152,353.20 |

11.     In my opinion, this time was reasonable and necessary for the prosecution of this Litigation and my firm took meaningful steps to ensure the efficiency of our work.

12.     My firm expects to spend a significant amount of additional time on this case until it is fully resolved.

13.     In connection with the Litigation, Milberg also advanced costs and expenses.

14.     As of the date of this declaration, Milberg has incurred $3,093.75 in costs and expenses in connection with this Litigation. Below is a table categorizing these expenses:

| Category | Amount |
|---|---|
| Mediation (share of the mediator's services) | $3,093.75 |
| **Total** | $3,093.75 |

15.     The costs and expenses incurred in this Litigation are reflected on the books and records of Milberg. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the costs and expenses incurred. It is anticipated that costs may continue and expenses to accrue.

16.     The amount of expenses stated above does not include internal and other additional costs that my firm incurred in this Litigation but, in an exercise of discretion, do not seek to recover.

17.     Based on my experience prosecuting this case and overseeing the conduct of the Litigation, all of these expenses were necessary and reasonable and incurred in connection with the action.


I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on this 5th day of September, in Chicago, Illinois.

*/s/ Gary M. Klinger*
Gary M. Klinger

5

# **EXHIBIT 1**



**Gary M. Klinger** is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[1] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[2] He has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country.[3] Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data privacy space.[4]

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than fifty (50) class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Some of Mr. Klinger's representative cases include the following:

- Parris, et al., v. Meta Platforms, Inc., Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);
- Boone v. Snap, Inc., Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);
- In re: East Palestine Train Derailment, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action)
- Carrera Aguallo v. Kemper Corp., Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger obtained final approval of a class-wide settlement valued at $17.6 million for a major class action involving more than six million consumers);

---

[1] In 2024, only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.

[2] *See* https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[3] See, e.g., *Isiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JDE (C.D. Cal.) (where Mr. Klinger is co-lead counsel in a data breach involving more than 17 million consumers); In re MoveIt Customer Data Security Breach Litigation, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).

[4] *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

- Heath v. Insurance Technologies Corp., No. 21-cv-01444 (N.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $11 million);
- In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Mr. Klinger served lead counsel in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $20 million).

Mr. Klinger has also successfully litigated class actions through contested class certification. In *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id.* At the time, it was the largest litigation class ever to be certified for violations of the Telephone Consumer Protection Act. In a nationwide class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

Mr. Klinger is admitted to practice in the State of Illinois and the following federal courts: The U.S. District Court of Colorado, The U.S. District Court of Central District of Illinois, The U.S. District Court of Northern District of Illinois, The U.S. District Court of Southern District of Illinois, The U.S. District Court of Southern District of Indiana, The U.S. District Court of Eastern District of Michigan, The U.S. District Court of District of Nebraska, The U.S. District Court of Eastern District of Texas, and The U.S. District Court of Eastern District of Wisconsin.

Mr. Klinger received his undergraduate degree and juris doctorate (*cum laude*) from the University of Illinois.

Mr. Klinger is also a Certified Information Privacy Professional (CIPP/US) and a member of the International Association of Privacy Professionals.

# **EXHIBIT D**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

|  |  |
|---|---|
| MICHAEL DOUGLAS, DOROTHY GOODON, DOROTHY ALEXANDER, STELLA KERITSIS, JOHNNIE JONES, YOLANDA BETTS, LOGAN ALDRIDGE, STEVEN D'ANGELO, CHRISTINE ASHE, VERNITA FORD, and DIANE YOUNG, | No. 4:23-cv-00332-RGE-SBJ |
| Plaintiffs, | |
| v. | |
| PURFOODS, LLC, | |
| Defendant. | |

## DECLARATION OF NICKOLAS J. HAGMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

I, NICKOLAS J. HAGMAN, declare and state as follows:

1.    I am duly licensed to practice law in the State of Illinois.  I am counsel of record for Plaintiffs Michael Douglas and Dorothy Goodon in the above-captioned case (the "Litigation"). I am a partner at Cafferty Clobes Meriwether & Sprengel LLP and am experienced in data breach class actions and class actions in general. My firm resume is attached hereto as **Exhibit 1**.

2.    I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration based on my participation in the prosecution and resolution of the Action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

**Summary of Work Performed**

3.      My firm's work in this matter involved investigating the cause and effects of Defendant PurFoods, LLC d/b/a Mom's Meals' Data Incident, interviewing potential clients, evaluating potential representative plaintiffs, contributing to the evaluation of the merits of the case before filing our initial complaint on behalf of Plaintiffs; conducting legal research; and coordinating with the other Plaintiffs' counsel to self-organize the various actions; conducting substantial informal discovery regarding the Data Incident and the class size and makeup; engaging in arms-length settlement negotiations with Defendant's Counsel; participating in the Mediation and subsequent negotiations; drafting the Settlement Agreement and Plaintiffs' motion for preliminary approval; seeking competitive bids from potential settlement administrators; communicating with defense counsel; updating and handling questions from our Plaintiffs; and overseeing the notice to the Settlement Class and the ongoing claims process.

**Cafferty Clobes Meriwether & Sprengel LLP's Lodestar and Expenses**

4.      All of the services performed by my firm were undertaken on a contingent fee basis, and we have not been compensated for any of this work to date. My firm took risks in litigating this matter under a complete contingency arrangement with no guarantee of any recovery whatsoever, and there was a substantial risk of no recovery at all given the threshold issues raised by Defendant and the uncertain nature of data breach class action litigation.

5.      Cafferty Clobes Meriwether & Sprengel LLP's rates are reasonable and have been recently approved by other courts in similar class action settlements. My firm's current hourly rates are as follows: $900-$1,225/hour for (partners); $750-$800/hour for (associates); and $475.00/hour for (paralegals). These hourly rates are the current usual and customary rates set by my firm for each individual and used in all current litigation matters, as periodically adjusted

2

according to market rates. *See, e.g., In re TikTok Consumer Privacy Litig.*, No. 20-cv-4699 (N.D. Ill.), ECF No. 261 at 71-72 (opinion and order finally approving settlement and awarding attorneys' fees and expenses approving of Cafferty Clobes' rates); *Balfour et al. v. iFit Health and Fitness, Inc.*, No. 23-cv-67-CFC (D. Del.) (granting final approval to the class settlement on behalf of nearly 2.5 million class members, and approving Cafferty Clobes' hourly rates); *Woods et al v. Albany ENT & Allergy Services, Inc.*, No. 904730-23 (N.Y. Sup. Ct. Albany Cnty.) (grating final approval to the class settlement on behalf of victims of the data breach, appointing Cafferty Clobes co-lead class counsel, and awarding attorneys' fees and costs); *Hough v. Navistar, Inc.*, No. 2021L001161 (DuPage County Cir. Ct. May 16, 2022) (appointing Cafferty Clobes as Lead Counsel and awarding attorneys' fees and costs). The rates reflect what would be charged to a fee-paying client in the private legal marketplace for complex litigation. The rates are also in line with the rates charged by other firms that handle complex cases and class actions.

