**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

MICHAEL DOUGLAS, DOROTHY
GOODON, DOROTHY ALEXANDER,
STELLA KERITSIS, JOHNNIE JONES,
YOLANDA BETTS, LOGAN ALDRIDGE,
STEVEN D'ANGELO, CHRISTINE ASHE,
VERNITA FORD, and DIANE YOUNG,

                  Plaintiffs,

v.

PURFOODS, LLC,

                  Defendant.

No. 4:23-cv-00332-RGE-SBJ

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND AND PROCEDURAL HISTORY ........................................... 3

III.  THE SETTLEMENT ............................................................................................ 3

   A.  Settlement Benefits ....................................................................................... 3

   B.  Notice and Settlement Administration Costs ................................................ 4

   C.  Attorneys' Fees, Expenses, and Service Awards.......................................... 4

   D.  Opt-Outs and Objections............................................................................... 5

   E.  Release ........................................................................................................... 6

IV.   NOTICE PROVIDED SATISFIES DUE PROCESS CONSIDERATIONS ...................... 6

V.    LEGAL STANDARD ......................................................................................... 8

VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
      PURSUANT TO RULE 23(E)............................................................................. 9

   A.  Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement
       Class .............................................................................................................. 10

   B.  The Settlement Was Negotiated at Arms' Length and Aided by a Well-Respected and
       Experienced Mediator................................................................................... 11

   C.  The Relief Provided for the Settlement Class is Adequate ........................... 13

   D.  Proposed Settlement Class Members are Treated Equitably ........................ 14

VII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT
      PURPOSES....................................................................................................... 14

   A.  The Settlement Class Meets the Requirement of Rule 23(a). ....................... 15

      1.  The Settlement Class is Sufficiently Numerous. ..................................... 15

      2.  The Commonality Requirement is Met..................................................... 16

      3.  The Typicality Requirement is Met. ........................................................ 17

      4.  The Adequacy Requirement is Met.......................................................... 17

   B.  The Settlement Class Meets the Requirement of Rule 23(b)(3). .................. 19

VIII.    CONCLUSION..................................................................................................... 20

## **TABLE OF AUTHORITIES**

### **Cases**

*Baby Neat for & by Kanter v. Casey*,

    43 F.3d 48 (3d Cir. 1994) ........................................................................... 20

*Bennett v. Nucor Corp.*,

    656 F.3d 802 (8th Cir. 2011) ..................................................................... 19

*Cook v. Rockwell Int'l Corp.*,

    151 F.R.D. 378 (D. Colo. 1993) ................................................................. 22

*DeBoer v. Mellon Mortg. Co.*,

    64 F.3d 1171 (8th Cir. 1995) ................................................................ 20, 21

*Doe v. Stephen*,

    No. 3:20-cv-00005, 2022 WL 20689731 (S.D. Iowa. Dec. 9, 2022) ....................................... 13

*Geier v. Alexander*,

    801 F.2d 799 (6th Cir. 1986) ....................................................................... 6

*Gen. Tel. Co. of the Southwest v. Falcon*,

    457 U.S. 147 (1982) .................................................................................. 21

*Grove v. Principal Mut. Life Ins. Co.*,

    200 F.R.D. 434 (S.D. Iowa 2001) ......................................................... 10, 20

*In re Conseco Life Ins. Co. Cost of Ins. Litigation*,

    No. ML 04-1610 AHM, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ................................... 24

*In re Mexican Gov't Bonds Antitrust Litig.*,

    No. 18-cv-02830, 2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021) ................................. 8

*In re Target Corp. Customer Data Breach Security Litig.*,

    MDL No. 2522 (D. Minn.) ......................................................................... 15

*In re Teflon Prod. Liab. Litig.*,

    254 F.R.D. 354 (S.D. Iowa 2008) ........................................................... 19

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    No. 1:14-MD02583-TWT (N.D. Ga. Sept. 22, 2017)............................................ 15

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*,

    716 F.3d 1057 (8th Cir. 2013)................................................... 5, 11, 16

*In re: Lincare Holdings Inc. Data Breach Litig.*,

    No. 8:22-cv-01472, 2024 WL 3104286 (M.D. Fla. June 24, 2024) ......................................... 15

*Keil v. Lopez*,

    862 F.3d 685 (8th Cir. 2017)................................................... 10

*Kostka v. Dickey's Barbecue Rests., Inc.*,

    No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022).................................... 14