6.     My firm and I have general familiarity with the range of hourly rates typically charged by plaintiffs' class action counsel in data breach and complex consumer class actions throughout the United States, both on a current and historical basis. I believe that the rates charged by Cafferty Clobes Meriwether & Sprengel LLP in this Litigation are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise for legal services furnished in complex contingency class action litigation such as this.

7.     Cafferty Clobes Meriwether & Sprengel LLP kept detailed records regarding the amount of time its attorneys spent on this Litigation, and the lodestar calculation is based on attorneys' current billing rates. The information was prepared from contemporaneous, daily time records regularly prepared and maintained by Cafferty Clobes Meriwether & Sprengel LLP.

3

8.    Through July 31, 2025, my firm has expended 272.2 hours pursuing this Litigation on behalf of the Settlement Class.

9.    My firm's total lodestar through August 22, 2025, is $228,545.00. A summary of rates and hours expended are as follows:

| CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Total Hours** | **Rate** | **Total Lodestar** |
| Herrera, Daniel | Partner | 23.1 | $1,225.00 | $28,297.50 |
| Hagman, Nickolas | Partner | 115.3 | $900.00 | $103,770.00 |
| Lee, Alex | Associate | 118.1 | $750.00 | $88,575.00 |
| Rathur, Mohammed | Associate | 0.3 | $800.00 | $240.00 |
| Nyland, Sharon | Paralegal | 6.4 | $475.00 | $3,040.00 |
| McDonald, Kelly | Paralegal | 9.5 | $475.00 | $4,512.50 |
| Nichols, Lauren | Paralegal | 0.2 | $475.00 | $110.00 |
| | | | | |
| **TOTAL** | | 272.9 | | 228,545.00 |

10.    In my opinion, this time was reasonable and necessary for the prosecution of this Litigation and my firm took meaningful steps to ensure the efficiency of our work.

11.    My firm expects to spend a significant amount of additional time on this case until it is fully resolved.

12.    In connection with the Litigation, Cafferty Clobes Meriwether & Sprengel LLP also advanced costs and expenses.

13.    As of the date of this declaration, Cafferty Clobes Meriwether & Sprengel LLP has incurred $3,768.94 in costs and expenses in connection with this Litigation. Below is a table categorizing these expenses:

| Category | Amount |
|----------|--------|
| Mediation | $3,093.75 |
| Reproduction Costs – Inhouse | $5.75 |
| Postage - USPS | $30.45 |
| Computer Research | $608.99 |
| Electronic Agreements | $30.00 |
| **Total** | $3,768.94 |

14.     The costs and expenses incurred in this Litigation are reflected on the books and records of Cafferty Clobes Meriwether & Sprengel LLP. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the costs and expenses incurred. It is anticipated that costs may continue and expenses to accrue.

15.     The amount of expenses stated above does not include internal and other additional costs that my firm incurred in this Litigation but, in an exercise of discretion, do not seek to recover.

16.     Based on my experience prosecuting this case and overseeing the conduct of the Litigation, all of these expenses were necessary and reasonable and incurred in connection with the action.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on this 16th day of September, in Chicago, Illinois.

*/s/Nickolas J. Hagman*
Nickolas J. Hagman

# **EXHIBIT 1**





*Successful Solutions for Complex Litigation*

Cafferty Clobes
Meriwether & Sprengel LLP

# Firm Overview

Cafferty Clobes Meriwether & Sprengel LLP combines the talents of attorneys with a wide range of experience in complex civil litigation. The skill and experience of CCMS attorneys has been recognized on repeated occasions by courts that have appointed these attorneys to major positions in complex multidistrict or consolidated litigation. As the representative sampling of cases listed below demonstrates, these attorneys have taken a leading role in numerous important actions on behalf of investors, employees, consumers, businesses and others. In addition, CCMS attorneys are currently involved in a number of pending class actions, as described on the Firm's web page.

# Data Privacy Class Actions

- ***Hough v. Navistar, Inc.,*** **No. 21L1161 (Circ. Ct. DuPage Cnty., IL)**
  CCMS served as co-lead counsel in action arising out of a data breach of Navistar's computer systems that resulted in a settlement that provided $1.25 million to affected current and former employees, as well as significant non-monetary compensation.

- ***Rentschler et al. v. Atlantic General Hospital*** **(D. Md.)**
  CCMS appointed co-lead in class action rising out of a data breach at the Atlantic General Hospital which compromised private information belonging to 136,981 individuals. CCMS and co-lead counsel successfully negotiated a settlement that provided $2.25 million in monetary compensation for damages, identity theft protection services, and defendant's promise to implement cybersecurity changes.

- ***In re Kannact, Inc. Data Security Incident*** **(D. Or.)**
  CCMS appointed co-lead in class action arising out of a data breach incident at Kannact, Inc. which compromised private information belonging to 109,210 individuals. CCMS and co-lead successfully negotiated a $700,000 settlement that provided monetary compensation to victims, identity theft protection services, and guarantees of cybersecurity changes at Kannact.



- ***Mikulecky et al. v. Lutheran Social Services* (Cir. Ct. Cook Cty., IL)**
  CCMS worked as plaintiffs' counsel in class action arising from a data breach at Lutheran Social Services of Illinois, involving 184,183 victims, that was resolved through a $1.35 million settlement that provided monetary compensation to victims.

- ***Cornell v. Michigan Avenue Immediate Care* (N.D. Ill.)**
  CCMS served as plaintiffs' counsel in class action arising out of a data breach incident at Michigan Avenue Immediate Care, which involved 144,104 victims, and successfully negotiated a settlement that provided $850,000 in compensation to the victims.

- ***Sherma et al. v. Accutech Systems Corp.* (Cir. Ct. Delaware Cty., IN)**
  CCMS appointed co-lead counsel in class action arising out of a data breach incident at Accutech in which the private information of 106,078 individuals was exposed. CCMS and co-lead successfully negotiated a settlement through which Accutech agreed to compensate victims for up to $5,000 in losses resulting from the data breach and provide credit monitoring and identity theft services alongside implementing more robust cybersecurity measures.