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,

    921 F.2d 1371 (8th Cir. 1990)................................................... 10

*Marshall v. Nat'l. Football League*,

    787 F.3d 502 (8th Cir. 2015)................................................... 9

*Massiah v. MetroPlus Health Plan, Inc.*,

    No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................................. 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950)................................................... 8

*Owens v. U.S. Radiology Specialists, Inc.*,

    No. 22-CVS-17797 (N.C. Super. Ct., Mecklenburg Cnty. May 15, 2024)............................... 14

*Paxton v. Union Nat'l Bank*,

    688 F.2d 552 (8th Cir. 1982) ........................................................................ 19, 21

*Petrovic v. Amoco Oil Co.*,

    200 F.3d 1140 (8th Cir. 1999) ...................................................................... 8, 9, 10

*PHT Holding II LLC v. N. Am. Co. for Life*,

    No. 4:18-cv-00368, 2023 WL 8522980 (S.D. Iowa. Nov. 30, 2023) .................... 12, 14

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,

    390 U.S. 414 (1968) ........................................................................................ 16

*Sanft v. Winnebago Indus., Inc.*,

    214 F.R.D. 514 (N.D. Iowa 2003) .................................................................... 18

*Schmidt v. Fuller Brush Co.*,

    527 F.2d 532 (8th Cir. 1975) ........................................................................... 16

*Spegele v. USAA Life Ins. Co.*,

    No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) ................. 11

*Williams v. Vukovich*,

    720 F.2d 909 (6th Cir. 1983) ............................................................................. 5

## Other Authorities

2 Robert Newberg, Newberg on Class Actions, § 7.24 (3d ed. 1992) ........................................... 22

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:15 (6th ed. 2024) .... 10

Manual For Complex Litigation (Third) § 30.41 (1995) ................................................................. 9

## Rules

Fed. R. Civ. P. 23 ................................................................................................................. passim

Plaintiffs[1] Michael Douglas, Dorothy Goodon, Dorothy Alexander, Stella Keritsis, Johnnie Jones, Yolanda Betts, Logan Aldridge, Steven D'Angelo, Christine Ashe, Vernita Ford, and Diane Young respectfully submit this Memorandum of Law in Support of *Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement*, filed contemporaneously herewith.

## I.    INTRODUCTION

On June 17, 2025, the Court granted preliminary approval of the Settlement Agreement between Plaintiffs and Defendant PurFoods, LLC ("PurFoods"), and ordered that notice be given to the Settlement Class. Dkt. No. 59. The Settlement Agreement calls for Defendant to establish a Settlement Fund of $4,250,000.00 for the benefit of Settlement Class Members and provides an excellent result in the form of monetary and non-monetary relief, including: cash reimbursement for Documented Losses attributable to the Data Incident, a pro rata Cash Award, and credit monitoring and insurance services. S.A. ¶¶ 2.2-2.4. Relatedly, PurFoods has implemented business practice changes related to data security. *Id.* at ¶ 2.5. If finally approved, the settlement will successfully resolve the claims of approximately 1,249,219 individuals nationwide who were notified in or around August and September 2023 of the Data Incident, bringing meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense.

The Settlement Agreement was the result of a full-day mediation and weeks of extensive arms' length negotiations, ultimately allowing Plaintiffs to circumvent the many risks and uncertainties they would face at each progressive stage of litigation if the case were to proceed toward trial. Indeed, Plaintiffs' claims involve the intricacies of data security litigation which is a

---

[1] The capitalized terms used herein shall have the same meaning as those defined in the Amended and Superseding Settlement Agreement and Release (Dkt. No. 57-1) (also referred to herein as the "S.A.").

novel and constantly evolving area of the law. Although Plaintiffs believe in the merits of their claims, Defendant denies all charges of wrongdoing or liability and was fully prepared to litigate with the assistance of experienced counsel. Against these risks, Settlement Class Counsel and Plaintiffs believe that the settlement is an excellent result compared against the uncertainties of continued litigation.