- ***Woods et al. v. Albany ENT & Allergy Servs.* (Sup. Ct. Albany Cty, N.Y.)**
  CCMS appointed co-lead counsel in action arising out of breach of Albany ENT's computer systems in which the private information of 224,486 individuals was exposed. CCMS and co-lead successfully negotiated a settlement through which Albany ENT agreed to compensate victims for up to $7,500 in losses resulting from the data breach and provide credit monitoring and identity theft services alongside instituting more stringent cybersecurity measures.

- ***In re California Pizza Kitchen Data Breach* (C.D. Cal.)**
  CCMS appointed co-lead counsel in action arising out of cybersecurity incident at the California Pizza Kitchen in which the private information of 103,767 individuals was exposed. CCMS and co-lead successfully negotiated a settlement through which California Pizza Kitchen agreed to compensate victims for up to $5,000 in losses resulting from the data breach and provide credit monitoring and identity theft services as well as implementing major improvements to its cybersecurity measures.

Cafferty Clobes
Meriwether & Sprengel LLP

- ***Smith et al v. Hawaii Federal Credit Union* (1st Cir. Ct., HI)**
  CCMS appointed co-lead counsel in action arising out of cybersecurity incident at the Hawaii Federal Credit Union in which the private information of 21,411 individuals was exposed. CCMS and co-lead successfully negotiated a settlement through which the Hawaii Federal Credit Union agreed to compensate victims for up to $4,000 in losses resulting from the data breach and provide credit monitoring and identity theft services.

- ***Spencer et al v. Aloha Nursing Rehab Centre* (1st Cir. Ct., HI)**
  CCMS appointed co-lead counsel in action arising out of cybersecurity incident at the Aloha Nursing Rehab Center in which the private information of 20,599 individuals was exposed. CCMS and co-lead successfully negotiated a settlement through which Defendant agreed to compensate victims for up to $2,000 in losses resulting from the data breach and provide credit monitoring and identity theft services.

- ***Gates v. Western Washington Medical Group* (Dist. Ct. Snohomish Cty., WA)**
  CCMS appointed co-lead in class action arising out of data breach at the Western Washington Medical Group.

- ***Wilkins et al v. Mulkay Cardiology Consults.* (Sup. Ct. Bergen Cty., NJ)**
  CCMS appointed co-lead in class action arising out of data breach at Mulkay Cardiology Consultants.

- ***In Re Francesca's Acquisition LLC Data Security Breach Litigation* (S.D. Tex.)**
  CCMS appointed co-lead in class action arising out of data breach incident at Francesca's Acquisition LLC.

- ***Martemucci et al v. Peachtree Orthopaedic Clinic* (Sup. Ct. Forsyth Cty., GA)**
  CCMS appointed co-lead in class action arising out of data breach incident at the Peachtree Orthopaedic Clinic.

- ***In re MoveIt Customer Data Security Breach Litigation* (MDL 3083) (D. Mass.)**
  CCMS representing plaintiffs in the *MoveIt* MDL, which has been described as the largest data breach in history.



- ***Israel v. Medical Management Resource Group* (D. Ariz.)**
  CCMS representing plaintiff in class action arising from data breach incident at the Medical Management Resource Group.

- ***Bracy et al v. Americold Logistics, LLC* (D. Georgia)**
  CCMS representing plaintiff in class action arising from data breach incident at Americold Logistics, LLC.

- ***Clauson et al v. Arrowhead Regional Computing Consortium* (D. Minn.)**
  CCMS representing plaintiff in class action arising from data breach incident at the Arrowhead Regional Computing Consortium.

- ***Quaife et al v. Brady, Martz, & Associates, P.C.* (D. N.D.)**
  CCMS representing plaintiff in class action arising from data breach incident at Brady, Martz, and Associates.

- ***Stroup et al v. Cardiovascular Consultants* (Sup. Ct. Maricopa Cty., AZ)**
  CCMS representing plaintiffs in class action arising from data breach incident at the Cardiovascular Consultants.

- ***Cahill et al v. Memorial Heart Institute, LLC* (E.D. Tenn.)**
  CCMS representing plaintiff in class action arising from data breach incident at the Memorial Heart Institute.

- ***In re: Clarke County Hospital* (Dist. Ct. Clarke Cty., IA)**
  CCMS representing plaintiffs in class action arising from data breach incident at the Clarke County Hospital.

- ***Francis v. Continuum Health Alliance* (D. N.J.)**
  CCMS representing plaintiff in class action arising from data breach incident at Continuum Health Alliance.

- ***Cortrecht v. DePauw University* (Cir. Ct. Putnam Cty., IN)**
  CCMS representing plaintiffs in class action arising from data breach incident at DePauw University.

- ***Rogers et al v. Des Moines Orthopaedic Surgeons* (Dist. Ct. Dallas City., IA)**
  CCMS representing plaintiff in class action arising from data breach incident at the Des Moines Orthopaedic Surgeons.



- ***Powers et al. Eastern Radiologists, Inc.* (E.D.N.C.)**
  CCMS representing plaintiff in class action arising from data breach incident at Eastern Radiologists.

- ***In re Emmanuel College Data Security Incident* (D. Mass.)**
  CCMS representing plaintiff in class action arising from data breach incident at Emmanuel College.

- ***Martinez v. Earnest Health, Inc.* (N.D. Tex.)**
  CCMS representing plaintiff in class action arising from data breach incident at Earnest Health.

- ***Jenich et al v. Group Health Cooperative of South Central Wisconsin* (W.D. Wis.)**
  CCMS representing plaintiffs in class action arising from data breach incident at the Group Health Cooperative of South Central Wisconsin.

- ***Hood v. Educational Computer Systems, Inc.* (W.D. Penn.)**
  CCMS representing plaintiff in class action arising from data breach incident at the Educational Computer Systems, Inc.

- ***Matney v. Kansas Joint & Spine Specialists* (D. Kan.)**
  CCMS representing plaintiff in class action arising from data breach incident at Kansas Joint & Spine Specialists.

- ***In re Keenan & Associates Data Breach* (C.D. Cal.)**
  CCMS representing plaintiff in class action arising from data breach incident at Keenan & Associates.

- ***Unsworth v. Lewis and Clark College* (D. Or.)**
  CCMS representing plaintiff in class action arising from data breach incident at Lewis & Clark College.