After this Court granted preliminary approval, the Settlement Administrator disseminated notice to the Settlement Class as set forth in the Settlement Agreement. S.A. ¶¶ 3.2-3.3. Individual notice was provided directly to Settlement Class Members via email or first-class mail, successfully reaching 91.95% of the Settlement Class and easily meeting the due process standard. *See* Declaration of Patrick Passarella of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement attached hereto as **Exhibit 1** ("Admin. Decl."), ¶ 15. The notice was written in plain language, providing each Settlement Class Member with information on how to submit a Claim Form, how to opt-out, and how to object to the settlement. Settlement Class Members' support for the settlement has been overwhelmingly favorable, with only one (1) Settlement Class Member objecting thereto, and only two (2) timely seeking exclusion. This positive response weighs in favor of final approval.[2]

For these reasons and those further set forth herein, Plaintiffs and Settlement Class Counsel respectfully submit that the Agreement meets the standards for final approval under Rule 23, and

---

[2] Four possible Class Members attempted to file their respective claims by submitting a filing in this lawsuit. (Dkt. Nos. 61, 63, 66). As this Court noted, the Court is not the repository for claims. (Dkt. Nos. 62, 64, 67). Settlement Class Counsel promptly followed up with all four possible Class Members, pursuant to the Court's orders. *Id.* Three of the four Class Members have since filed a claim with the Settlement Administrator. Counsel Decl. ¶ 11. The fourth individual, Johnnie Brown, did not submit a claim with the Settlement Administrator despite Settlement Class Counsel's direction. It is unclear from Settlement Class Counsel's communications with Brown whether she intended for her filing to act as an objection. (Dkt. No. 66). As such, Settlement Class Counsel has construed her filing as an objection and responds thereto in this Motion.

is a fair, reasonable, and adequate result for the Settlement Class. As such, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Final Approval of the Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Service Awards (Dkt. No. 65), and enter a Final Approval Order and Judgment in a form substantially similar to the Proposed Final Approval Order and Judgment Approving Class Action Settlement submitted herewith.

## II.    BACKGROUND AND PROCEDURAL HISTORY

In the interest of judicial efficiency and brevity, for factual and procedural background regarding this Litigation, Plaintiffs respectfully refer this Court to and hereby incorporate *Plaintiffs' Second Amended Unopposed Motion for Preliminary Approval of Class Action Settlement,* Dkt. No. 57, and *Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards*, Dkt. No. 65. Additional facts relevant to the Court's consideration for assessing Plaintiffs' requests are in the relevant sections of this Memorandum.

## III.    THE SETTLEMENT

### A. Settlement Benefits

The scope of the Settlement Class largely mirrors that which Plaintiffs pled in their Complaint and is defined as "all residents of the United States who were sent notice that their personal information may have been accessed, stolen, or compromised as a result of the Data Incident." S.A. ¶ 1.35.[3] For full and complete settlement and release between Plaintiffs, Settlement Class Members, and PurFoods, PurFoods has agreed to pay $4,250,000.00 into a non-reversionary

---

[3] The Settlement Class specifically excludes: (i) PurFoods and its respective officers and directors; (ii) any Person who would otherwise be a member of the Settlement Class but who timely and validly requests exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement, the Court's staff, and the Court's immediate family members; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge. S.A. ¶ 1.35.

Settlement Fund. *Id*. at ¶ 2.1. PurFoods has also implemented business practice changes related to data security. *Id*. at ¶ 2.5.

Under the terms of the Settlement Agreement, Settlement Class Members who submit a valid and timely Claim Form to the Settlement Administrator may elect to receive either (i) a Cash Award payment, the amount of which will be calculated as set forth in Section 2.4 of the Settlement Agreement, *id*. at ¶ 2.2(a); or (ii) a Documented Loss Payment of up to $5,000.00, *id*. at ¶ 2.2(b). Settlement Class Members may also elect to receive three (3) years of three-bureau Credit Monitoring and Insurance Services regardless of whether they make a claim for monetary payment. *Id.* at ¶ 2.3.

## B.  Notice and Settlement Administration Costs

Costs of Settlement Administration are paid out of the Settlement Fund, including the cost of implementing and developing the Notice Program, as well as the costs of the Settlement Administrator to disseminate notice, administer the settlement, evaluate claims, and pay Settlement Class Members who submitted timely and valid claims. S.A. ¶ 2.7. The final cost will not be known to the Parties until administration is complete, however, the Settlement Administrator has incurred $656,321.76 in Costs of Settlement Administration thus far and estimates an additional $45,620.41 to complete the administration of the settlement. Admin. Decl. ¶ 21.