- ***In re McPherson Hospital Data Security Litigation* (Dist. Ct. McPherson Cty., KS)**
  CCMS representing plaintiffs in class action arising from data breach incident at the McPherson Hospital.



- ***In re Purfoods, Inc. Data Security Litigation*** **(S.D. Iowa)**
  CCMS representing plaintiffs in class action arising from data breach incident at Purfoods/Mom's Meals.

- ***In re Morrison Community Hospital Data Breach*** **(Cir. Ct. Whiteside Cty., IL)**
  CCMS representing plaintiffs in class action arising from data breach incident at the Morrison Community Hospital.

- ***In re Mount Desert Island Hospital Data Security Incident Litigation*** **(Cumberland Cty. Sta. Ct., ME)**
  CCMS representing plaintiff in class action arising from data breach incident at the Mount Desert Island Hospital.

- ***Oche v. National Math and Science Initiative*** **(Sup. Ct. Kings Cty., NY)**
  CCMS representing plaintiff in class action arising from data breach incident at the National Math and Science Center.

- ***Corbett v. Northeast Orthopedics and Sports Medicine*** **(Sup. Ct. Rockland Cty., NY)**
  CCMS representing plaintiffs in class action arising from data breach incident at Northeast Orthopedics and Sports Medicine.

- ***Salerno v. OrthoConnecticut*** **(Sup. Ct. Fairfield Dist., CT)**
  CCMS representing plaintiff in class action arising from data breach incident at OrthoConnecticut.

- ***Fields v. Otolaryngology Associates*** **(Cir. Ct. Hamilton Cty., IN)**
  CCMS representing plaintiff in class action arising from data breach incident at Otolaryngology Associates.

- ***Hardy v. Pacific Guardian Life Insurance Co.*** **(D. Haw.)**
  CCMS representing plaintiff in class action arising from data breach incident at the Pacific Guardian Life Insurance Company.

- ***Henderson et al v. Reventics et al*** **(D. Colo.)**
  CCMS representing plaintiff in class action arising from data breach incident at Reventics.

Cafferty Clobes
Meriwether & Sprengel LLP

# Antitrust Class Actions and Commodities Litigation

- **In re Cattle Antitrust Litig., No. 19-cv-01222 (D. Minn.)**
  CCMS is serving as Co-Lead counsel on behalf of a proposed class of cattle ranchers and industry trade groups alleging that some of the country's largest meatpacking companies, including Tyson, Cargill, JBS, and National Beef, have colluded to suppress the prices paid for cattle used in beef production. As discussed in a recent National Law Journal article, a successful outcome in this matter would ensure that cattle ranchers are paid what they deserve for their labor in raising live-fed cattle and bringing them to market. CCMS and its co-counsel recent settled the class's claims against the JBS defendants for $83.5 million and meaningful cooperation in plaintiffs' ongoing litigation against the remaining defendants—Cargill, National Beef and Tyson.

- **In re Deutsche Bank Spoofing Litig., No. 20-cv-03638 (N.D. Ill.).**
  CCMS serves on the executive committee in this case involving alleged manipulation through spoofing of Treasury and Eurodollar Futures.

- **In re Libor-Based Financial Instruments, No. 11-md-2262 (S.D.N.Y)**
  CCMS served as class counsel for exchange trader plaintiffs in claims involving manipulation in violation of the Commodity Exchange Act against many of the world's largest financial institutions.

- **Hershey/Kohen v. Pacific Investment Management Co. LLC, No. 05 C 4681 (N.D. Ill.)**
  As liaison and class counsel in action arising from PIMCO's manipulation of 10-year treasury notes futures traded on the Chicago Board of Trade, CCMS helped secure a $118 million settlement for the class.

- **In re Crude Oil Commodity Futures Litig., No. 11-cv-03600 (S.D.N.Y.)**
  As class counsel in action arising from manipulation of NYMEX West Texas Intermediate grade crude oil futures contracts, CCMS expended significant resources assisting the class with investigation and discovery. The collective efforts resulted in a $16.5 million settlement for the class.

- **In re Foreign Exchange Benchmark Rates Antitrust Litig., 13-cv-7789 (S.D.N.Y.)**

**Cafferty Clobes Meriwether & Sprengel** LLP

As class counsel in this action arising from manipulation of foreign exchange rates by international banks and others, CCMS has devoted significant resources toward investigation, discovery, and allocation of more than $2 billion in settlements for the class.

- ***In re Sumitomo Copper Litig.***, **96 Civ. 4584(MP) (S.D.N.Y.)**
  As class counsel in action arising out of manipulation of the world copper market, CCMS helped achieve settlements aggregating $134.6 million. In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act." 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999).

- ***In re Soybean Futures Litig.**,* **No. 89 C 7009 (N.D. Ill.)**
  As class counsel in this action against Ferruzzi Finanziaria SpA and related companies for unlawfully manipulating the soybean futures market, CCMS helped recover a $21.5 million settlement.

- ***Lawrence E. Jaffe Pension Plan v. Household International, Inc.**,* **No. 1:02-cv-05893 (N.D. Ill.)**
  Securities fraud class action. CCMS served as local counsel and helped recover a settlement of approximately $1.6 billion.

- ***Danis v. USN Communications, Inc.,*** **No. 98 C 7482 (N.D. Ill.)**
  Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc. On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

- ***In re Insurance Brokerage Antitrust Litig.,*** **MDL No. 1663 (D.N.J.)**
  CCMS served as Co-Lead Counsel for plaintiffs in this class case alleging that insurance brokers and insurers conspired to allocate customers in a complicated scheme to maximize their own revenues at the expense of class members. The litigation concluded in 2013 with final approval of the last of five separate settlements that, in total, exceeded $270 million. Judge Cecchi observed that "Class counsel include notably skilled attorneys with experience in antitrust, class actions and RICO litigation." *In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 153 (D.N.J 2013); *see also In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 1652303, at *6 (D.N.J. June 5, 2007).

Cafferty Clobes
Meriwether & Sprengel LLP

- ***VisaCheck/MasterMoney Antitrust Litig.,*** **Master File No. 96-5238 (E.D.N.Y.)**
  CCMS's client, Burlington Coat Factory Warehouse, and the other plaintiffs, alleged that Visa and MasterCard violated the antitrust laws by forcing retailers to accept all of their branded cards as a condition of acceptance of their credit cards.  The parties entered into settlement agreements that collectively provided for the payment of over $3.3 billion, plus widespread reforms and injunctive relief.