## C.  Attorneys' Fees, Expenses, and Service Awards

On September 16, 2025, Plaintiffs moved for an attorneys' fee award of one-third of the Settlement Fund ($1,416,666,67), expense reimbursement in the amount of $13,167.18, and Service Awards in the amount of $2,500.00 for each of the Representative Plaintiffs. Dkt. No. 65. The fee motion and supporting declaration were posted to the Settlement Website so Settlement

Class Members could access and review it prior to submitting an objection or requesting exclusion from the Settlement. Admin. Decl. ¶ 5.

### D. Opt-Outs and Objections

The Opt-Out Date and Objection Date were September 30, 2025. *Id.* at ¶ 19. As of this filing, the Settlement Administrator has received only two (2) timely opt-out requests and one purported objection. *Id.* at ¶ 20. Such opposition amounts to "only [a] token opposition." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (noting that twenty-six objectors out of a class of 30,000 amounted to "only token opposition"). The burden on objectors after a settlement has been preliminarily approved is high, and must be more than a mere general objection. *See id.* (finding that the objections to the settlement "lacked merit" because the settlement met the requirements under Fed. R. Civ. P. 23); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) ("An individual who objects, consequently has a heavy burden of demonstrating that the decree is unreasonable.") (collecting cases). General objections without factual or legal substantiation do not carry weight. *Id.* Objections must be supported by evidence demonstrating that some class members have actually been prejudiced by a particular term of the class settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063; *see Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) ("To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.").

Here, the lone purported objection, which is attached to the Admin. Decl. as Exhibit H, and was also filed by the objector with the Court, Dkt. No. 66, should be overruled for the following reasons. First, the objection is invalid because it does not comply with the mandatory objection procedures set forth in Paragraph 5.1 of the Settlement Agreement. Specifically, the letter purporting to establish an objection fails to clearly state any grounds for the objection—indeed,

nowhere on the face of the letter does the word "object" or "objection" even appear—instead merely requesting that her $5,000.00 *claim*—for the very benefits offered by the Settlement—be approved. However, when Settlement Class Counsel reached out to the objector, pursuant to the Court's Order dated October 2, 2025 (Dkt. No. 67), to attempt to provide her with clarification regarding the requirements for valid claim submission, she responded that she was "following the instructions for sending an 'objection letter[,]'" thereby denying the assistance offered. Further, the "objection" does not recite any legal support, and states the incorrect case name, "*Douglas et al v. PurFoods, Inc., Case No, 4:23-cv-00332-RGE-SBJ*." Finally, the Court has already "construe[d] this document as an attempt to submit a claim for a cash award as described in the parties' Amended and Superseding Settlement Agreement and Release," not as an "objection." Dkt. No. 67. For these reasons, the Court should overrule the objection.

### E. Release

Upon entry of the Final Approval Order and Judgment, Settlement Class Members who do not submit a valid and timely request for exclusion from the Settlement Agreement will release claims against Defendant related to the Data Incident. The "Released Claims" are fully defined in Paragraph 1.27 of the Settlement Agreement and include all claims "based on, relating to, concerning, or arising out of the Data Incident." S.A. ¶ 1.27. The release negotiated and agreed to here is tailored to the claims that have been pled or could have been pled in the Litigation.

## IV. NOTICE PROVIDED SATISFIES DUE PROCESS CONSIDERATIONS

On June 17, 2025, the Court preliminarily appointed Kroll Settlement Administration ("Kroll") to be the Settlement Administrator. Dkt. No. 59. On August 1, 2025, Kroll commenced the Notice Program. Admin. Decl. ¶ 11. Kroll disseminated the Short Notice via email to all Settlement Class Members whose email addresses were available within Defendant's records, and via first class mail to all Settlement Class Members for whom email addresses were not known but

physical mailing addresses were available within Defendant's records. *Id.* On September 20, 2024, Kroll secured the domain name for a Settlement Website, www.PurFoodsDataSettlement.com, which "went live" on August 1, 2025, and included information about the settlement, related case documents, and the Settlement Agreement, and allowed Settlement Class Members to file claim forms electronically. *Id.* at ¶ 5. Additionally, on June 23, 2025, Kroll established the toll-free number, (833) 890-4931, for Settlement Class Members to receive additional information and ask questions about the settlement. *Id.* at ¶ 6. As of October 29, 2025, Kroll has received 7,900 calls regarding the settlement. *Id.*

The timing of the claims process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the settlement, compile documents supporting their claim, and to decide whether to submit a Claim Form, opt-out of, or object to the Settlement. The claims process has been straightforward, with Settlement Class Members able to submit Claim Forms either through the Settlement Website or by hard copy mailed to the Settlement Administrator. *Id.* at ¶¶ 5, 7. As of October 29, 2025, Kroll has received 748 Claim Forms through the mail and 10,828 Claim Forms filed electronically through the Settlement Website. *Id.* The Settlement Administrator is still in the process of reviewing and validating Claim Forms. *Id.* The 11,576 Claims Forms received represent a claims rate of 0.93% from the Settlement Class – a rate that is typical in consumer settlements, including those involving data breaches.