- ***In Re VisaCheck/MasterMoney Antitrust Litig.,*** **Master File No. 96-5238 (E.D.N.Y.)**
  CCMS's client, Burlington Coat Factory Warehouse, and the other plaintiffs, alleged that Visa and MasterCard violated the antitrust laws by forcing retailers to accept all of their branded cards as a condition of acceptance of their credit cards.  The parties entered into settlement agreements that collectively provided for the payment of over $3.3 billion, plus widespread reforms and injunctive relief.

- ***In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.,*** **No. 4:14-md-02541 (N.D. Cal.)**
  CCMS represented a former Division 1 college basketball player in this antitrust litigation challenging the cap imposed by the NCAA on grant-in-aid packages.  The efforts of the firm and its co-counsel resulted in certification of an injunctive class and a settlement of $209 million.

- ***Kamakahi v. American Society for Reproductive Medicine***, **No. 3:11-cv-01781 (N.D. Cal.)**
  CCMS served as Co-Lead Counsel in a cutting edge antitrust case challenging the legality of ethical guidelines promulgated by two professional associations that limited the compensation members were permitted to pay to women providing donor services for in-vitro fertilization. Without the benefit of a parallel government case or investigation, CCMS achieved a groundbreaking settlement that required defendants to eliminate the compensation caps and to refrain from imposing similar caps in the future.

- ***In re New Motor Vehicles Canadian Export Antitrust Litig.,*** **MDL No. 1532 (D. Me.)**
  CCMS served as Class Counsel in multidistrict litigation alleging that automobile manufacturers and other parties conspired to prevent lower



priced new motor vehicles from entering the American market thereby artificially inflating prices. The court approved a $37 million settlement with Toyota and the Canadian Automobile Dealers' Association.

- ***In re TriCor Indirect Purchaser Antitrust Litig.,*** **No. 05-360 (D. Del)**
  CCMS served as Lead Counsel for consumer and third-party payor plaintiffs who alleged that defendants engaged in unlawful monopolization in the market for fenofibrate products, which is used to treat high cholesterol and high triglyceride levels. The court approved to a $65.7 million settlement (an amount that excludes an initial payment to opt-out insurance companies).

- ***In re Prandin Direct Purchaser Antitrust Litig.,*** **Civ. No. 10-12141 (E.D. Mich.)**
  CCMS served as Co-Lead counsel for a plaintiff class of direct purchasers of the prescription drug repaglinide, which is manufactured and marketed by Novo Nordisk under the brand-name Prandin. Plaintiffs alleged that Novo Nordisk blocked FDA approval of generic versions of the drug by wrongfully manipulating the language of the "use code" filed with the FDA in connection with a method of use patent. The court approved a $19 million settlement.

- ***In re Disposable Contact Lens Antitrust Litigation***, **MDL No. 2626 (M.D. Fla.)**
  CCMS served on the Defendant Discovery Committee, which was tasked with overseeing all aspects of discovery pertaining to Defendants, who are alleged to have conspired to implement retail price maintenance agreements intended to inflate the prices of disposable contact lenses to supracompetitive levels. The district court certified several horizontal and vertical nationwide antitrust classes, and settlements recovering $118 million for consumers were reached.

- ***In re Automotive Parts Antitrust Litig.,*** **MDL No. 2311 (E.D. Mich.)**
  CCMS has served as a member of Plaintiffs' Executive Committee representing the end-payor class in one of the largest civil antitrust actions in US history. As a member of the Executive Committee, CCMS has played an important role in this groundbreaking litigation in which plaintiffs have recovered over $1 billion on behalf of end-payor consumers and businesses who allege they purchased or leased new automobiles at prices that were



artificially inflated as a result of automotive component manufacturers' anticompetitive conduct.

- ***Nichols v. SmithKline Beecham Corp.,*** **No. Civ.A.00-6222 (E.D. Pa.)**
  CCMS served as Co-Lead Counsel for consumers and third-party payors who alleged that the manufacturer of the brand-name antidepressant Paxil misled the U.S. Patent Office into issuing patents that protected Paxil from competition from generic substitutes.  The court approved a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil.

- ***In re Relafen Antitrust Litig.*** **No. 01-12239 (D. Mass.)**
  The court approved a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen.  In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates.  *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004).  In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.*, experience, competence, and vigor] in every way."  *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel.").

- ***In re Warfarin Sodium Antitrust Litig.,*** **MDL 98-1232 (D. Del.)**
  Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company.  Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium.  The Court approved a $44.5 million settlement.

- ***In re Cardizem CD Antitrust Litig.,*** **MDL No. 1278 (E.D. Mich.)**
  Multidistrict class action on behalf of purchasers of Cardizem CD, a brand-name heart medication.  Plaintiffs alleged that an agreement between the brand manufacturer and a generic manufacturer unlawfully stalled generic competition.  The court approved an $80 million settlement for the benefit of consumers, third-party payors and state attorneys general.



- ***In re Synthroid Marketing Litig.,* MDL No. 1182 (N.D. III)**
  This multidistrict action arose out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. The court approved a consumer settlement in the amount of $87.4 million.

# Consumer Class Actions

- ***Nielsen v. Walt Disney Parks and Resorts, Inc.,* No. 21-cv-2055 (C.D. Cal.)**
  CCMS served appointed as co-lead Class Counsel in an action brought on behalf of consumers who purchased certain annual passes for Disney's California theme parks, but were not able to use the passes as advertised. The efforts of the firm and co-lead counsel resulted in a $9.5 million settlement to reimburse individuals who purchased the passes.

- ***Skeen v. BMW of N. Amer., LLC,* No. 13-cv-1531 (D.N.J.)**
  CCMS served as co-lead counsel in an action brought on behalf of owners of certain MINI Cooper vehicles that contained a latent defect in the engine that caused premature failure. Following discovery and mediation, the parties reached a settlement on behalf of vehicle owners nationwide. The efforts of the firm and co-lead counsel resulted in a settlement to significantly extend warranties, and reimburse vehicle owners for tens of millions of dollars in out-of-pocket expenses for repair and/or replacement.

- ***Ponzo v. Watts Regulator Company,* No. 1:14-cv-14080 (D. Mass.);**
  ***Klug v. Watts Regulator Company,* No. 15-cv-00061 (D. Neb.)**
  These consumer class cases, first brought by CCMS (D. Mass.) addressed defective water heater and "Floodsafe" branded connectors. Plaintiffs alleged that the water heater connectors were made of a material that would break down during regular use, causing leaks and ruptures that flooded class members' homes. The efforts of the firm and its co-lead counsel resulted in a settlement that provides $14 million to affected homeowners.