The Notice Program successfully reached 91.95% of the Settlement Class, satisfying the due process standard. Admin Decl. ¶ 15. *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306,

219 (1950). The mailed and e-mailed notice are written in clear and concise language and reasonably conveyed the necessary information to the average class member. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152–53 (8th Cir. 1999). Settlement Class Members have been afforded a full and fair opportunity to consider the proposed settlement, exclude themselves from the settlement, and respond and/or appear in Court. Further, the notice fully advised Settlement Class Members of the binding effect of the judgment on them. Dkt. No. 57-1, Ex. B. The content disseminated through the Notice Program was more than adequate. *See Petrovic*, 200 F.3d at 1153 ("In our case the mailed notice provided a reasonable summary of the stakes of the litigation, and class members could easily acquire more detailed information, including data on potential individual awards, through the telephone number that was provided. Due process requires no more.").

In sum, this individual email or first-class mail to Settlement Class Members who could be identified with reasonable effort was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## V.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e)(2), a court must review a class action settlement "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l. Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (citation omitted).

The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual For Complex Litigation (Third) § 30.41, at 236 (1995). The first step of preliminary approval has already been met. On June 17, 2025, the Court found that the settlement was fair, reasonable, and adequate warranting preliminary approval. Dkt. No. 59.

Courts consistently favor settlements of disputed claims. *See, e.g.*, *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements ... [and][c]ourts should hospitably receive them."). There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:15 (6th ed. 2024); *Little Rock Sch. Dist*, 921 F.2d at 1391 (same). Indeed, when experienced counsel supports a settlement, as they do here, their opinions are entitled to considerable weight. *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (citation omitted); *Grove v. Principal Mut. Life Ins. Co*., 200 F.R.D. 434, 445 (S.D. Iowa 2001).

Here, nothing "has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co*., No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063. In fact, the response of the Settlement Class Members to the settlement (only 2 requests for exclusion and one objection out of a Settlement Class of 1,249,191 Settlement Class Members) further underscores that the settlement is, in fact, fair, reasonable, and adequate and should receive final approval.

## VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(E)

The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

(A) the class representatives and class counsel have adequately represented the class;

9

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### A. Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, a court should first consider whether class representatives and class counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); *see also PHT Holding II LLC v. N. Am. Co. for Life*, No. 4:18-cv-00368, 2023 WL 8522980, at *3 (S.D. Iowa. Nov. 30, 2023) ("As it pertains to the Class Representative, the inquiry is two-fold: (1) whether it shares common interests with the other class members; and (2) whether it vigorously pursued the interests of the class through qualified counsel.").

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for alleged injuries arising out of the Data Incident, which led to the alleged compromise of Plaintiffs' and Settlement Class Members' data in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for monetary relief from the Settlement Fund as well a three years of three-bureau credit monitoring and insurance services. As such, Plaintiffs have an interest in obtaining the largest possible recovery from Defendant. Plaintiffs have maintained contact with Settlement Class Counsel, have reviewed filings in the Litigation, and have no conflicts with the proposed Settlement Class.

10

Likewise, Settlement Class Counsel have also "adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). When "[t]here is no indication that any conflicts of interest or other deficiencies have arisen in counsel's representation of the class" and "counsel clearly devoted substantial time and energy to the case," courts routinely find that class counsel have adequately represented the class. *Doe v. Stephen*, No. 3:20-cv-00005, 2022 WL 20689731, at *3 (S.D. Iowa Dec. 9, 2022). Here, Settlement Class Counsel have extensive class action and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the Settlement Class. At all times, Settlement Class Counsel was fully informed about the facts, risks, and challenges of this action and had sufficient basis on which to negotiate a very significant settlement.