- ***Barrett v. Apple Inc., et al.,* No. 5:20-cv-04812 (N.D. Cal.)**
  CCMS investigated, originated and filed the first consumer class action seeking a remedy for consumers who were tricked by scammers into purchasing Apple gift cards. The firm and its co-lead counsel resulted in a $35 million settlement for victims of these scams.



- ***Bromley v. SXSW LLC,*** **No. 20-cv-439 (W.D. Tex.)**
  CCMS served as co-lead counsel, and secured an uncapped settlement entitling class members to refunds in connection with a canceled festival.

- ***Traxler v. PPG Industries, Inc.,*** **No. 15-cv-00912 (N.D. Ohio)**
  CCMS served as lead counsel in this action challenging defective deck resurfacing products, that peeled, cracked, and damaged the surfaces to which they were applied. The parties reached a settlement on behalf of a nationwide class that provides $6.5 million to homeowners.

- ***In re Apple iPhone/iPod Warranty Litig.,*** **No. 3:10-cv-01610 (N.D. Cal.)**
  Challenging Apple's policy of denying warranty claims based on liquid contact indicators located in headphone jacks and dock connector ports of iPhones and iPod touches. Similar class actions were subsequently filed in federal courts on behalf of Apple consumers.  CCMS helped negotiate and achieve a $53 million settlement of the state and federal cases.

- ***In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prod. Liability Litig.,*** **MDL No. 2672 (N.D. Cal.)**
  CCMS worked closely with lead counsel and other class counsel in this class case challenging unlawful actions by the manufacturer defendants to mask the actual diesel emission levels in various vehicle makes and models.  Judge Breyer approved a class settlement with defendants worth billions of dollars.

- ***In re Takata Airbag Prod. Liability Litig.,*** **MDL No. 2599 (S.D. Fla.)**
  CCMS represents six named Class Plaintiffs and has been and continues to work closely with lead counsel on this multi-billion dollar case involving defective airbags installed in tens of millions of affected vehicles manufactured by most major manufacturers.  Class settlements with Honda and BMW providing class members with hundreds of millions of dollars and substantial programmatic relief have been finally approved and are the subject of pending appeals.

- ***In re General Motors Corp. Air Conditioning Marketing and Sales Practices Litig.,*** **MDL No. 2818 (E.D. Mich.)**
  CCMS filed the first class action seeking relief on behalf of owners of GM vehicles suffering from a defect in the air conditioning system results in total system failure, necessitating significant repairs. On April 11, 2018, the Court appointed CCMS co-lead counsel.

- ***Squires et al., v. Toyota Motor Corp., et al.,* No. 18-cv-00138 (E.D. Tex.)**
  CCMS investigated, originated and filed the first and only consumer class action brought on behalf of owners of multi-model year Toyota Prius vehicles that suffer from a defect that causes windshields to crack and fail in ordinary and foreseeable driving conditions.

- ***Gonzalez, et al., v. Mazda Motor Corp.*, et al., No. 16-cv-2087 (N.D. Cal.)**
  CCMS is lead counsel in a consumer class action brought on behalf of owners of Model Year 2010-15 Mazda3 vehicles with defective clutch assemblies that cause them to prematurely fail. Plaintiffs allege that Defendants have breached express and implied warranties, and have violated the consumer protection statutes of various states.

- ***Albright v. The Sherwin-Williams Co.*, No. 17-cv-02513 (N.D. Ohio)**
  CCMS is serving as Co-Lead Counsel in this class action concerning deck resurfacing products sold under the Duckback and SuperDeck brand names. Plaintiffs allege defendants have breached express and implied warranties, and violated the consumer protection statutes of various states.

- ***Anderson v. Behr Process Corp.,* No. 1:17-cv-08735 (N.D. Ill.)**
  CCMS is serving as Co-Lead Counsel in this class action brought on behalf of purchasers of various deck coating products from 2012 through the present.  After months of mediation and negotiations, and successfully opposing efforts by other plaintiffs and firms to have the JPML centralize pending cases, the parties have agreed to a proposed Class settlement which will provide substantial valuable monetary relief to Class members to refund the cost of product purchased as well as compensate them for damage to their decks and the costs of restoring and repairing the same.

- ***Bergman v. DAP Products, Inc*., No. 14-cv-03205 (D. Md.)**
  CCMS served as lead counsel in this class action on behalf of consumers who purchased various models of "XHose" garden hoses, which were flexible outdoor hoses that were predisposed to leaking, bursting, seeping, and dripping due to design defects.  The court approved a nationwide settlement providing hundreds of thousands of consumer class members with the opportunity to recover a substantial portion of their damages.



- ***In re Midway Moving & Storage, Inc.'s Charges to Residential Customers,*** **No. 03 CH 16091 (Cir. Ct. Cook Cty., Il**.)
  A class action on behalf of customers of Illinois' largest moving company. A litigation class was certified and upheld on appeal. *Ramirez v. Midway Moving and Storage, Inc.*, 880 N.E.2d 653 (Ill. App. 2007). The case settled on a class-wide basis.  The court stated that CCMS is "highly experienced in complex and class action litigation, vigorously prosecuted the Class' claims, and achieved an excellent Settlement for the Class under which Class members will receive 100% of their alleged damages."

- ***Walter Cwietniewicz d/b/a Ellis Pharmacy, et al. v. Aetna U.S. Healthcare***, **June Term, 1998, No. 423 (Pa. Common Pleas)**
  On May 25, 2006, the court granted final approval to a settlement of a class action brought on behalf of pharmacies that participated in U.S. Healthcare's capitation program seeking to recover certain required semi-annual payments.  At the final approval hearing, the court found that "this particular case was as hard-fought as any that I have participated in" and with respect to the Class's reaction to the settlement achieved as a result of our firm's work: ". . . a good job, and the reason there should be  no objection, they should be very very happy with what you have done."

- ***Davitt v. American Honda Motor Co., Inc.,*** **No. 13-cv-381 (D.N.J.)**
  CCMS served as plaintiffs' counsel in a class action on behalf of owners of 2007-09 Honda CRV vehicles that suffered from a defect that predisposed the door-locking mechanisms to premature failure. Following extensive dismissal briefing, discovery and mediation, the parties reached a global settlement that provided class members with extended warranty coverage and reimbursement of out-of-pocket expenses.