**B.  The Settlement Was Negotiated at Arms' Length and Aided by a Well-Respected and Experienced Mediator**

Soon after Plaintiffs filed their Complaint, the Parties by and through their respective counsel, began discussing the possibility for resolution and agreed to explore the possibility of early resolution. Declaration of Gary Klinger on Behalf of Settlement Class Counsel attached hereto as **Exhibit 2** ("Counsel Decl."), ¶ 2. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations and informal discovery. *Id.* In addition to and in preparation for negotiations, in order for the Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, Settlement Class Counsel researched publicly available information related to the Data Incident, the merits of Plaintiffs' claims, issues relating to class certification, and discussed and disputed, with counsel for Defendant, their respective positions regarding the same. *Id.* at ¶ 3. The Parties also engaged in extensive factual and legal research on such issues, and attended a full-day mediation session with Jill Sperber, Esq. of Judicate West on May 6, 2024. *Id.* at ¶¶ 3–4.  Following mediation and continued adversarial and

extensive arms-length negotiations, the Settlement Agreement was consummated. *See PHT Holding II LLC*, 2023 WL 8522980, at *3 ("There is an assumption of fairness when a settlement is reached after arm's-length negotiations.").

As such, there is nothing to suggest that the Settlement Agreement was the result of fraud or collusion. Rather, this Settlement Agreement, which achieves a value measurement of $3.40 per Settlement Class Member,[4] falls directly in line with, and in many cases exceeds, the results achieved in other favorable data breach class action settlements. *See e.g.*, *Owens v. U.S. Radiology Specialists, Inc*., No. 22-CVS-17797 (N.C. Super. Ct., Mecklenburg Cnty. May 15, 2024) (approving settlement valued at $3.88 per class member); *Kostka v. Dickey's Barbecue Rests., Inc*., No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) (approving settlement valued at $3.24 per class member); *In re: Lincare Holdings Inc. Data Breach Litig*., No. 8:22-cv-01472, 2024 WL 3104286 (M.D. Fla. June 24, 2024) (approving settlement valued at $2.50 per class member); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD02583-TWT (N.D. Ga. Sept. 22, 2017) (approving settlement valued at $0.51 per class member); *In re Target Corp. Customer Data Breach Security Litig*., MDL No. 2522 (D. Minn.) (approving settlement valued at $0.10 per class member).

It is the opinion of Settlement Class Counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Settlement Class.

---

[4] This measurement is not a projection of the amount that each Settlement Class Member who submits a Valid Claim will receive. Rather, this calculation is a way for the Court to evaluate the reasonableness of the Settlement Agreement reached here by offering a comparison of the value achieved per Settlement Class Member to other settlements of cases involving similar settlement class sizes and causes of action.

### C.  The Relief Provided for the Settlement Class is Adequate

Federal Rule of Civil Procedure 23(e)(2)(c) requires examination of the relief provided by the settlement. While Plaintiffs are confident in the merit of their claims, they must take into account the risk, expense, and delay of protracted litigation, trial, and a potentially lengthy appeal that would severely delay any recovery for Settlement Class Members for several more years if this Litigation did not settle. This risk of delay weighs in favor of granting final approval of the Settlement Agreement. *See, e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063 (noting that "class actions place an enormous burden of costs and expenses upon the parties.") (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). Under these circumstances, the benefits of a guaranteed recovery today, as opposed to an uncertain result years in the future, are readily apparent. Indeed, the monetary value of the Settlement Fund is $4,250,000.00, a significant figure which, as set forth in the Settlement Agreement, is available to Settlement Class Members to make claims for Cash Awards (or Documented Loss Payments) and three years of three bureau Credit Monitoring and Insurance Services. S.A. ¶¶ 2.2-2.3. Moreover, Settlement Class Members will benefit from the business practice changes relating to data security that Defendant has implemented.

Notably, when, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc*., No. 11-cv-05669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted). The foregoing therefore demonstrates that the Settlement Agreement is fair, reasonable, and adequate.

### D. Proposed Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." Here, the proposed settlement treats Settlement Class Members equitably because they all have the option to make a claim for any of the applicable benefits. S.A. ¶¶ 2.2-2.3.

## VII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

To achieve certification, it must be demonstrated that the requirements of Rule 23(a) are met, which are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

After satisfying all requirements under Rule 23(a), the settlement class must then satisfy Rule 23(b)(3), which requires the court to determine whether (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. Rule 23(b)(3).