- ***Sabol v. Ford Motor Company,*** **No. 2:14-cv-06654 (E.D. Pa.)**
  CCMS served as Lead Counsel in this class case on behalf of owners of various model 2010-2015 Ford, Volvo and Land Rover vehicles allegedly including a defect in certain Ecoboost engines. Defendant claimed it addressed and repaired the problem through a series of recalls and repairs. After briefing summary judgment and class certification, and several years of hard fought litigation, including substantial discovery, the parties entered into a settlement providing substantial monetary and other relief.



- ***Lax v. Toyota Motor Corp.,* No. 14-cv-1490 (N.D. Cal.)**
  CCMS served as class counsel in an action brought on behalf of owners of certain Toyota-brand vehicles that contained a defect that caused vehicles to consume oil at accelerated rates, often resulting in catastrophic engine failure.  Following extensive discovery and mediation, the parties reached a private settlement following Toyota's implementation of an extended warranty and reimbursement program for affected vehicles.  ECF No. 82.

Cafferty Clobes
Meriwether & Sprengel LLP

# Individual Biographies

## PARTNERS



**PATRICK E. CAFFERTY** graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University College of Law in 1983. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court. Mr. Cafferty is an experienced litigator in matters involving antitrust, securities, commodities, and the pharmaceutical industry. In 2002, Mr. Cafferty was a speaker at a forum in Washington D.C. sponsored by Families USA and Blue Cross/Blue Shield styled "Making the Drug Industry Play Fair." At the Health Action 2003 Conference in Washington D.C., Mr. Cafferty was a presenter at a workshop titled "Consumers' Access to Generic Drugs: How Brand Manufacturers Can Derail Generic Drugs and How to Make Them Stay on Track." In 2010, Mr. Cafferty made a presentation on indirect purchaser class actions at the American Antitrust Institute's annual antitrust enforcement conference. *See Indirect Class Action Settlements* (Am. Antitrust Inst., Working Paper No. 10-03, 2010). Mr. Cafferty is admitted to the state bars of Michigan and Illinois, and holds several federal district and appellate court admissions. Mr. Cafferty has attained the highest rating, AV®, from Martindale-Hubbell and is a top rated SuperLawyer®.



**BRYAN L. CLOBES** is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland. Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit, Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey, and Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore. From 1989 through June, 1992, Mr. Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes has served as lead counsel in many of the firm's class cases covering all areas of the firm's practice, and is widely recognized as an expert in class action litigation. Mr. Clobes has authored briefs filed with the Supreme Court in

**Cafferty Clobes Meriwether & Sprengel LLP**

a number of class cases, served as a panelist for class action, consumer and antitrust CLE programs, has sustained and maintained the highest rating, AV®, from Martindale-Hubbell, and has been named a "Super Lawyer" for the past twelve years.  Mr. Clobes is admitted to the bar in New Jersey and Pennsylvania, and admitted to practice in several federal district and appellate court admissions.



**DANIEL O. HERRERA** received his law degree, *magna cum laude*, and his MBA, with a concentration in finance, from the University of Illinois at Urbana-Champaign in 2008.  Mr. Herrera received his bachelor's degree in economics from Northwestern University in 2004.  Mr. Herrera joined CCMS as an associate in 2011 and is resident in its Chicago, Illinois Office.  Since joining CCMS, Mr. Herrera has successfully prosecuted a wide range of antitrust, consumer and commodities class action. Mr. Herrera leads the firm's Consumer Class Action and Data Privacy practices, but also is active in the firm's antitrust matters, leading its ongoing efforts in *In re Cattle and Beef Antitrust Litigation* and *In re Apartment Rental Software Antitrust Litig. No. 23-md-3071 (M.D. Tenn.)*. Prior to joining CCMS, Mr. Herrera was an associate in the trial practice of Mayer Brown LLP, a Chicago-based national law firm, where he defended corporations in securities and antitrust class actions, as well as SEC and DOJ investigations and enforcement actions.  Mr. Herrera, a first generation Cuban-American, is licensed to practice in Illinois, holds several federal district and appellate court admissions, and is an active member of the Hispanic Bar Association.



**ELLEN MERIWETHER** received her law degree from George Washington University, *magna cum laude*, in 1985.  She was a member of the *George Washington Law Review* and was elected to the Order of the Coif.  Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981.   Ms. Meriwether is on the Board of Directors of the American Antitrust Institute (AAI), is Editorial Board Co-Chair of ANTITRUST, a publication by the section of Antitrust Law of the American Bar Association and serves as Vice-Chair of the Board of Directors of the Public Interest Law Center, in Philadelphia.  Since 2010, Ms. Meriwether has been included in the US News and World Report Publication of "Best Lawyers in America" in the field of Antitrust.

She has been named a "Pennsylvania Super Lawyer" since 2005 and has attained the highest rating, "AV", from Martindale-Hubbell. She is a frequent presenter on topics relating to complex, class action and antitrust litigation and has published a number of articles on subjects relating to class actions and antitrust litigation, including, among others: "The Fiftieth Anniversary of Rule 23: Are Class Actions on the Precipice?," *Antitrust,* (Vol. 30, No. 2, Spring 2016); "Motorola Mobility and the FTAIA: If Not Here, Then Where?," *Antitrust*, Vo. 29, No.2 Spring 2015); *"Comcast Corp. v. Behrend:* Game Changing or Business as Usual?," *Antitrust*, (Vol. 27, No. 3, Summer 2013). Links to these articles and others authored by Ms. Meriwether can be found on the firm's website. Ms. Meriwether is admitted to the bar of Supreme Court of Pennsylvania and is admitted in a number of federal district court and appellate court jurisdictions.



**NYRAN ROSE RASCHE** received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, was awarded a graduate teaching fellowship for law school, and earned her law degree from the University of Oregon School of Law in 1999. Following law school, Ms. Rasche served as a law clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court. She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998) and *Market Allocation through Contingent Commission Agreements: Strategy and Results in In re Insurance Brokerage Antitrust Litigation* (with Ellen Meriwether), The Exchange: Insurance and Financial Services Developments (Spring 2015). Since joining CCMS, Ms. Rasche has successfully prosecuted a wide range of antitrust, consumer class, securities and commodities class actions. Ms. Rasche has been admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the Northern District of Illinois, the Southern District of Illinois, and the District of Colorado. She is also a member of the American and Chicago Bar Associations.

www.caffertyclobes.com

Cafferty Clobes Meriwether & Sprengel LLP



**JENNIFER WINTER SPRENGEL** received her law degree from DePaul University College of Law, where she was a member of the DePaul University Law Review. Her undergraduate degree was conferred by Purdue University.  Ms. Sprengel is an experienced litigator in matters involving commodities, antitrust, insurance and the financial industries.  In addition, Ms. Sprengel is a committee member of the Seventh Circuit Electronic eDiscovery Pilot Program and is a frequent speaker regarding issues of discovery.  Links to some of her presentations and articles can be found on the firm's website.  She also serves as co-chair of the Antitrust Law subcommittee of the ABA Class Action and Derivative Suits committee.  She is admitted to practice law in Illinois, holds several federal district and appellate court admissions, and has attained the highest rating, AV®, from Martindale-Hubbell.  Ms. Sprengel serves as the managing partner of the Firm.