Previously, the Court found that it would "likely be able to certify the Settlement Class for purposes of judgment on the settlement because it meets all of the requirements of Rule 23(a) and (b)(3). Dkt. No. 59, at 2. Since then, there has been no intervening change in law or fact to disturb the Court's initial finding. Counsel Decl. ¶ 8.

As discussed *infra*, the settlement class certification requirements are met and Defendant consents to provisional certification of the Settlement Class for settlement purposes. *See* Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be

maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

### A. The Settlement Class Meets the Requirement of Rule 23(a).

#### 1. The Settlement Class is Sufficiently Numerous.

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable." Here, Plaintiffs seek certification of, and PurFoods has stipulated for settlement purposes only to certification of, the following Settlement Class:

> All residents of the United States who were sent notice that their personal information may have been accessed, stolen, or compromised as a result of the Data Incident.

After de-duplication and routine data hygiene, Kroll identified 1,249,191 unique Settlement Class Member records. Admin Decl., ¶ 10. A class comprised of over a million members is clearly numerous and renders joinder impracticable. *See Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 521 (N.D. Iowa 2003) (finding a class of 51 people to be numerous). This is especially true where there is a significant geographic distribution among the class members. *Id.* at 522–23.

"In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982). Here, it would be impractical for each individual Settlement Class Member to bring his or her claim. The Settlement Class meets the numerosity requirement, particularly in light of the class size, the geographic diversity of Settlement Class Members, the financial resources of Settlement Class Members, and their ability to institute individual lawsuits.

### 2. The Commonality Requirement is Met.

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." This requirement does not mandate commonality on every issue. *In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 364 (S.D. Iowa 2008) (citing *Paxton*, 688 F.2d at 561). "Rather, the issues linking the class members must be 'substantially related' to resolution of the case." *Id.* (citing *Paxton*, 688 F.2d at 561). "A proponent of class certification cannot show commonality by demonstrating merely that the class members have all suffered a violation of the same provision of law." *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). Instead, claims must depend on a "common contention" that must "be 'of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation," *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (internal quotes omitted), which is not a very high hurdle to cross. In fact, commonality is "satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neat for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Applying these principles, the commonality requirement of subsection (a)(2) is met here. The Complaint identifies a number of questions of law and fact common to all potential Settlement Class Members. Dkt. No. 30, ¶ 350. As the *Grove* court explained in approving a settlement class in a different case, such identification of alleged common issues is sufficient to satisfy the commonality requirement here. *Grove*, 200 F.R.D. at 440. Accordingly, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met.

### 3. The Typicality Requirement is Met.

Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of the claims of the class. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174; *Paxton*, 688 F.2d at 562. In short, to meet the typicality requirement, Plaintiffs simply must demonstrate that the Settlement Class Members have the same or similar grievances. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *DeBoer*, 64 F.3d at 1175; *Paxton*, 688 F.2d at 562.

Here, the claims of Plaintiffs and each of the Settlement Class Members are predicated on the alleged conduct of PurFoods with respect to the Data Incident. These claims are common to all Settlement Class Members. Accordingly, the common issues necessarily share "the same degree of centrality" to the named representatives' claims. As such, Plaintiffs can reasonably be expected to advance the interests of all absent Settlement Class Members by settling the liability issues.

### 4. The Adequacy Requirement is Met.

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that the representative parties "will fairly and adequately protect the interests of the class." The Eighth Circuit Court of Appeals has instructed:

> The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.

*Paxton*, 688 F.2d at 562–63.

This requirement applies to Plaintiffs and their legal counsel and is designed to ensure that the interests of absent Settlement Class Members are fully pursued. The existence of the elements of adequate representation "[is] usually [presumed] in the absence of contrary evidence." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993) (quoting 2 Robert Newberg, Newberg on Class Actions, § 7.24 at 7-80 to –81 (3d ed. 1992)).

Plaintiffs have taken an active and necessary role in aiding Settlement Class Counsel in litigating this case and representing the interest of absent Settlement Class Members. Plaintiffs provided information to Settlement Class Counsel that formed the basis of the claims in the Litigation, including the individual notices of the Data Incident and their personal experiences and alleged injuries arising therefrom. Counsel Decl. ¶ 9. There is also nothing to suggest that, for purposes of this Settlement Agreement, Plaintiffs have interests antagonistic to those of absent Settlement Class Members in pursuit of the legal claims in the Litigation. *Id.* at ¶ 10. Rather, Plaintiffs and absent Settlement Class Members are interested in pursuing remedies for claims concerning the Data Incident. *Id.* To that end, Plaintiffs have obtained an advantageous settlement that provides substantial monetary compensation and other relief to all Settlement Class Members.