**NICKOLAS J. HAGMAN** received his undergraduate degree, *magna cum laude*, from the University of Minnesota in 2008.  Mr. Hagman earned his law degree from Marquette University Law School, *cum laude*, in 2013, with a Certificate in Litigation.  During law school, Mr. Hagman served as an associate editor of the Marquette Law Review, was a member of the Pro Bono Society, and worked as an intern for the late Wisconsin Supreme Court Justice N. Patrick Crooks, and current Wisconsin Supreme Court Justice Rebecca Dallet.  Following law school, Mr. Hagman served as a judicial clerk in the Milwaukee County Circuit Court for two years.  Prior to joining CCMS in 2019, Mr. Hagman was an associate at a plaintiff-side consumer class action firm for five years.  Mr. Hagman is licensed to practice in Illinois and Wisconsin, and before the United State District Courts for the Northern District of Illinois, the Eastern District of Wisconsin, and the District of Colorado.  Mr. Hagman authored the 2024 Edition of the IICLE Class Actions handbook chapter: *Settlement Procedures, Negotiations, and Agreements Under State and Federal Rules*, CLASS ACTIONS (IICLE, 2024). He is also a member of the Wisconsin Bar Association and Chicago Bar Association, where he is a member of the Class Action and Consumer Committees.

## ASSOCIATES



**KAITLIN NAUGHTON** received her law degree from the George Washington University Law School in 2019, where she served as managing editor for the *George Washington Journal of Energy & Environmental Law*. Ms. Naughton earned her bachelor's degree in political science and sociology with distinction from Purdue University in 2015. Ms. Naughton joined CCMS in 2019 and is resident in its Chicago, Illinois office. She is licensed to practice in Illinois and before the United State District Court for the Northern District of Illinois.



**ALEX LEE** graduated *cum laude* from the University of Illinois College of Law in 2020. While at law school, he was a staff writer for the *Illinois Business Law Journal* and served in the Illinois Innocence Project where he worked to investigate and exonerate wrongfully convicted individuals in Illinois. Mr. Lee received his BA in political science from Boston College in 2017. While at university, Mr. Lee worked in special needs education for three years. Alex Lee joined Cafferty Clobes Meriwether Sprengel's Chicago office as an associate attorney in 2023. Prior to joining Cafferty Clobes, Mr. Lee worked at several law firms in Chicago and Champaign and worked on cases in consumer law, employment law, civil rights, commercial litigation, and complex litigation.



**Mohammed A. Rathur** is an Associate at Cafferty Clobes Meriwether & Sprengel LLP's Chicago office. Prior to joining Cafferty Clobes, Mr. Rathur worked at a boutique class action law firm specializing in employment and data privacy rights. Mr. Rathur's prior experience includes serving as a judicial law clerk in the Chancery Division of the Circuit Court of Cook County for two years. Mr. Rathur earned his law degree from the American University Washington College of Law in 2019,

where he served as a Student Attorney for the International Human Rights Law Clinic. Mr. Rathur graduated from Michigan State University with a B.A. in International Relations.



**KRISHNA MOTTA** is an Associate at Cafferty Clobes Meriwether & Sprengel LLP. Mr. Motta joined Cafferty Clobes after earning his J.D. from the University of Pennsylvania Law School in 2024, where he served as a Certified Legal Intern for the Civil Practice Clinic. Mr. Motta graduated from the University of Michigan in with a B.A. in Political Science.



**NABIHAH MAQBOOL** is an Associate at Cafferty Clobes Meriwether & Sprengel LLP. Ms. Maqbool has experience leading matters in state and federal courts at every stage of litigation. Prior to joining Cafferty Clobes she was an associate at boutique litigation firms in Washington D.C. and Chicago, with cases ranging from complex commercial and arbitral matters, civil rights, plaintiff-side employment disputes, to serving as outside counsel for non -profit organizations. Ms. Maqbool began her career as a litigation fellow and as a staff attorney at national impact litigation organizations focused on vindicating plaintiffs' constitutional rights. Ms. Maqbool earned her law degree from the University of Chicago in 2018, where she received the Thomas R. Mulroy Prize for Excellence in Appellate Advocacy and Oral Argument, the Edwin F. Mandel Award for Exceptional Contributions to the Law School Clinical Education Program, and with pro bono honors. Ms. Maqbool graduated from the University of Missouri Honors College with a Bachelor of Science in Biological Sciences, a Bachelor of Arts in Political Science, and a Master of Public Health with Delta Omega Honors. Ms. Maqbool is licensed to practice in New York, and before the United States District Courts for the Northern, Central, and Southern Districts of Illinois.

## Of Counsel



**CHRISTOPHER P. DOLOTOSKY** joined Cafferty Clobes Meriwether & Sprengel LLP as Of Counsel in 2024. He is a commercial litigation attorney with 20 years' experience in working on a variety of complex legal cases. He has participated in trials and conducted depositions in several cases. He is involved with the firm's antitrust practice. Prior to joining to our firm, he worked for several law firms and boutique firms in the Philadelphia area. Mr. Dolotosky received his law degree from the Villanova University School of Law in 2001 where he was a Board Member of the *Villanova Law Review*. He obtained his bachelor's degree in political science from the University of Delaware in 1998 where he was a member of *Phi Beta Kappa*.  Mr. Dolotosky is licensed to practice in Pennsylvania and New Jersey. He is admitted to practice before the U.S. District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

## SENIOR COUNSEL



**DOM J. RIZZI** received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*.  From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more than 100 appeals.  On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court.  After serving as circuit court judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from 1978 to 1996. Judge Rizzi became counsel to the firm in October 1996.



## Staff Attorney



**Andrew Morris** joined Cafferty Clobes Meriwether & Sprengel LLP in 2021. His experience includes a broad range of litigation matters. He graduated from Widener University School of Law in Delaware, cum laude in 2006. Mr. Morris is admitted to practice in Pennsylvania.