Settlement Class Counsel are accomplished litigators, particularly in the field of data breach litigation. *Id.* at ¶ 1; (Dkt. No. 7). The firms comprising Settlement Class Counsel have served as lead counsel or co-lead counsel in scores of class action cases across the United States, including data breach class actions. *Id.* Indeed, these firms have demonstrated knowledge of applicable law and the ability and willingness to commit sufficient resources to prosecute large scale class action litigation.

Settlement Class Counsel worked together to research the facts of this Litigation, prepare the Plaintiffs' claims against PurFoods, consolidate the numerous related actions into one, and work with opposing counsel to engage in meaningful informal discovery and settlement discussions. Counsel Decl., ¶ 1. From their experience, expertise, time, and resources, they were able to secure a favorable class action settlement that is memorialized in the Settlement Agreement. *Id.*

In short, Settlement Class Counsel has demonstrated the ability to fairly and adequately represent the interests of the Settlement Class. There is no indication that they have a conflict of interest or might possibly do anything other than adequately represent the interests of the Settlement Class. Accordingly, the requirements of Rule 23(a)(4) have been met.

**B. The Settlement Class Meets the Requirement of Rule 23(b)(3).**

Under Rule 23(b)(3) a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, Settlement Class Members' personal information was allegedly accessed and/or exfiltrated from Defendant's network as a result of the Data Incident. For purposes of settlement, the claims being resolved share sufficient commonality to warrant certification for settlement purposes.

With respect to superiority, the settlement renders class action treatment cost-effective and efficient relative to other potential avenues of recovery for Settlement Class Members and avoids the risk of inconsistent and varying adjudications with respect to individual members of the Settlement Class. This case presents the prime example of a dispute which can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. *In re Conseco Life Ins. Co. Cost of Ins. Litigation*, No. ML 04-1610 AHM, 2005 WL 5678842, at *3 (C.D. Cal. Apr. 26, 2005). By reason of the settlement, over a million Settlement Class Members across the United States can obtain substantial monetary benefits and other relief in this class action, whereas litigation of multiple actions in any other judicial avenue for relief – either in this Court or elsewhere – would waste judicial resources. The Parties believe that the most

19

efficient way of resolving these claims is through a single class action settlement. As such, Rule 23(b)(3) is also satisfied.

## VIII.    CONCLUSION

Plaintiffs and Settlement Class Counsel negotiated a fair, adequate, and reasonable settlement with Defendant and its counsel that guarantees Settlement Class Members significant benefits in the form of monetary compensation and credit monitoring and insurance services. Based on the above reasons, Plaintiffs respectfully request that the Court enter an order granting final approval to the settlement (a) certifying the Settlement Class; (b) finally appointing Michael Douglas, Dorothy Goodon, Dorothy Alexander, Stella Keritsis, Johnnie Jones, Yolanda Betts, Logan Aldridge, Steven D'Angelo, Christine Ashe, Vernita Ford, and Diane Young as Representative Plaintiffs; (c) finally appointing Cafferty Clobes Meriwether & Sprengel LLP; Milberg Coleman Bryson Phillips Grossman PLLC; Siri & Glimstad LLP; and Federman & Sherwood as Settlement Class Counsel; and (d) granting Plaintiffs' requested attorneys' fee award of one-third of the Total Settlement Consideration (*i.e.*, $1,416,666.67), reimbursement of expenses in the amount of $13,167.18, and Service Awards of $2,500.00 for each of the Plaintiffs, (for a total of $27,500.00).

DATED: November 6, 2025                    Respectfully submitted,

                                                          */s/William B. Federman*
                                                          William B. Federman*
                                                          **FEDERMAN & SHERWOOD**
                                                          10205 N. Pennsylvania Ave.
                                                          Oklahoma City, OK 73120
                                                          Telephone: (405) 235-1560
                                                          wbf@federmanlaw.com

                                                          Tyler J. Bean*
                                                          **SIRI & GLIMSTAD LLP**

745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
tbean@sirillp.com

Daniel O. Herrera*
Nickolas J. Hagman*
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL, LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

*Settlement Class Counsel*

*Admitted Pro Hac Vice*

21